CLEARY GOTTLIEB STEEN & HAMILTON LLP
Richard J. Cooper
Thomas S. Kessler
David Z. Schwartz
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for Antonio Reinaldo Rabelo Filho,*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-11522 (MEW) |
| Braskem S.A., *et al.*,[1] | ) | |
| | ) | Chapter 15 |
| Debtors in a Foreign Proceeding. | ) | (Jointly Administered) |

**MOTION FOR EXTENSION OF PROVISIONAL RELIEF**
**PURSUANT TO 11 U.S.C. §§ 105(A), 362, AND 1519**

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Braskem S.A. (01-70–Brazil); Braskem Netherlands B.V. (6B01–Netherlands); Braskem Netherlands Inc., B.V. (9B01–Netherlands); Braskem Netherlands Finance B.V. (5B01–Netherlands); Braskem Trading & Shipping B.V. (7B01–Netherlands); and Braskem America Finance Co. (1581–US).

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..... i
TABLE OF AUTHORITIES ..... ii
PRELIMINARY STATEMENT ..... 2
BACKGROUND ..... 5
A. The Braskem Group's Operations ..... 5
B. Developments Regarding the Brazilian Proceeding ..... 6
C. Developments Regarding the Chapter 15 Proceeding ..... 8
D. The Debtors' Debt Obligations and Assets in the United States ..... 9
E. Imminent Risk to the Debtors' Reorganization ..... 10
JURISDICTION AND VENUE ..... 11
RELIEF REQUESTED ..... 11
BASIS FOR RELIEF ..... 12
A. The Requested Relief Is Authorized Under Sections 105(a), 362, 1519 of the Bankruptcy Code ..... 12
B. The Requested Relief Also Meets the Preliminary Injunction Standards ..... 19
i. Petitioner is likely to succeed on the merits ..... 20
ii. The Debtors are at risk of irreparable harm if an injunction is not issued ..... 23
iii. The balance of harms weighs heavily in favor of granting the Requested Relief ..... 26
iv. The public interest favors granting the requested injunctive relief ..... 27
C. All Parties Are Sufficiently Protected ..... 27
D. No Security is Required ..... 28
NO PRIOR REQUEST ..... 29
CONCLUSION ..... 29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*,
354 B.R. 45 (Bankr. S.D.N.Y. 2006), *aff'd* 365 B.R. 401 (S.D.N.Y. 2007) .................... 19, 20, 23

*CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*,
482 B.R. 96 (Bankr. S.D.N.Y. 2012) .................... 27

*Cunard S.S. Co. v. Salen Reefer Servs. AB*,
773 F.2d 452 (2d Cir. 1985) .................... 26

*In re Alert Holdings, Inc.*,
148 B.R. 194 (Bankr. S.D.N.Y. 1992) .................... 24

*In re Americanas S.A.*,
No. 23-10092 (MEW) (Bankr. S.D.N.Y. Jan. 27, 2023) .................... 12, 18, 25

*In re Andrade Gutierrez Engenharia S.A.*,
645 B.R. 175 (Bankr. S.D.N.Y. 2022) .................... 23

*In re Andrade Gutierrez Engenharia S.A.*,
No. 22-11425 (MG) (Bankr. S.D.N.Y. Nov. 3, 2022) .................... 12, 13

*In re Berau Capital Resources PTE Ltd.*,
No. 15-11804 (MG) (Bankr. S.D.N.Y. Aug. 6, 2015) .................... 23

*In re Cogent Fibre Inc.*,
No. 15-11877 (SMB) (Bankr. S.D.N.Y. July 17, 2015) .................... 18

*In re Cont'l Airlines*,
177 B.R. 475 (D. Del. 1993) .................... 23, 24

*In re Daewoo Corp.*,
No. 06-12242 (REG) (Bankr. S.D.N.Y. Oct. 11, 2006) .................... 15

*In re Elpida Memory, Inc.*,
No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367 (Bankr. D. Del. Nov. 20, 2012) .................... 11

*In re Garcia Avila*,
296 B.R. 95 (Bankr. S.D.N.Y. 2003) .................... 23

*In re Gercke*,
122 B.R. 621 (Bankr. D.D.C. 1991) .......... 17, 25

*In re Grand Prix Assocs. Inc.*,
2009 WL 1410519 (Bankr. D.N.J. May 18, 2009) .......... 15

*In re Hanjin Shipping Co., Ltd.*,
2016 WL 6679487 (Bankr. D.N.J. Sept. 20, 2016) .......... 14

*In re Innua Canada Ltd.*,
2009 WL 1025088 (Bankr. D.N.J. Mar. 25, 2009) .......... 15

*In re InterCement Brasil S.A.*,
No. 24-11226 (MG) (Bankr. S.D.N.Y. July 18, 2024) .......... 12, 13, 14, 17

*In re InterCement S.A.*,
668 B.R. 802 (Bankr. S.D.N.Y. 2025) .......... 13

*In re Inverness Distribution Ltd.*,
No. 11-12106 (SCC) (Bankr. S.D.N.Y. May 18, 2011) .......... 28

*In re Iovate Health Scis. Int'l Inc.*,
673 B.R. 516 (Bankr. SDNY 2025) .......... 21

*In re Iovate Health Scis. Int'l Inc.*,
No. 25-11958 (MG) (Bankr. S.D.N.Y. Nov. 5, 2025) .......... 14

*In re Japan Airlines Corp.*,
425 B.R. 732 (Bankr. S.D.N.Y. 2010) .......... 18

*In re Lupatech S.A.*,
No. 14-11559 (SMB) (Bankr. S.D.N.Y. May 28, 2014) .......... 20

*In re Lupatech S.A.*,
No. 16-11078 (MG) (Bankr. S.D.N.Y. May 26, 2016) .......... 13

*In re Mina Tucano Ltda.*,
No. 22-11198 (LGB) (Bankr. S.D.N.Y. Sept. 14, 2022) .......... 12, 18, 25

*In re MMG LLC*,
256 B.R. 544 (Bankr. S.D.N.Y. 2000) .......... 17

*In re Netia Holdings S.A.*,
278 B.R. 344 (Bankr. S.D.N.Y. 2002) .......... 24

*In re NewSat Ltd.*,
No. 15-10810 (LSS) (Bankr. D. Del. May 1, 2015) .......... 18

*In re OAS S.A.*,
No. 15-10937 (SMB) (Bankr. S.D.N.Y. Apr. 30, 2015) .......... 13, 18, 26

*In re Ocean Rig UDW INC.*,
No. 17-10736 (MG) (Bankr. S.D.N.Y. Apr. 7, 2017) .......... 17

*In re Odebrecht Engenharia e Construção S.A. - Em Recuperação Judicial*,
No. 25-10482 (MG) (Bankr. S.D.N.Y. Apr. 8, 2025) .......... 13

*In re Odebrecht Engenharia e Construção S.A.*,
No. 20-12741 (Bankr. S.D.N.Y. Dec. 30, 2020) .......... 4, 13

*In re Odebrecht Óleo E Gás S.A.*,
No. 17-13130 (JLG) (Bankr. S.D.N.Y. Dec. 13, 2017) .......... 13

*In re ODN I Perfurações Ltda.*,
No. 23-10557 (DSJ) (Bankr. S.D.N.Y. May 4, 2023) .......... 13

*In re Oi S.A.*,
No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 21, 2016) .......... 18, 20, 25

*In re Oi S.A.*,
No. 23-10193 (JPM) (Bankr. S.D.N.Y. Feb. 13, 2023) .......... 25

*In re Oi S.A.*,
No. 23-10193 (JPM) (Bankr. S.D.N.Y. Feb. 8, 2023) .......... 12, 17

*In re Peraso Technologies Inc.*,
No. 20-11354 (SHL) (Bankr. S.D.N.Y. June 10, 2020) .......... 12

*In re Pro-Fit Holdings Ltd.*,
391 B.R. 850 (Bankr. C.D. Cal. 2008) .......... *passim*

*In re Purdue Pharma L.P.*,
666 B.R. 461 (Bankr. S.D.N.Y. 2024) .......... 22

*In re Raízen S.A.*,
No. 26-10528 (LGB) (Bankr. S.D.N.Y. Apr. 8, 2026) .......... 4, 11, 13, 17

*In re Ran*,
607 F.3d 1017 (5th Cir. 2010) .......... 15

*In re Rede Energia S.A.*,
No. 14-10078 (SCC) (Bankr. S.D.N.Y. Sept. 9, 2014) ........ 13

*In re Samarco Mineracão S.A. - Em Recuperação Judicial*,
No. 21-10754 (LGB) (Bankr. S.D.N.Y. May 13, 2021) ........ 13, 17

*In re Serviços de Petróleo Constellation S.A.*,
No. 18-13952 (MG) (Bankr. S.D.N.Y. May 9, 2019) ........ 13

*In re SPhinX, Ltd.*,
351 B.R. 103 (Bankr. S.D.N.Y. 2006) ........ 27

*In re Toft*,
453 B.R. 186 (Bankr. S.D.N.Y. 2011) ........ 27

*In re U.S.J. – Açúcar e Álcool S.A.*,
No. 22-10320 (Bankr. S.D.N.Y. Apr. 14, 2022) ........ 13

*In re Unigel Participações S.A.*,
No. 24-11982 (MG) (Bankr. S.D.N.Y. Dec. 10, 2024) ........ 13

*In re Usina de Açúcar Santa Terezinha Ltda.*,
No. 19-11199 (MEW) (Bankr. S.D.N.Y. May 16, 2019) ........ 13

*In re Virgolino de Oliveira, S.A. Açúcar e Álcool*,
No. 25-10696 (MG) (Bankr. S.D.N.Y. July 18, 2025) ........ 13

*In re Vitro*,
455 B.R. 571 (Bankr. N.D. Tex. 2011) ........ 15, 19

*In re Worldwide Educ. Servs., Inc.*,
494 B.R. 494 (Bankr. C.D. Cal. 2013) ........ 19

*Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In re Lyondell Chem. Co.)*,
402 B.R. 571 (Bankr. S.D.N.Y. 2009) ........ 19, 23

*MF Glob. Holdings Ltd. v. Allied World Assur. Co. (In re MF Glob. Holdings Ltd.)*,
562 B.R. 55 (Bankr. S.D.N.Y. 2017) ........ 19

*Richardson v. Runge Fin. Co. (In re Richardson)*,
No. 99-20522, 2003 Bankr. LEXIS 2461 (Bankr. D. Idaho Oct. 21, 2003) ........ 28

*Rickel Home Ctrs. v. Baffa (In re Rickel Home Ctrs.)*,
199 B.R. 498 (Bankr. D. Del. 1996) ........ 25

**Rules and Statutes**

11 U.S.C. § 101(23) .......... 21

11 U.S.C. § 101(24) .......... 21

11 U.S.C. § 103(a) .......... 15

11 U.S.C. § 105(a) .......... 15

11 U.S.C. § 304 .......... 17, 25, 26

11 U.S.C. § 362 .......... *passim*

11 U.S.C. § 362(d) .......... 26

11 U.S.C. § 1501 .......... 17

11 U.S.C. § 1501(a) .......... 17, 27

11 U.S.C. § 1502(2) .......... 22

11 U.S.C. § 1502(4) .......... 21

11 U.S.C. § 1502(5) .......... 22

11 U.S.C. § 1515 .......... 21

11 U.S.C. § 1517(a) .......... 21

11 U.S.C. § 1519 .......... 11, 15, 19, 27

11 U.S.C. § 1519(a) .......... 12, 14, 15

11 U.S.C. § 1519(a)(1) .......... 14

11 U.S.C. § 1519(a)(3) .......... 14, 15

11 U.S.C. § 1519(e) .......... 18, 19

11 U.S.C. § 1520(a)(1) .......... 28

11 U.S.C. § 1521(a)(7) .......... 14, 15

11 U.S.C. § 1522(a) .......... 27

11 U.S.C. § 1525 .......... 27

28 U.S.C. § 157 .......... 10

28 U.S.C. § 157(b)(2)(P) .......... 11

28 U.S.C. § 1334 .......... 10

28 U.S.C. § 1409(a) .......... 11

28 U.S.C. § 1410 .......... 11

Fed. R. Bankr. P. 7065 .......... 28

Fed. R. Civ. P. 65(c) .......... 28

Local Civ. R. 9006-2 (S.D.N.Y.) .......... 12

**Other Authorities**

H. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. 116 (2005) .......... 27

Antonio Reinaldo Rabelo Filho (the "Petitioner" or the "Foreign Representative"), the duly-authorized foreign representative of Braskem S.A. ("Braskem"); Braskem Netherlands B.V.; Braskem Netherlands Inc., B.V.; Braskem Netherlands Finance B.V.; Braskem Trading & Shipping B.V.; and Braskem America Finance Company (collectively, the "Debtors") in the jointly-administered extrajudicial proceeding (*recuperação extrajudicial*) (the "Brazilian EJ Proceeding") commenced by the Debtors on August 24, 2026, under Federal Law No. 11.101 of February 9, 2005 (as modified, the "Brazilian Bankruptcy Law"), of the laws of the Federative Republic of Brazil, pending before the 2nd Bankruptcy and Reorganization Division of the São Paulo State Court of Justice (the "Brazilian Court"),[2] (which Brazilian EJ Proceeding immediately follows and effectively supplants the prior interim court-supervised mediation process (the "Brazilian Mediation" and, together with the Brazilian EJ Proceeding, the "Brazilian Proceeding") commenced on June 24, 2026, by the Debtors pursuant to the Brazilian Bankruptcy Law before the Brazilian Court) submits this motion (the "Motion") seeking entry of an order granting provisional relief (the "Provisional Relief Extension Order")[3] extending the provisional relief previously granted by the Court on June 30, 2026, in the *Order Granting Provisional Relief* (the "Initial Provisional Relief Order") [ECF No. 24] under sections 105(a), 362, and 1519 of title 11 of the United States Code (the "Bankruptcy Code")[4] in the above-captioned chapter 15 cases (the "Chapter 15 Cases"), pending chapter 15 recognition of the Brazilian Proceeding.

In support of this Motion, the Petitioner relies on: (i) each form of voluntary petition [ECF No. 1] (collectively, the "Voluntary Petitions") filed by the Debtors; (ii) the *Verified Petition for*

---

[2] The case number for the Brazilian EJ Proceeding before the Brazilian Court is 1111483-72.2024.8.26.0100. For the avoidance of doubt, this case number applies for both the Brazilian Mediation and the Brazilian EJ Proceeding.

[3] A proposed version of the Provisional Relief Extension Order granting the Petitioner's request for provisional relief is attached hereto as **Exhibit A**.

[4] Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.

*Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1515, 1517, 1520, and 1521* [ECF No. 2] (as amended at ECF No. 18, the "Verified Petition");[5] (iii) the *Declaration of Ana Elisa Laquimia Pursuant to 28 U.S.C. § 1746 in Support of the Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(A), 1515, 1517, 1520, and 1521* (the "Brazilian Counsel Declaration") [ECF No. 4]; (iv) the *Motion for Provisional Relief Pursuant to 11 U.S.C. §§ 1519, 105(a), and 362* (the "Initial Provisional Relief Motion") [ECF No. 5]*;* and (v) the *Petitioner's Verified Supplement to Verified Petition for Recognition of the Brazilian Proceeding and Motion for Extension of Provisional Relief* (the "Verified Supplement"). In further support of this Motion, the Petitioner respectfully states as follows:

**PRELIMINARY STATEMENT**

1. On June 24, 2026, the Debtors initiated the Brazilian Mediation—a court-supervised interim insolvency proceeding under the Brazilian Bankruptcy Law in anticipation of a potential plenary restructuring such as a Brazilian EJ or RJ proceeding. The Debtors also requested and obtained a 60-day injunction period (the "Mediation Period"), during which the Debtors engaged in negotiations with their financial creditors. After numerous mediation sessions and good-faith negotiations, the Brazilian Mediation culminated in the Debtors reaching an agreement in principle with a significant part of their creditor constituency. Collectively, these supporting creditors hold 39.6% of the Debtors' total indebtedness that is subject to the Debtors' proposed restructuring plan (the "EJ Plan"). Accordingly, after the conclusion of the Mediation

[5] Capitalized terms used but not defined herein have the meanings ascribed to them in the Verified Petition.

Period,[6] the Debtors commenced the Brazilian EJ Proceeding by filing a petition for *recuperação extrajudicial* (the "EJ Petition"), together with the EJ Plan, with the Brazilian Court.[7]

2. The Brazilian EJ Proceeding is a court-supervised restructuring proceeding under the Brazilian Bankruptcy Law that is similar to a pre-arranged reorganization proceeding. *See* Brazilian Counsel Decl. ¶ 20. In accordance with the Brazilian Bankruptcy Law, a stay of all actions and enforcement proceedings against the Debtors related to claims being restructured pursuant to the EJ Plan commenced when the Debtors filed the EJ Plan demonstrating at least 1/3 creditor support (the "EJ Stay").[8] The EJ Stay will preserve the Debtors' breathing spell, enabling them to continue negotiations with their creditors and obtain additional support for the EJ Plan. The EJ Plan establishes the procedures for ongoing negotiations towards the restructuring of the Debtors' unsecured financial debt. The EJ Plan is currently supported by creditors holding 39.6% of the Debtors' total indebtedness that is subject to the current EJ Plan. The EJ Debtors intend to use the coming weeks to garner further support from their remaining creditors of at least 50.1% in amount of each class of the affected indebtedness in order to facilitate confirmation of the EJ Plan by the Brazilian Court.

3. Against that backdrop, the Debtors come back to this Court to seek an extension of provisional relief. This Court has previously exercised its discretion to issue stay relief to afford Debtors protection under Section 362 of the Bankruptcy Code, among other things. *See* Initial

---

[6] The Mediation Period expires on August 25, 2026, as determined by the Brazilian Court. *See* Initial Court Order, Forms of Voluntary Petition, Exhibit J.

[7] The EJ Petition and the EJ Plan are attached as **Exhibit A** and **Exhibit C** to the Verified Supplement.

[8] Pursuant to the Brazilian Bankruptcy Law, the filing of an EJ petition imposes a stay of creditor action for 180 days with respect to the claims affected by the EJ Plan. If prior to filing for an EJ proceeding, however, a debtor seeks an interim injunction in support of a mediation or in preparation for the filing, the 180-day stay of the EJ proceeding is reduced by the period of the interim stay granted by the relevant Brazilian court. Brazilian Counsel Decl. ¶ 27.

Provisional Relief Order ¶ 2. Because this Court's Initial Provisional Relief Order will expire shortly, the Petitioner respectfully requests that the Court grant an additional and similar provisional stay through this Court's decision on recognition of the Brazilian Proceeding under chapter 15 of the Bankruptcy Code. The grounds for this request are substantially the same as those set forth in the Initial Provisional Relief Motion and this Court's order granting that motion. In the interim, the only change that has occurred in the relief sought here is the nature of the foreign proceeding, which has progressed from the Brazilian Mediation to the Brazilian EJ Proceeding. Provisional relief in this case is therefore consistent with both this Court's prior order and reasoned decisions of courts throughout this Circuit that have routinely held that EJ proceedings hold the same status as a foreign proceeding under the Bankruptcy Code. *See* Verified Petition, ¶ 59, n.14.[9]

4. This relief will remove the risk of potential costly litigation against the Debtors or their property located in the United States. Any such litigation would significantly impede the ability of the Debtors to conduct a comprehensive restructuring, with the Debtors forced to defend themselves against litigation in the United States, resulting in irreparable harm to the Debtors. Specifically, the Debtors will need to divert time and resources away from negotiating with its creditors, completing their sales process, and pursuing a restructuring solution that will benefit all stakeholders. Moreover, these creditors may attempt to argue that they are entitled to attachments over certain of the Debtors' property under applicable New York law to gain superior recoveries over other creditors. This risk is not theoretical, as evidenced by the contentions of certain creditors in these very cases.

---

[9] *See also In re Raízen S.A.,* No. 26-10528 (LGB) (Bankr. S.D.N.Y. Apr. 8, 2026) [ECF No. 36] (granting foreign main recognition of a Brazilian EJ proceeding for all debtors, including multiple non-Brazilian debtors); *Andrade Gutierrez Engenharia S.A.*, No. 22-11425 (MG) (Bankr S.D.N.Y. Dec. 2, 2022) [ECF No. 40] (granting recognition of a Brazilian EJ proceeding as a foreign main proceeding); *In re Odebrecht Engenharia e Construção S.A.*, No. 20-12741 (MEW) (Bankr. S.D.N.Y. Dec. 30, 2020) [ECF No. 15] (granting the petitions for recognition in the Chapter 15 Cases and recognizing the Brazilian EJ proceeding as a foreign main proceeding).

5. Considering this significant risk of irreparable harm, and to aid the Debtors' reorganization efforts in the Brazilian Proceeding, the Petitioner respectfully requests that this Court grant the request for the extension of provisional, which maintains the *status quo* until the Court can consider, and rule on, the Verified Petition.[10]

## BACKGROUND

### A. The Braskem Group's Operations

6. The Braskem Group was created in 2002 when six major Brazilian petrochemical companies—Copene, OPP, Trikem, Proppet, Polialden, and Nitrocarbono—merged to create a single company. *See* Verified Petition ¶ 11. Once formed, Braskem became the largest petrochemical company in Latin America. *Id.* The Company is registered with the Brazilian Securities and Exchange Commission and its stock trades on Brazil's stock exchange market (Brasil, Bolsa, Balcão, or "B3"). *Id.* The Company's Class A preferred shares are listed on the New York Stock Exchange ("NYSE"). *Id.* In 2003, the Company also began listing its stock on the Stock Exchange of Madrid ("LATIBEX"). *Id.*

7. Since its formation, the Braskem Group has continued to consolidate Brazil's petrochemical industry, becoming the leader of the Brazilian petrochemical market by 2009. Verified Petition ¶¶ 12–13. As a result, the Braskem Group is also the largest producer in the petrochemical plastic resins industry in the Americas. *Id.* ¶ 13. Its primary business segments are the production of various plastic resins, as well as certain sustainable "green" products such as

---

[10] The proposed Provisional Relief Extension Order is substantially identical to the Initial Provisional Relief Order, and includes language previously and mutually agreed with (i) advisors (the "Ad Hoc Group Advisors") to the ad hoc group (the "Ad Hoc Group") of holders of certain notes, (ii) counsel to certain holders of the 2041 Notes (the "Funds"), and (iii) the United States Trustee (the "U.S. Trustee") with respect to such prior order. The relief granted in the Initial Provisional Relief Order expires on the earlier of (a) the date on which a final determination is made by this Court with respect to the Verified Petition and the request for recognition of the Brazilian Mediation, and an order is entered in these Chapter 15 Cases giving effect to such determination, and (b) the date on which the stay in effect in the Brazilian Mediation is terminated or ceases to be in effect. The Provisional Relief Extension Order is proposed to apply until this Court rules on the recognition of the Brazilian Proceeding.

"green polyethylene"—a sustainable plastic resin made from sugarcane using innovative technologies. *Id.* For administrative ease, the Braskem Group's operations are largely split into geographic segments, focusing on domestic operations in Brazil (the "Brazil Segment") and operations abroad, including the United States, Europe, and Mexico. *Id.* ¶ 16. For 2025, the Brazil Segment's operations generated net revenue of R$51.77 billion, representing about 72% of the net revenue of all of the Company's reportable segments. *Id.* Most of the Brazil Segment's production operations take place across four different production plants sites across Brazil. *Id.* The Braskem Group's European and U.S. operations are recorded together (the "U.S. and Europe Segment"). *Id.* ¶ 17. The resulting combined operations of the U.S. and Europe Segment generated R$16.4 billion (or US$3.1 billion as of June 18, 2026) during 2025. *Id.* This segment comprises nearly 23% of the Company's net revenue across its reportable segments. *Id.*

8. Additional factual background information relating to the Braskem Group and the Debtors is set forth in detail in the Verified Petition, including their business operations and corporate and capital structures.

**B. Developments Regarding the Brazilian Proceeding**

9. On June 24, 2026, the Debtors commenced the Brazilian Mediation with the Brazilian Court, requesting, among other relief, a precautionary injunction for 60 days to allow the parties to negotiate in preparation for or in furtherance of the Brazilian EJ Proceeding. *See* Brazilian Counsel Decl., Exs. A–B. On June 26, 2026, the Brazilian Court entered the order accepting the Mediation Petition. *See* Brazilian Counsel Decl., Exs. E–F.

10. The Brazilian Mediation and these Chapter 15 Cases were commenced to provide a stable environment without the threat of litigation to allow the Debtors to negotiate a comprehensive restructuring solution with their main financial creditors. During the Brazilian Mediation, the mediator from the *Câmara Wind* (the "Wind Chamber of Mediation") presided over

meetings between the Debtors and their creditor constituencies, as well as their respective advisors. *See* Verified Supplement ¶ 4.

11. As part of those negotiations, the Debtors continued providing access to the Debtors' management, financial, operational and legal information to facilitate ongoing due diligence of the Debtors and their business to certain creditors and their advisors subject to non-disclosure agreement—including the advisors (the "Ad Hoc Group Advisors") to the ad hoc group (the "Ad Hoc Group") of holders of certain notes (the "Noteholders") as well as certain banks and their advisors. Verified Supplement ¶ 4. The Debtors also shared information with certain other holders of the 2041 Notes (such holders, the "Funds") and their advisors. *Id.*

12. The Brazilian Mediation culminated in the Debtors and certain of their creditors reaching an agreement in principle regarding the terms of a restructuring plan (the "EJ Plan") that establishes the procedures for ongoing negotiations towards the restructuring of the Debtors' unsecured financial debt. Verified Supplement ¶ 4. The EJ Plan is currently supported by creditors holding 39.6% of the Debtors' total indebtedness that is subject to the current EJ Plan. *Id.* On August 24, 2026, the Debtors filed a motion to effectively supplant the Brazilian Mediation with the Brazilian EJ Proceeding by filing a petition for *recuperação extrajudicial* (the "EJ Petition"), and will subsequently seek approval and confirmation by the Brazilian Court of their EJ Plan. *Id.* ¶ 5. Under the Brazilian Bankruptcy Law, upon filing the EJ Petition, a stay of all actions and enforcement proceedings against the Debtors related to claims being restructured pursuant to the EJ Plan goes into effect. Brazilian Counsel Decl. ¶ 27. Although the Brazilian Bankruptcy Law provides an EJ debtor with a 180-day stay against creditors action upon the filing an EJ Plan satisfying the creditor support requirement (i.e., 1/3 creditor support), because the Debtors previously received a 60-day stay as part of the Brazilian Mediation, the EJ Stay will be reduced

to 120 days. *See* Verified Supplement ¶ 5. Once the Brazilian Court has reviewed the EJ Plan and determined it has sufficient creditor support in favor of the proposed EJ Plan, it will issue an order ratifying the EJ Stay (the "EJ Acceptance Order"). *See* Brazilian Counsel Decl. ¶ 27. Although the Brazilian Court will ratify the EJ Stay once it enters the EJ Acceptance Order, the EJ Stay is in effect as of the time the Debtors filed the EJ Plan on August 24, 2026.[11]

13. The EJ Acceptance Order requires publication of a notice in the Brazilian Court's official publication informing creditors of the commencement of the Brazilian EJ Proceeding. Brazilian Counsel Decl. ¶¶ 68, 70. Once the EJ Plan has gathered support from the majority of creditors in each impaired class and the Debtors submit the EJ Plan for confirmation, a new notice will be published in the Brazilian Court's official publication informing creditors of the deadline to file objections. *Id.* Creditors impaired by the EJ Plan have 30 days to file objections thereto, after which the Debtors will have five days to reply. *See id.* ¶¶ 32–33. The Brazilian Court will subsequently rule on the objections, if any, and determine whether to confirm the EJ Plan. *Id.* ¶ 33. The EJ Plan will be confirmed by the Brazilian Court if it is supported by creditors representing more than half of the total amount of debt in each class of impaired claims and otherwise comports with Brazilian law. *Id.* Upon confirmation, the EJ Plan will become binding upon all impaired creditors. *Id.* ¶ 35.

**C. Developments Regarding the Chapter 15 Proceeding**

14. On June 26, 2026, the Petitioner filed the Voluntary Petitions commencing these Chapter 15 Cases. The Petitioner sought recognition of the Brazilian Proceeding, which comprises

[11] As in *Creditó Real*, where the court issued an order granting full force and effect to a Mexican concurso plan subject to an appeal, here the Court can enter relief on the basis of the EJ Stay that is in effect notwithstanding that it subject to ratification by the Brazilian Court. *Cf. In re Crédito Real S.A., S.A.B. de C.V., SOFOM, E.N.R.*, 670 B.R. 150, 159 (Bankr. D. Del. 2025) (TMH) (recognizing a Mexican proceeding as a foreign main proceeding notwithstanding a pending appeal of the Mexican court order confirming the plan under Mexican law).

both the Brazilian Mediation and the protective injunction proceeding that is in furtherance or in preparation of either a Brazilian EJ or RJ proceeding, as the Brazilian Debtors' main or non-main proceedings. *See* Verified Petition at 1.

15. The Petitioner also filed the Initial Provisional Relief Motion, seeking provisional relief from this Court to stay creditor actions in the United States pending the ruling on the request for recognition. At the hearing held on June 30, 2024, this Court heard the Initial Provisional Relief Motion and, on the same day, entered the Initial Provisional Relief Order. The Court found that the provisional relief sought by the Petitioner was "urgently needed to protect the assets of the Debtors and the interest of their creditors pending the Court's consideration of the pending application to recognize the Brazilian Proceeding." *See Initial Provisional Relief Order* ¶ I. The relief granted in the Initial Provisional Relief Order expires on the earlier of (a) the date on which a final determination is made by this Court with respect to the Verified Petition and the request for recognition of the Brazilian Mediation, and an order is entered in these Chapter 15 Cases giving effect to such determination, and (b) the date on which the stay in effect in the Brazilian Mediation is terminated or ceases to be in effect. *See id.* ¶ 8.

**D. The Debtors' Debt Obligations and Assets in the United States**

16. Although a significant portion of the Debtors' assets and interests are located in Brazil and abroad, some of their assets and obligations are also located in or connected to the United States. All of the Debtors have debt obligations governed by New York law and/or cash accounts in the United States. New York law governs the majority of the debt held by BNI, Netherlands Finance, BT&S, and America Finance. Braskem also holds debt governed by New York law.

17. Notably, the indentures governing the Notes are all governed by New York law and contain a forum selection clause that provides that the parties have consented to the jurisdiction of

the courts in any state or federal court located in the Borough of Manhattan, New York, with respect to any action that may be brought in connection with the Indentures or the Notes. Verified Petition ¶ 21.

18. In addition, as of August 21, 2026, all of the Debtors had bank accounts in the United States, totaling more than US$222 million as of August 20, 2026.

**E. Imminent Risk to the Debtors' Reorganization**

19. As discussed in the Initial Provisional Relief Motion, given the risk of additional adverse creditor actions being commenced, the Debtors determined that it was in their best interests, and the best interests of creditors, to commence the Brazilian Mediation in June 2026, and take advantage of a 60-day preliminary injunction available under Brazilian Bankruptcy Law to permit further negotiations before commencing the Brazilian EJ Proceeding. As discussed further in the Verified Supplement, as part of the Brazilian Mediation, the Debtors reached an agreement in principle on the EJ Plan with 39.6% of the creditors impaired by the EJ Plan. *See* Verified Supplement ¶ 4.

20. A majority of creditors have not yet agreed to the terms of the EJ Plan. Absent the requested relief, the Debtors will be vulnerable to enforcement actions by these creditors in New York state and federal courts seeking repayment on account of their debt. Certain creditors may also seek attachment of the Debtors' assets located in the United States. Verified Supplement ¶ 10. In fact, certain creditors have expressly stated that they intend to challenge the extension of provisional relief sought by this Motion, suggesting an interest in engaging in self-help enforcement or collection efforts. *See Status Update in Advance of August 18, 2026 Status Conference* [ECF No. 42] ¶ 6.

21. These potential actions would undermine the Brazilian Proceeding and the equal treatment of similarly situated creditors required under the Brazilian Bankruptcy Law, by

advantaging opportunistic creditors. Forcing the Debtors to defend themselves and their assets in a foreign location would unnecessarily deplete resources available for distribution to all creditors, as well as distract the Debtors and their management from negotiations regarding the EJ Plan. *See* Verified Supplement ¶ 11. The requested relief is necessary to avoid irreparable harm to the Debtors, their various stakeholders, and their reorganization efforts in the Brazilian Proceeding.

**JURISDICTION AND VENUE**

22. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157, 1334, as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1409(a) and 1410.

**RELIEF REQUESTED**

23. The Petitioner seeks entry of the Provisional Relief Extension Order under sections 105(a), 362 and 1519 of the Bankruptcy Code (the "Requested Relief"), extending the following provisional relief granted under the Initial Provisional Relief Order through a determination on recognition of the Brazilian Proceeding:

(a) providing that section 362 of the Bankruptcy Code applies to the same extent as the Brazilian Court's EJ Acceptance Order with respect to each of the Debtors and its property within the territorial jurisdiction of the United States; and

(b) granting such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

### A. The Requested Relief Is Authorized Under Sections 105(a), 362, 1519 of the Bankruptcy Code

24. Unlike plenary proceedings under other chapters of the Bankruptcy Code, the statutory stay under section 362 is not automatically triggered by the commencement of a chapter 15 case. *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 864 (Bankr. C.D. Cal. 2008). Instead, section 1519 provides the Court with broad discretion to grant provisional relief during the period between the filing of a chapter 15 petition and the court's ruling on that petition. *See In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *27 (Bankr. D. Del. Nov. 20, 2012) ("Sections 1507, 1519, 1521, and 1522 provide the Court with broad discretion to grant any appropriate relief."); *see, e.g.*, Order Granting Provisional Relief, *In re Raízen S.A.*, No. 26-10528 (LGB) (Bankr. S.DN.Y. Mar. 16, 2026), ECF No. 23 (provisionally granting the stay under section 362 of the Bankruptcy Code in connection with the debtors' Brazilian EJ proceeding); Order Granting Provisional Relief, *In re InterCement Brasil S.A.*, No. 24-11226 (MG) (Bankr. S.D.N.Y. Sept. 20, 2024), ECF No. 40 (same); Order Granting Motion for Provisional Relief, *In re Andrade Gutierrez Engenharia S.A.*, No. 22-11425 (MG) (Bankr. S.D.N.Y. Nov. 3, 2022), ECF No. 21 (same); *see also* Order Granting Provisional Relief, *In re Oi S.A.*, No. 23-10193 (JPM) (Bankr. S.D.N.Y. Feb. 8, 2023), ECF No. 20 (granting provisional relief during the period between a chapter 15 petition and the court's ruling on whether to recognize a Brazilian preliminary injunction proceeding); *In re Americanas S.A.*, No. 23-10092 (MEW) (Bankr. S.D.N.Y. Jan. 27, 2023), ECF No. 17; *In re Mina Tucano Ltda.*, No. 22-11198 (LGB) (Bankr. S.D.N.Y. Sept. 14, 2022), ECF No. 19; *In re Peraso Technologies Inc*., No. 20-11354 (SHL) (Bankr. S.D.N.Y. June 10, 2020), ECF No. 22. Specifically, section 1519(a) of the Bankruptcy Code permits the Court "from the time of filing a petition for recognition until [it] rules on the petition" to grant provisional

relief where it is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).

25. Here, the Debtors seek extension of provisional relief already granted by this Court. As the Court has previously found, "[t]he provisional relief…is urgently needed to protect the assets of the Debtors and the interests of their creditors pending the Court's consideration of the pending application to recognize the Brazilian Mediation."[12] *See* Initial Provisional Relief Order ¶ I. The Debtors' present request for relief seeks only to extend that relief for the benefit of all creditors during the course of the Brazilian EJ Proceeding and until such time as this Court can consider recognition of the Brazilian EJ Proceeding. The same facts and circumstances underlying the Initial Provisional Relief Motion exist today with perhaps even more urgency given the recent statements of certain creditors that have indicated they are not supportive of the ongoing restructuring efforts. *See supra* ¶ 20. The only change of fact is the progression of the Brazilian Mediation into the Brazilian EJ Proceeding, and, as previously noted, courts have routinely and uniformly found that an EJ qualifies as a foreign proceeding.[13] As such, the Requested Relief should be granted.

---

[12] For the avoidance of doubt, to the extent that a hearing on the requested relief has not occurred before the expiration of the stay granted in the Initial Provisional Relief Order, that stay will remain in effect until a hearing on this Motion occurs pursuant to S.D.N.Y. Local Rule 9006-2.

[13] *See, e.g.*, *In re Raízen S.A.*, No. 26-10528 (LGB) (Bankr. S.D.N.Y. Apr. 8, 2026) (recognizing a Brazilian EJ proceeding as a foreign proceeding); *In re Unigel Participações S.A.*, No. 24-11982 (MG) (Bankr. S.D.N.Y. Dec. 10, 2024), ECF No. 29 (same); *In re ODN I Perfurações Ltda.*, No. 23-10557 (DSJ) (Bankr. S.D.N.Y. May 4, 2023), ECF No. 24 (same); *In re Andrade Gutierrez Engerharia S.A.*, No. 2 11425 (MG) (Bankr. S.D.N.Y. Dec. 2, 2022), ECF No. 40 (same); *In re Odebrecht Engerharia e Construção S.A.*, No. 20-12741 (MEW) (Bankr. S.D.N.Y. Dec. 30, 2020), ECF No. 15 (same); *In re Odebrecht Óleo E Gás S.A.*, No. 17-13130 (JLG) (Bankr. S.D.N.Y. Dec. 13, 2017), ECF No. 28 (same); *In re Lupatech S.A.*, No. 16-11078 (MG) (Bankr. S.D.N.Y. May 26, 2016), ECF No. 15 (same); *In re U.S.J. – Açúcar e Álcool S.A.*, No. 22-10320 (DSJ) (Bankr. S.D.N.Y. Apr. 14, 2022), ECF No. 21 (recognizing as a foreign main proceeding a case filed pursuant to in-court reorganization section of the Brazilian Bankruptcy Law); *In re Samarco Mineracão S.A. - Em Recuperação Judicial*, No. 21-10754 (LGB) (Bankr. S.D.N.Y. May 13, 2021), ECF No. 22 (same); *In re Usina de Açúcar Santa Terezinha Ltda.*, No. 19-11199 (MEW) (Bankr. S.D.N.Y. May 16, 2019), ECF No. 30 (same); *In re Novonor S.A. – Em Recuperação Judicial*, No. 19-12731 (SMB) (Bankr. S.D.N.Y. Sept. 18, 2019), ECF No. 22 (same); *In re Serviços de Petróleo Constellation S.A.*, No. 18-13952 (MG) (Bankr. S.D.N.Y. May 9, 2019), ECF No. 86 (same); *In re OAS S.A.*, No. 15-10937 (SMB) (Bankr. S.D.N.Y. Aug. 3, 2015), ECF No. 85 (same); *In re Rede Energia S.A.*, No. 14-10078 (SCC) (Bankr. S.D.N.Y. Sept. 9, 2014), ECF No. 36

26. Indeed, the facts and circumstances underlying this Motion are substantially identical to those in *In re InterCement Brasil S.A.*, in which Judge Glenn extended provisional relief on the basis of an expiring Brazilian mediation until a final determination was made by the Bankruptcy Court with respect to recognition of the Brazilian EJ proceeding at issue. *See* Order Extending Provisional Relief, *In re InterCement Brasil S.A.*, No. 24-11226 (MG) (Bankr. S.D.N.Y. Sept. 20, 2024), ECF No. 40, ¶ 6. There, Judge Glenn noted that when the Chapter 15 petitions were filed, they were in support of a mediation and "raised the possibility of either an EJ or an RJ, but neither the EJ nor RJ had been filed" at that time. Hr'g Tr. 12:19–23, *In re InterCement Brasil S.A.*, No. 24-11226 (MG) (Bankr. S.D.N.Y. Sept. 19, 2024). Given that the subsequent EJ was filed in the "same bankruptcy court, before the same judge," Chief Judge Glenn granted the InterCement debtors' request for an extension of provisional relief. *Id.* 12:18–19.[14]

27. Even if the Court's prior order and *InterCement* were not enough of a basis to grant relief (and they are), the Debtors' present request for provisional application of section 362 to the Debtors and their property located within the United States falls squarely within the ambit of the relief available under section 1519(a) of the Bankruptcy Code. *First*, section 1519(a)(1) specifically empowers the Court to issue a provisional order "staying execution against the debtor's assets[.]" 11 U.S.C. § 1519(a)(1). *Second*, section 1521(a)(7) of the Bankruptcy Code,

---

(same); *see also In re Virgolino de Oliveira, S.A. Açúcar e Álcool*, No. 25-10696 (MG) (Bankr. S.D.N.Y. July 18, 2025), ECF No. 25 (recognizing a Brazilian RJ proceeding as foreign main proceedings); *In re Odebrecht Engenharia e Construção S.A. – Em Recuperação Judicial*, No. 25-10482 (MG) (Bankr. S.D.N.Y. Apr. 8, 2025), ECF No. 21 (same); *In re InterCement S.A.*, 668 B.R. 802 (Bankr. S.D.N.Y. 2025) (same).

[14] In *Iovate Health Sciences International Inc.*, Chief Judge Glenn similarly granted a motion to amend a recognition order to reflect the conversion of a proceeding commenced under Canada's *Bankruptcy and Insolvency Act* for one subsequently converted to a proceeding under the *Companies' Creditors Arrangement Act*. *See In re Iovate Health Scis. Int'l Inc.*, No. 25-11958 (MG) (Bankr. S.D.N.Y. Nov. 12, 2025), ECF No. 86. As the Foreign Representative stated in those cases, which is equally true here, "the only substantive change…is the applicable statutory scheme." *In re Iovate Health Scis. Int'l Inc.*, No. 25-11958 (MG) (Bankr. S.D.N.Y. Nov. 5, 2025), ECF No. 77.

as incorporated by section 1519(a)(3),[15] permits the Court to grant (with exceptions not relevant here) "any additional relief that may be available to a trustee" provided that the Court determines that such relief is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Debtors or the interests of their creditors. 11 U.S.C. §§ 1519(a)(3), 1521(a)(7). Taken together, section 1519(a)(3) and section 1521(a)(7) provide a clear basis for the application and enforcement of "any additional relief that may be available to a trustee" even on a provisional basis. *See In re Pro-Fit Holdings*, 391 B.R. at 867 ("The court concludes that sufficient authority exists under §§ 1519(a), 105(a), and 105(d) for the adoption of § 362 provisionally in these cases, to apply to all of the debtors' property in the United States pending a ruling on recognition of the foreign proceedings relating to the debtors herein."); *see also In re Hanjin Shipping Co., Ltd.*, 2016 WL 6679487 (Bankr. D.N.J. Sept. 20, 2016) (applying section 362 on an interim basis to prevent attachment of maritime liens before recognition but after entry of stay in Korean proceeding, noting that Section 1519 authorizes such relief on a provisional basis); *In re Grand Prix Assocs. Inc.*, 2009 WL 1410519, at *3 (Bankr. D.N.J. May 18, 2009) (noting that "after conferences regarding discovery and a trial on the Chapter 15 Petitions, the Court entered an Order granting Provisional Relief under Section 1519 imposing the automatic stay pursuant to Section 362 on the Foreign Debtors' assets"); *In re Innua Canada Ltd.*, 2009 WL 1025088, at *4 (Bankr. D.N.J. Mar. 25, 2009) ("The Court will grant the Receiver's Motion for Provisional Relief applying Section 362 to the Foreign Debtors' Chapter 15 Cases"). Thus, provisional relief under section 362 is also available to a foreign representative under section 1521(a)(7), as made applicable here under section 1519(a)(3).

---

[15] Section 1519(a)(3) provides that the Court may grant, on a provisional basis, "any relief referred to in paragraph (3), (4), or (7) of section 1521(a)." 11 U.S.C. § 1519(a)(3).

28. Moreover, the Court's authority to issue provisional relief under section 1519(a) is not limited to the remedies specified in subsections (a)(1) through (a)(3),[16] and the Court may also look to section 105(a) of the Bankruptcy Code as a separate basis for fashioning relief as is necessary to protect chapter 15 debtors and their creditors.[17] *See In re Pro-Fit Holdings*, 391 B.R. at 867 (holding that section 362 could immediately apply to chapter 15 under sections 1519(a), 105(a), and 105(d) of the Bankruptcy Code). Thus, the Court has discretion under both sections 1519(a) and 105(a) to order the Requested Relief in these Chapter 15 Cases.

29. The Requested Relief is urgently needed to protect the Debtors' assets and the interests of creditors as a whole. Absent the stay, the Debtors and their assets located in the United States would be at risk of adverse creditor actions that could undermine the Brazilian EJ Proceeding and irreparably harm the interests of the Debtors' creditors. The chapter 15 cases of *Oi* and *OAS*, each from this District, are illustrative.

- In *Oi*, prior to the commencement of its restructuring, the Oi Group had already engaged with its key creditors to negotiate a consensual solution for all stakeholders. Certain creditors, however, demanded concessions and other terms that were not feasible or acceptable to the Oi Group. In response, these creditors sent letters to the Oi Group threatening to bring costly and disruptive litigation. When the Oi Group did not accept the demands of these creditors, these creditors commenced legal action against the Oi Group. *See* Motion for Provisional Relief, *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 21, 2016), ECF No. 7; Order Granting Provisional

[16] *See, e.g.*, *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010) (Sections 1519(a)(1)-(3) represent a "non-exhaustive list of relief available to a foreign proceeding's representative in a Chapter 15 case"); *In re Vitro*, 455 B.R. 571, 579 (Bankr. N.D. Tex. 2011) ("[T]he relief enumerated in section 1519 is not all-inclusive" and "[t]he plain language of section 1519 of the Bankruptcy Code does not contain a limitation on the Court's authority to issue a stay or injunction, and that is where the Court's analysis must end."); Hr'g Tr., *In re Daewoo Corp.*, No. 06-12242 (REG) (Bankr. S.D.N.Y. Oct. 11, 2006), ECF No. 24 (interpreting section 1519(a)'s use of "including" to mean the list that follows is not exhaustive).

[17] Section 105(a) of the Bankruptcy Code, which allows this Court to, among other things, "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]", is made applicable in chapter 15 cases by section 103(a) of the Bankruptcy Code. *See* 11 U.S.C. § 103(a) (applying chapter 1 to proceedings under chapter 15).

Relief, *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016), ECF No. 22.

- Similarly, in *OAS*, certain bondholders petitioned for and obtained attachment orders on cash and intangible assets against the OAS Group, both before and during its chapter 15 case. *See In re OAS S.A.*, 533 B.R. 83, 89 (Bankr. S.D.N.Y. 2015) (noting that certain holders of New York law-governed bonds issued by the foreign debtor company had "sought and obtained an *ex parte* order of attachment" in state court); *see also In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175, 182 (Bankr. S.D.N.Y. 2022) (granting the foreign representative's request for provisional relief because permitting litigation to continue in a New York court could lead to attachment, which would "threaten the balance of the Brazilian EJ Plan and" such "harm [] 'cannot be remedied'").

30. The same potentially value-destructive risks and costly delays present in these cases are a threat to the Company's ability to quickly and efficiently restructure its debts through the Brazilian Proceeding. Accordingly, application of section 362 is urgently needed to protect the Debtors, their assets, as well as the interests of their stakeholders from adverse creditor action that would harm the Debtors by unduly consuming time, money, attention, and other resources. The litigation that would likely ensue (both in the United States and Brazil) would be costly and "[divert] funds needed for the purpose of maximizing value" for the equitable benefit of the Debtors' creditors. *In re Gercke*, 122 B.R. 621, 626 (Bankr. D.D.C. 1991) (finding in a former section 304 case that expending available resources on litigation outside the bankruptcy process "would constitute diversion of funds needed for the purpose of maximizing value"); *cf. In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) (noting that "forc[ing a foreign representative] to participate in expensive litigation that threatens to drain the assets of the estate" may result in irreparable harm).[18]

[18] Moreover, the Requested Relief is also appropriate because, among other things, it will promote (a) the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the [D]ebtor[s]," (b) the "protection and maximization of the value of the [D]ebtor[s'] assets," and

31. U.S. bankruptcy courts routinely impose the section 362 stay on a provisional basis or order similar provisional relief in chapter 15 cases to maintain the *status quo* pending the court's decision on the recognition petition. *See, e.g.*, *In re Raízen S.A.*, No. 26-10528 (LGB) (Bankr. S.DN.Y. Mar. 16, 2026), ECF No. 23; *In re Samarco Mineração S.A. – Em Recuperação Judicial*, No. 21-10754 (LGB) (Bankr. S.D.N.Y. Apr. 22, 2021), ECF No. 15; *In re InterCement Brasil S.A.*, No. 24-11226 (MG) (Bankr. S.D.N.Y. July 18, 2024), ECF No. 22; *In re Ocean Rig UDW INC.*, No. 17-10736 (MG) (Bankr. S.D.N.Y. Apr. 7, 2017), ECF Nos. 12 & 41 (entering an *ex parte* temporary restraining order imposing section 362 stay and provisionally granting stay with respect to the debtors and their U.S.-located assets pursuant to section 362); *In re Oi S.A.*, No. 23-10193 (JPM) (Bankr. S.D.N.Y. Feb. 8, 2023), ECF No. 20 (granting a motion seeking preliminary relief during the pendency of a foreign interim proceeding); *In re Americanas S.A.*, No. 23-10092 (MEW) (Bankr. S.D.N.Y. Jan. 27, 2023), ECF No. 17 (entering an order provisionally imposing a section 362 stay to protect the debtors' U.S.-located assets); *In re Mina Tucano Ltda*., No. 22-11198 (LGB) (Bankr. S.D.N.Y. Oct. 12, 2022), ECF No. 19 (same); *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016), ECF No. 22 (provisionally imposing section 362 stay); *In re Cogent Fibre Inc.*, No. 15-11877 (SMB) (Bankr. S.D.N.Y. July 17, 2015), ECF Nos. 11 & 13 (entering an *ex parte* temporary restraining order imposing section 362 stay and provisionally imposing section 362 stay); *In re NewSat Ltd.*, No. 15-10810 (LSS) (Bankr. D. Del. May 1, 2015), ECF No. 80 (provisionally applying section 362 "in its entirety"); *In re OAS S.A.*, No. 15-10937 (SMB) (Bankr. S.D.N.Y. Apr. 30, 2015), ECF No. 33 (same); *In re Japan Airlines Corp.*, 425 B.R. 732 (Bankr. S.D.N.Y. 2010) (same); *Pro-Fit Holdings*, 391 B.R. at 864-65 (same).

---

(c) the "facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment," as intended by section 1501 of the Bankruptcy Code. *See* 11 U.S.C. § 1501(a).

32. The Petitioner respectfully submits that the Relief Requested is both necessary and appropriate in these Chapter 15 Cases, particularly in light of the recent aggressive and threatening actions taken by certain creditors, including seeking prepayment of certain loan obligations, and the likelihood that others may take similar actions, to preserve and ensure the *status quo* while the Verified Petition is pending.

**B. The Requested Relief Also Meets the Preliminary Injunction Standards**

33. As this Court previously found, the Debtors have satisfied the standard under Section 1519(e) for a preliminary injunction. *See* Initial Provisional Relief Order ¶ J. Since the Court entered the Initial Provisional Relief Order, the Debtors have engaged in numerous negotiations with their financial creditors through the Brazilian Mediation, but the underlying risk of creditor self-help actions remains the same in the event that the provisional relief sought here is not granted. Given the Court's prior findings in the Initial Provisional Relief Order and that the risk remains the same, the Requested Relief should be granted.

34. Even if the Court were writing on a blank slate, the Requested Relief is squarely warranted. Section 1519(e) of the Bankruptcy Code generally requires a foreign representative to satisfy the general standards for injunctive relief. *See* 11 U.S.C. § 1519(e) ("The standards, procedures, and limitations applicable to an injunction shall apply to relief under [1519]"); *In re Worldwide Educ. Servs., Inc.*, 494 B.R. 494, 498 (Bankr. C.D. Cal. 2013) (holding that 1519(e) "generally applies to all relief sought pursuant to Section 1519, including imposition of the automatic stay"); *see also In re Vitro*, 455 B.R. 571, 580 (Bankr. N.D. Tex. 2011) ("Injunctions issued under 11 U.S.C.S. § 105 outside of a plan of reorganization may be granted only under the

usual rules for the issuance of an injunction.") (citing *In re Commonwealth Oil Ref. Co.*, 805 F.2d 1175, 1190 (5th Cir. 1986)).[19]

35. An injunction should be issued if the following elements are satisfied: (1) there is a likelihood of successful reorganization; (2) there is imminent irreparable harm to the debtor in the absence of an injunction; (3) the balance of harms tips in favor of the moving party; and (4) the public interest weighs in favor of an injunction. *See Lyondell Chem. Co. v. Centerpoint Energy Gas Servs. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 588–89 (Bankr. S.D.N.Y. 2009); *see also Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 48–50 (Bankr. S.D.N.Y. 2006), *aff'd* 365 B.R. 401 (S.D.N.Y. 2007). Courts in the Second Circuit require movants to show all four of these factors or, in the alternative, to "show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *MF Glob. Holdings Ltd. v. Allied World Assur. Co. (In re MF Glob. Holdings Ltd.)*, 562 B.R. 55, 64 (Bankr. S.D.N.Y. 2017) (citing *ACLU v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015)). In evaluating these factors, courts take a "flexible approach and no one factor is determinative." *In re Calpine Corp.*, 365 B.R. at 409 (certain internal citations omitted). Here, the Petitioner's request for a provisional *status quo* stay in these Chapter 15 Cases easily satisfies this standard.

***i. Petitioner is likely to succeed on the merits***

36. In the context of a chapter 15 case, demonstrating a likelihood of success on the merits requires the petitioner to show that he or she is likely to obtain recognition of the foreign

[19] *But see In re Pro-Fit Holdings*, 391 B.R. at 855 (holding that the standards, procedures, and limitations for issuing an injunction should not apply to relief under section 1519 when the relief sought is the imposition of the automatic stay on an interim basis).

proceeding. *See Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016), ECF No. 22 at 3 ("Based on the pleadings filed to date, the [c]ourt concludes that the [p]etitioner has demonstrated a likelihood that [p]etitioner will be able to . . . obtain recognition of the [foreign proceeding.]"); *see also In re Lupatech S.A.*, No. 14-11559 (SMB) (Bankr. S.D.N.Y. May 28, 2014), ECF No. 15 at 3 ("The [f]oreign [r]epresentative has demonstrated a substantial likelihood of success on the merits that . . . all statutory elements for recognition of the Foreign Proceeding are satisfied[.]"). Notably, the "success on the merits" standard has been interpreted by courts to apply to recognition *whether main or nonmain*. *See, e.g.*, *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016), ECF No. 22 at ¶ G (describing the "success on the merits" standard as having been met where the petitioner had demonstrated a likelihood that that the foreign proceeding would be recognized as "either a foreign main proceeding or foreign nonmain proceeding").

37. As the Court previously concluded, the Petition had satisfied his burden with respect to demonstrating a substantial likelihood of success that the Court would recognize the Brazilian Mediation. Initial Provisional Relief Order ¶ L. Such a result is equally likely in the case of the Brazilian EJ Proceeding. For the reasons set forth in the Verified Petition and Supplemental Petition, the Petitioner has demonstrated that all of the statutory elements under section 1517(a) of the Bankruptcy Code for recognition of the Brazilian Proceeding with respect to each of the Debtors—whether as the foreign main proceeding or a foreign nonmain proceeding—have been satisfied. Specifically, the Petitioner has demonstrated that: (a) the Brazilian Proceeding satisfies the elements of a "foreign proceeding" (as defined under section 101(23) of the Bankruptcy Code) with respect to each of the Debtors (*see* Supplemental Petition ¶¶ 12–19); (b) the Petitioner is the duly-authorized foreign representative (within the meaning of section 101(24) of the Bankruptcy Code) of the Brazilian Proceeding for purposes of these Chapter

15 Cases (*see* Verified Petition ¶¶ 92–93); and (c) the Verified Petition and accompanying documents meet the procedural requirements of section 1515 of the Bankruptcy Code (*see* Verified Petition ¶¶ 94–98).

38. The Petitioner has also sufficiently demonstrated that the Brazilian Proceeding is the "foreign main proceeding" (as that term is defined in section 1502(4) of the Bankruptcy Code) of each of the Debtors. *See* Verified Petition ¶¶ 64–91. As described in detail in the Verified Petition, the Braskem Group is one of the largest petrochemical companies in the Americas, carrying out various activities in the petrochemical market, from the production of thermoplastic resins and basic petrochemicals to the commercialization of chemical products globally. The Debtors are an economically and operationally integrated group, whose main assets are located in Brazil and whose operational activities are managed, directed, and monitored out of Brazil and the Braskem Group's headquarters in Brazil. Brazil is therefore each of the Debtors' center of main interests.[20]

39. Should this Court find that the center of main interests of any of the Debtors lies outside of Brazil, however, the Petitioner has demonstrated in the alternative that the Brazilian Proceeding qualifies as a "foreign nonmain proceeding" (as that term is defined in section 1502(5) of the Bankruptcy Code) with respect to such Debtors. Each of the Debtors partakes in non-transitory economic activity located in Brazil, the business purpose of each Debtor is linked to the Company's operations in Brazil and the locus of the Company's operations is Brazil. *See* Verified Petition ¶¶ 99–106. Each of the Debtors therefore at a minimum has an "establishment" located

[20] *See* Verified Petition ¶¶ 64–91; *see also In re Iovate Health Scis. Int'l Inc.*, 673 B.R. 516, 533 (Bankr. SDNY 2025) (Courts in this District have held that U.S. debtors may have their COMI in foreign jurisdictions).

in Brazil for purposes of chapter 15 recognition, *see* 11 U.S.C. § 1502(2),[21] and, as a result, the Brazilian Proceeding would also qualify as a foreign nonmain proceeding.

40. However, even if the Court is unpersuaded by the Debtors' center of main interest and establishment arguments, at minimum, the clear balance of hardships and potential for irreparable harm favors the Debtors. In determining whether to grant injunctive relief, bankruptcy courts have considered whether the issuance of an injunction would meaningfully contribute to the success of the debtor's reorganization. *See In re Purdue Pharma L.P.*, 666 B.R. 461, 469 (Bankr. S.D.N.Y. 2024) (granting an injunction during ongoing mediation to enjoin destructive creditor action). An injunction would ensure that the Debtors can meaningfully engage in the Brazilian Proceeding and negotiate with their creditors without the threat of adverse and value-destructive actions taken by creditors.

41. Accordingly, as there is a strong likelihood that the Court will recognize the Brazilian Proceeding as the foreign main proceeding (or, at the least as a foreign nonmain proceeding) with respect to each of the Debtors, the Petitioner has demonstrated a substantial likelihood of success on the merits.

***ii. The Debtors are at risk of irreparable harm if an injunction is not issued***

42. In the bankruptcy context, irreparable harm exists where the conduct to be enjoined would, if not stayed, interfere with the reorganization process. *In re Calpine Corp.*, 365 B.R. at 409 (internal citations omitted) (a court may issue a "preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process"); *In re Lyondell Chem. Co.*, 402 B.R. at 590; *see also In re Cont'l Airlines*, 177 B.R. 475, 481 n.6 (D. Del. 1993) ("In the bankruptcy context, irreparable harm may be discerned if the action sought to

[21] Section 1502(2) of the Bankruptcy Code defines "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2).

be enjoined would so consume the time, energy and resources of the debtor that it would substantially hinder the debtor's reorganization efforts.") (quoting *Sudbury, Inc. v. Escott*, 140 B.R. 461, 465 (Bankr. N.D. Ohio 1992)).

43. In the chapter 15 context, irreparable harm exists when the failure to enjoin local actions could disrupt the orderly restructuring of a foreign debtor and undermine the fair distribution of assets, or where creditor actions would pose the threat of dissipating such assets. *See*, *e.g.*, *In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. at 181 (granting provisional relief because allowing certain litigation in the United States to proceed risked attachment, which would cause imminent and irreparable harm to the debtors and creditor body at large because it would disrupt the Brazilian restructuring proceeding and possibly lead to inequitable recoveries among *pari passu* creditors); *In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) (recognizing irreparable harm if creditors were permitted to pursue their individual remedies and thereby "diminish the recovery available to other creditors and possibly wreck the [foreign debtor's] reorganization efforts"); *In re Berau Capital Resources PTE Ltd.*, No. 15-11804 (MG) (Bankr. S.D.N.Y. Aug. 6, 2015), ECF No. 20 at 3 (granting provisional relief where failure to enjoin could cause harm to foreign debtor from, *inter alia*, interference with efforts to restructure its operations pursuant to a foreign proceeding and "undermin[e] the [f]oreign [r]epresentative's efforts to achieve an equitable result for the benefit of all of the [f]oreign [d]ebtor's creditors and interest holders"); *In re Netia Holdings S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) (finding irreparable injury in the "dissipation of the finite resources of an insolvent estate").

44. Courts have additionally held that having to fend off litigation while navigating a judicial proceeding constitutes irreparable harm. *See In re Cont'l Airlines*, 177 B.R. at 481 n.6 (affirming bankruptcy court's decision to enjoin prosecution of lawsuits, as defending against them

during pendency of debtors' bankruptcy "would interfere with its ability to reorganize successfully"); *see also In re Alert Holdings, Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992) ("Where . . . the action sought to be enjoined would embarrass, burden, delay or otherwise impede the reorganization proceedings . . . the [U.S.] Bankruptcy Court may issue injunctive relief.") (citation omitted).

45. Here, as the Court previously concluded, the Debtors face irreparable harm in the absence of provisional relief. Initial Provisional Relief Order ¶ N. There remains an imminent risk that bank and financial creditors will seek to exercise setoff rights against the Debtors' assets held in Debtor accounts at each of these creditor entities. As of the Chapter 15 Petition Date, at least one creditor has attempted to seek prepayment of certain amounts owed despite no monetary or other default having occurred. Moreover, the Indentures are governed by New York law and the parties to those agreements selected New York state court or federal courts located in New York as the forum to adjudicate disputes. Creditors may attempt to argue that they can attach certain of the Debtors' substantial property under applicable New York law (potentially on an *ex parte* basis) in an attempt to gain superior recoveries over other creditors. Certain creditors have indicated they are not supportive of the ongoing restructuring efforts and suggested an interest in engaging in self-help enforcement or collection efforts. *See Status Update in Advance of August 18, 2026 Status Conference* [ECF No. 42] ¶ 6. If the Requested Relief is not granted and the Debtors continue to face the risk of adverse creditor action, the Debtors may be forced to spend extensive resources defending actions in multiple jurisdictions. *See Rickel Home Ctrs. v. Baffa (In re Rickel Home Ctrs.)*, 199 B.R. 498, 501 (Bankr. D. Del. 1996) (finding irreparable harm that would "interfere with the reorganization efforts" if debtor were subject to the "significant burdens" of discovery); *see also In re Gercke*, 122 B.R. at 626 (finding in a case under former section 304

of the Bankruptcy Code that expending available resources on litigation outside the bankruptcy process "would constitute diversion of funds needed for the purpose of maximizing value," which "would constitute irreparable harm").

46. Given the imminent nature of certain debt obligations, which payment could materially diminish the Debtors' minimum liquidity required for continuing their normal operations, and the risk of creditors commencing adverse actions against Debtors, there is a significant risk that the Debtors and their assets will be subject to extensive litigation in the United States. Absent immediate injunctive relief, the Debtors will have to redirect the liquidity that may be critical to the success of such restructuring defending against separate adverse creditor actions. Courts have granted Debtors facing similar circumstances substantially similar relief to ensure the wellbeing of Debtors and Creditors alike. *See*, *e.g.*, Order Granting Provisional Relief, *In re Oi S.A.*, No. 23-10193 (JPM) (Bankr. S.D.N.Y. Feb. 13, 2023), ECF No. 20; Order Granting Provisional Relief, *In re Americanas S.A.*, No. 23-10092 (MEW) (Bankr. S.D.N.Y. Jan. 27, 2023), ECF No. 17; Order Granting Provisional Relief, *In re Mina Tucano Ltda.*, No. 22-11198 (LGB) (Bankr. S.D.N.Y. Oct. 12, 2022), ECF No. 19; Order Granting Provisional Relief, *Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. June 22, 2016), ECF No. 22; Order Granting Provisional Relief, *OAS S.A.*, No. 15-10937 (SMB) (Bankr. S.D.N.Y. Apr. 30, 2015), ECF No. 33.

***iii. The balance of harms weighs heavily in favor of granting the Requested Relief***

47. The balance of harms also weighs in favor of granting the Requested Relief and imposing the section 362 stay. As the Court previously recognized when granting the Initial Provisional Relief Motion, the stay will merely preserve the *status quo* on a temporary basis pending a determination by this Court of whether the Brazilian Proceeding should be recognized. Initial Provisional Relief Order ¶ O. The stay will not bar or otherwise disenfranchise parties from participating in the Brazilian Proceeding, where each creditor's right to be heard will remain

unaffected. Nor will the requested stay preclude a creditor that feels unduly burdened by the Court's granting of the Requested Relief to seek to lift the stay for "cause." *See* 11 U.S.C. § 362(d). Instead, the Petitioner merely seeks to prevent certain creditors from attempting to end-run around the Brazilian Proceeding by commencing and continuing enforcement actions against the Debtors and their assets in the United States. On the other hand, as shown above, the harm to the Debtors in the absence of the Requested Relief would be severe.

***iv. The public interest favors granting the requested injunctive relief***

48. Granting the Requested Relief is also consistent with the public policies of chapter 15 by avoiding piecemeal litigation and depletion of a debtor's estate and the attendant inequitable distribution of property among claimholders. *See Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 459 (2d Cir. 1985) (noting in a case under former section 304 of the Bankruptcy Code the strong "public interest in the fair and efficient distribution of assets in a bankruptcy"). Moreover, the Requested Relief promotes the purposes of chapter 15, including: (i) providing greater legal certainty for trade and investment; (ii) fostering fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the Debtors; (iii) protecting and maximizing the value of the Debtors' assets; (iv) facilitating the rescue of financially troubled businesses, thereby protecting investments and preserving employment; and (v) promoting cooperation between the courts in the United States with those in foreign jurisdictions involved in cross-border insolvency cases. *See* 11 U.S.C. §§ 1501(a), 1525.

**C. All Parties Are Sufficiently Protected**

49. As required under section 1522(a) of the Bankruptcy Code, all parties are "sufficiently protected" for this Court to grant the Requested Relief. 11 U.S.C. §1522(a); *see In re SPhinX, Ltd.*, 351 B.R. 103, 112–13 (Bankr. S.D.N.Y. 2006) (holding that section 1522 provides

that the Court may grant or modify interim relief under section 1519 only if the interests of all parties are "sufficiently protected"). Relief under section 1519 of the Bankruptcy Code should be denied for a lack of sufficient protection only "if it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." H. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. 116 (2005). A determination of sufficient protection requires a balancing of the respective parties' interests. *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *See In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor relief balancing the interest of the foreign representative and those affected by the relief.").[22]

50. Here, all parties are sufficiently protected. As shown above, the narrowly tailored, relief requested herein will impose no undue hardship on any party that is not significantly outweighed by the benefits to the Debtors and all parties in interest. *See supra* ¶ 46. To the contrary, the Requested Relief will merely preserve the *status quo* for all parties pending the recognition hearing. In addition, the Brazilian assets are already subject to limitations pursuant to Brazilian Bankruptcy Law, and the section 362 stay in the United States is accompanied by its own protections and framework for modification. Creditors or contract counterparties can always seek relief from the protective stay. Such parties therefore benefit from protections provided by courts in Brazil and the United States.

**D. No Security is Required**

51. No security is required for the Requested Relief in accordance with Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). *See* Fed. R. Bankr. P. 7065; *see also Richardson v. Runge Fin. Co. (In re Richardson)*, No. 99-20522, 2003 Bankr. LEXIS

[22] The standard for determining whether the parties are sufficiently protected under section 1522(a) of the Bankruptcy Code thus mirrors the balance of hardships inquiry under the general standards for injunctive relief discussed above.

2461, *17 n.14 (Bankr. D. Idaho Oct. 21, 2003) (noting that Bankruptcy Rule 7065 waives the requirements under Rule 65(c) of the Federal Rules of Civil Procedure "if the order is sought by a debtor, trustee or debtor in possession"). At any rate, requiring security would be unwarranted in the present circumstances, as the Debtors' primary assets are under the jurisdiction of the Brazilian Court and the Requested Relief would last only until this Court's ruling on the Verified Petition. *See* 11 U.S.C. § 1520(a)(1).[23]

## NO PRIOR REQUEST

52. Other than the relief requested in connection with the Initial Provisional Relief Motion, no previous request for the relief requested herein has been made to this or any other court.

## CONCLUSION

53. Based on the foregoing, the Petitioner respectfully requests that the Court grant the Motion, including entry of (i) the Provisional Relief Extension Order, substantially in the form attached hereto as **Exhibit A**; and (ii) such other and further relief as the Court deems just and proper.

[*Remainder of Page Left Blank Intentionally*]

[23] Indeed, many courts, including this Court, have generally waived the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure in chapter 15 cases. *See, e.g.*, Order Granting Preliminary Injunction, *In re Inverness Distribution Ltd.*, No. 11-12106 (SCC) (Bankr. S.D.N.Y. May 18, 2011), ECF No. 21, at 5 ("Pursuant to Bankruptcy Rule 7065, the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure are waived.").

Dated: August 24, 2026
New York, New York

Respectfully submitted,

/s/ *Thomas S. Kessler*
Thomas S. Kessler

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
Richard J. Cooper
Thomas S. Kessler
David Z. Schwartz
rcooper@cgsh.com
tkessler@cgsh.com
dschwartz@cgsh.com

*Attorneys for Antonio Reinaldo Rabelo Filho,*
*as Petitioner and Foreign Representative*

**Exhibit A**

**Proposed Provisional Relief Extension Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| Braskem S.A., *et al.*,[1] | Case No. 26-11522 (MEW) |
| Debtors in a Foreign Proceeding. | Chapter 15<br>(Jointly Administered) |

**ORDER EXTENDING PROVISIONAL RELIEF**

Upon the Petitioner's *Supplemental Motion for Extension of Provisional Relief Pursuant to 11 U.S.C. §§ 1519, 105(a), and 362* (the "Motion") [ECF No. ●],[2] filed on behalf of Antonio Reinaldo Rabelo Filho (the "Petitioner" or the "Foreign Representative") the duly-authorized foreign representative of Braskem S.A. ("Braskem"), Braskem Netherlands B.V.; Braskem Netherlands Inc., B.V.; Braskem Netherlands Finance B.V.; Braskem Trading & Shipping B.V.; and Braskem America Finance Company (collectively, the "Debtors") in the jointly-administered extrajudicial proceeding (*recuperação extrajudicial/judicial*) (the "Brazilian EJ Proceeding") of the Debtors, which was converted on August 24, 2026, from a court-supervised interim mediation process (the "Brazilian Mediation" and, together with the Brazilian EJ Proceeding, the "Brazilian Proceeding") of the Debtors commenced on June 24, 2026 under Federal Law No. 11.101 of February 9, 2005 (as modified, the "Brazilian Bankruptcy Law"), of the laws of the Federative Republic of Brazil, pending before the 2nd Bankruptcy and Reorganization Division of the São

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Braskem S.A. (01-70 ‑ Brazil); Braskem Netherlands B.V. (6B01 ‑ Netherlands); Braskem Netherlands Inc., B.V. (9B01 ‑ Netherlands); Braskem Netherlands Finance B.V. (5B01 ‑ Netherlands); Braskem Trading & Shipping B.V. (7B01 ‑ Netherlands); and Braskem America Finance Co. (1581 ‑ US).

[2] Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Motion.

Paulo State Court of Justice (the "Brazilian Court"),[3] seeking entry of an Order (this "Order") granting the provisional relief requested in the Motion (together, the "Requested Relief") in the above-captioned chapter 15 cases (the "Chapter 15 Cases"); and this Court having considered (i) the Motion, (ii) the Forms of Voluntary Petition, (iii) the Verified Petition, along with the exhibits annexed thereto, (iv) the Brazilian Counsel Declaration, (v) the Initial Provisional Relief Motion, (vi) the Verified Supplement and (vii) the statements of counsel in support of the Motion at a hearing before this Court (the "Hearing"); and appropriate and timely notice of the filing of the Motion and the Hearing having been given; and no other or further notice being necessary or required; and after due deliberation and sufficient cause appearing therefor:

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. The Court has jurisdiction over this matter pursuant to sections 157 and 1334 of title 28 of the United States Code and the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.).

C. This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United States Code.

[3] The case number for the Brazilian EJ Proceeding before the Brazilian Court is 1111483-72.2024.8.26.0100.

D. Venue is proper in this district pursuant to sections 1409(a) and 1410 of title 28 of the United States Code.

E. The statutory basis for the relief requested consists of sections 1519, 1521(a)(7), 105(a) and 362 of the Bankruptcy Code.

F. The Brazilian Proceeding is pending in the City of São Paulo, State of São Paulo, Brazil.

G. On June 26, 2026, the Petitioner commenced these Chapter 15 Cases under chapter 15 of the Bankruptcy Code.

H. The Court is authorized to enter the provisional relief sought by the Petitioner in the Motion under sections 1519 and 105(a) of the Bankruptcy Code.

I. The provisional relief set forth herein is urgently needed to protect the assets of the Debtors and the interests of their creditors pending the Court's consideration of the pending application to recognize the Brazilian Proceeding, as required by 11 U.S.C. § 1519(a).

J. The provisional relief set forth herein is warranted and satisfies 11 U.S.C. § 1519(e).

K. The interests of the Debtors' creditors and other interested entities, including the Debtors, are sufficiently protected in the Court's grant of the provisional relief set forth herein, as required by 11 U.S.C. § 1522(a).

L. Based on the pleadings filed to date, the Court concludes that the Petitioner has demonstrated a substantial likelihood that the Court will recognize the Brazilian Proceeding as requested in the Verified Petition.

M. The Petitioner has demonstrated that there is a material risk that the Debtors will suffer irreparable harm in the absence of the provisional relief set forth herein.

N. Granting the provisional relief set forth in this Order will preserve the *status quo* and not result in significant harm to nonmoving parties. Any harm that conceivably could result to nonmoving parties by granting the provisional relief set forth in this Order is less than the irreparable harm that would result to the Debtors and creditors if such provisional relief were not granted.

O. Granting the provisional relief set forth in this Order will serve the public interest in that, among other things, such provisional relief is necessary to realize the intent and objectives of chapter 15 in this case pursuant to 11 U.S.C. § 1501(a).

P. For purposes of this Order and the relief granted herein, the balance of harms favors granting the provisional relief set forth herein.

Q. Due to the nature of the relief requested, no security is required under Rule 65(c) of the Federal Rules of Civil Procedure, pursuant to Bankruptcy Rule 7065, if applicable, or otherwise.

**NOW THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS**:

1. The Requested Relief is granted as set forth herein.

2. Section 362 of the Bankruptcy Code shall apply to the same extent as the stay commenced by the filing of the EJ Plan and as may ultimately be ratified by the Brazilian Court's EJ Acceptance Order (as defined in the Motion), as may be modified, supplemented or amended, with respect each of the Debtors and their property located within the territorial jurisdiction of the United States; *provided*, however, that to the extent the EJ Acceptance Order is modified or supplemented, the scope of this Order shall not be supplemented or modified absent further order of this Court.

3. Section 363 of the Bankruptcy Order shall apply to assets of America Finance during the pendency of this Order.

4. Notwithstanding anything to the contrary contained herein, nothing in this Order serves to grant any injunction that is prohibited under section 1519(d) of the Bankruptcy Code.

5. This Order is without prejudice to the right of any creditor or party-in-interest to seek relief from this Order if circumstances so warrant.

6. Notwithstanding anything to the contrary contained herein or provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon entry; (b) the Petitioner is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Petitioner is authorized and empowered, and may, in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

7. This Order shall remain in full force and effect from the date hereof until the date on which a final determination is made by this Court with respect to the Verified Petition and the request for recognition of the Brazilian Proceeding, and an order is entered in these Cases giving effect to such determination. For the avoidance of doubt, nothing in this Order (a) constitutes a final determination by this Court regarding the Petitioner's request for recognition of the Brazilian Proceeding, or (b) shall limit or restrict any actions or proceedings outside of the territorial jurisdiction of the United States by any creditor or party-in-interest with respect to any or all of the Debtors or their property located outside of the territorial jurisdiction of the United States, and all rights of all creditors and parties-in-interest to object to the relief sought in the Verified Petition are expressly reserved.

8. Copies of this Order shall be served via email, first class mail, or overnight courier in accordance with the procedures set forth in the separate scheduling order entered by the Court. Such service of this Order shall constitute sufficient service and notice, and no other or further service or notice shall be required.

9. This Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order.

**IT IS SO ORDERED**.

Dated: __________, 2026
New York, New York

______________________________
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE