CLEARY GOTTLIEB STEEN & HAMILTON LLP
Richard J. Cooper
Thomas S. Kessler
David Z. Schwartz
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999
*Attorneys for Antonio Reinaldo Rabelo Filho,*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | Case No. 26-11522 (MEW) |
| Braskem S.A., *et al.*,[1] | |
| | Chapter 15 |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |

**STATEMENT PURSUANT TO**
**11 U.S.C. § 1518 OF THE FOREIGN REPRESENTATIVE**
**REGARDING THE STATUS OF THE BRAZILIAN PROCEEDING**

I, Antonio Reinaldo Rabelo Filho, as the authorized foreign representative of the Debtors with respect to the Brazilian Proceeding (the "Foreign Representative"), pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am the Foreign Representative of the Debtors.

2. In my capacity as Foreign Representative, I am authorized to submit this statement on behalf of the Debtors in the extrajudicial reorganization proceeding (the "Brazilian EJ") of

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Braskem S.A. (01-70 – Brazil); Braskem Netherlands B.V. (6B01 – Netherlands); Braskem Netherlands Inc., B.V. (9B01 – Netherlands); Braskem Netherlands Finance B.V. (5B01 – Netherlands); Braskem Trading & Shipping B.V. (7B01 – Netherlands); and Braskem America Finance Co. (1581 – US).

Braskem S.A. ("Braskem" or the "Company") and certain of its affiliates (collectively, the "Debtors"), with the 2nd Bankruptcy and Reorganization Division of the São Paulo State Court of Justice (the "Brazilian Court") on August 24, 2026, pursuant to Brazilian Federal Law No. 11.101 of February 9, 2005, as modified (the "Brazilian Bankruptcy Law"), of the laws of the Federative Republic of Brazil ("Brazil"). I respectfully submit this statement (the "Statement") to inform the Court of recent developments regarding the EJ Plan and Brazilian Proceeding.[2]

3. I am over the age of 18, and I make this declaration on the basis of documentation I have reviewed and facts known to me through my work as Foreign Representative of the Debtors. Where relevant information has been provided to me by others, the information is true to the best of my knowledge and belief. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

**Update Regarding the EJ Plan**

4. As discussed in the *Petitioner's Verified Supplement to Verified Petition for Recognition of the Brazilian Proceeding and Motion for Extension of Provisional Relief* [ECF No. 49] (the "Verified Supplement"), the Debtors filed the EJ Plan on August 24, 2026 with the Brazilian Court, converting the Brazilian Mediation to a Brazilian EJ Proceeding. The EJ Plan establishes the terms and conditions for the restructuring of the Debtors' financial debt obligations. The EJ Stay is effective as of the time the Debtors filed the EJ Plan in Brazil.

5. On August 28, 2026, the Brazilian Court entered an order ratifying the EJ Stay after reviewing the EJ Plan and determining it satisfied the requirements of the Brazilian Bankruptcy Law. A certified translation of the EJ Petition is attached hereto as **Exhibit A**. A copy of the EJ

[2] Capitalized terms not otherwise defined in this Statement shall have the meanings given to such terms in the *Amended Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. Sections 105(A), 1515, 1517, 1520, and 1521*, [ECF No. 18] (the "Verified Petition").

Acceptance Order is attached hereto as **Exhibit B**, with a certified translation of the EJ Acceptance Order attached hereto as **Exhibit C**. The Foreign Representative will continue to keep the Court apprised of developments in the Brazilian Proceeding in accordance with section 1518 of the Bankruptcy Code or as otherwise requested by the Court.

Executed in São Paulo, Brazil
On August 28, 2026

*/s/Antonio Reinaldo Rabelo Filho*
*Antonio Reinaldo Rabelo Filho, as*
*Petitioner and Foreign Representative*

# **Exhibit A**

## **Certified Translation of the EJ Petition**

**Cristina Gonzales**
Tradutora Pública e Intérprete Comercial
Inglês - Português

Matrícula na JUCESP nº 787
CCM nº 9.743.188-5 (São Paulo, SP)

CPF/MF nº 108.911.608-09
RG nº 14.873.251 SSP/SP

*Tradução nº 23402* *Livro nº 345* *Folha nº 413*

I, Cristina Gonzales, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document written in PORTUGUESE was submitted to me, the translation of which is as follows:

**SEPARATION PAGE**
*(Automatically generated by the system)*

**Exhibit 1**

**Document type:**
AMENDMENT TO COMPLAINT

**Event:**
PETITION - AMENDMENT TO COMPLAINT

**Date:**
August 24, 2026, 16:22:46

**User:**
SP373757 - ANA ELISA LAQUIMIA DE SOUZA

**Proceedings:**
4113246-86.2026.8.26.0100

**Event Sequence:**
36

---

Proceedings 4113246-86.2026.8.26.0100, Event 36, EMENDAINIC1, Page 1

[*Logo of e. MUNHOZ ADVOGADOS*]

**TO THE HONORABLE LAW JUDGE OF THE 2nd BANKRUPTCY AND REORGANIZATION COURT OF THE JUDICIAL DISTRICT OF THE CAPITAL OF THE STATE OF SÃO PAULO**

*Case Record No. 4113246-86.2026.8.26.0100*

**(1) BRASKEM S.A.** ("Braskem"); **(2) BRASKEM NETHERLANDS B.V.** ("Braskem Netherlands"); **(3) BRASKEM NETHERLANDS INC. B.V.** ("Braskem Netherlands Inc."); **(4) BRASKEM TRADING & SHIPPING B.V.** ("BT&S"); **(5) BRASKEM NETHERLANDS FINANCE B.V.** ("Braskem Netherlands Finance"); and **(6) BRASKEM AMERICA FINANCE COMPANY** ("Braskem America Finance" and, together with the companies numbered (1) to (5), "Petitioners" or "Braskem Group"), identified in the records in question, hereby come through their lawyers (**exhibit 1**), based on article 308 of the Civil Procedure Code ("CPC") and articles. 20-B, paragraph 1, and 161 *et seq.* of Law no. 11,101/05 ("LFR"), to file an amendment to their Event-1 complaint for the processing of this **petition for out-of-court reorganization** and for staying of the lawsuits and petitions for executions that have been filed against Petitioners on the grounds of articles. 6 and 163, paragraph 8, of the Bankruptcy and Business Recovery Law (LFR), based on the reasons set out below.

**I.**

**BRIEF BACKGROUND**

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 9D51-BEDA-218F-018E.

**Cristina Gonzales**
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787
CCM nº 9.743.188-5 (São Paulo, SP)
CPF/MF nº 108.911.608-09
RG nº 14.873.251 SSP/SP


1. On June 24, 2026, the Braskem Group started a mediation with its main creditors at the Câmara Wind de Mediação ("Mediation").

2. The Mediation aimed at renegotiating Braskem Group's financial debt. To ensure stability of the negotiation and preserve its activities, Petitioners moved for a preliminary injunction order based on article 20-B, paragraph 1, of the LFR, to stay enforceability of its financial debts.

3. In their complaint, Petitioners presented Braskem Group's history and its corporate structure, and the reasons of the crisis Petitioners currently face and their evident economic, financial and operational viability. Petitioners also proved that their applicable jurisdiction is the Brazilian Courts and that the competence lays on this Honorable Court. All such aspects have already been exposed to the detail in the case at hand and can be consulted in the Event-1 statements.

4. This Honorable Court rightly so granted Petitioners' motion for an injunctive relief on June 26, 2026 (Event 7). Such ruling stayed the lawsuits and petitions for execution of debts that had been covered in the Mediation and further barred the suing parties from taking any acts of constraint and enforcement based on their credit claims ("Injunctive Relief").

5. The Mediation was fruitful and created conditions for Petitioners to reach an advanced level in negotiations with the majority of their financial creditors, which enabled Petitioners to restructure their debts, described in **exhibit 3** ("Credit Claims Subjected to the Plan" and "Creditors Subjected to the Plan").

6. Such negotiations resulted in the out-of-court reorganization plan ("Plan" - **exhibit 2**), which was signed by creditors whose credit claims represent 39.6% of the Credit Claims Subjected to the Plan ("Signatory Creditors"). As allowed by article 163, paragraph 7, of the LFR, Petitioners undertake to obtain the consent from the majority of the Credit Claims Subjected to the Plan within 90 days.

7. Accordingly, Petitioners submit this petition for out-of-court reorganization, in which they prove the quorum required by article 163, paragraph 7, of the LFR, was met and move this Court to stay any and all lawsuits, petitions for execution and acts of constraint against Petitioners, whose subject matter is the Credit Claims Subjected to the Plan, on the grounds of article 163, paragraph 8, and article 6 of the LFR. Upholding the stay period throughout this period is essential to keep a stable negotiating atmosphere and allow the parties to reach a definitive solution for Braskem Group's current economic and financial situation.

8. Lastly, as soon as they obtain consent from the majority of the Credit Claims Subjected to the Plan, pursuant to article 163 *et seq.* of the LFR, Petitioners will submit their out-of-court reorganization plan for approval by this Honorable Court.

## II.

## OPTIONAL JOINDER OF CO-PLAINTIFF

9. This request is made by several companies of the Braskem Group, gathered in joinder, insofar as there is **(i)** communion of rights and obligations in relation to this suit; **(ii)** connection due to claim and cause of action; and **(iii)** affinity of subject matters by common point of fact and law[1].

10. All Petitioners belong to the Braskem Group, under common control of Braskem. They compose a strongly integrated and economically interdependent business structure, their assets and liabilities are interconnected, and they have cross-warranties and operational synergies. For the reason of foregoing,

[1] Article 113 of the CPC coupled with article 189 of the LFR, and article 69-G of the LFR.

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 9D51-BEDA-218F-018E.

**Cristina Gonzales**
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787 CPF/MF nº 108.911.608-09
CCM nº 9.743.188-5 (São Paulo, SP) RG nº 14.873.251 SSP/SP


Petitioners' restructuring process is conducted in a joint and coordinated manner and involves creditors of all companies.

11. In such circumstances, moving for joinder of co-plaintiffs is the most appropriate solution to ensure the efficiency and consistency of the process, as it allows a uniform treatment of the mandatory relationships involved, coordination of restructuring measures and greater transparency to creditors and other stakeholders. When it comes to business groups with an integrated structure, this is the most efficient and transparent way to ensure effectiveness of the restructuring, according to specialized legal academic works[2].

12. Therefore, Petitioners move this Court to allow a joinder of co-plaintiffs when processing the out-of-court reorganization.

**III.**
**JURISDICTION AND COMPETENCE OF THIS COURT**

13. As demonstrated in their (Event 1) complaint for Motion for Injunctive Relief, the Brazilian jurisdiction and competence of this Honorable Court are unequivocal, both with respect to Braskem and Petitioners incorporated and headquartered outside Brazil - in this case, Braskem Netherlands, Braskem Netherlands Inc., BT&S, Braskem Netherlands Finance and Braskem America Finance ("Overseas Companies").

14. The foregoing is the reason the Motion for Injunctive Relief was distributed and regularly processed at this Honorable Court. For the exact same reasons, already explained in this case record, such petition for out-of-court reorganization should also be processed at this Honorable Court.

15. Accordingly, the jurisdiction of the Brazilian Court and the competence of the Courts of Bankruptcy and Judicial Reorganization of the Judicial District of the Capital of São Paulo to process this petition for out-of-court reorganization, pursuant to article 21-III of the CPC and articles 3 and 69-G, paragraph 2, of the LFR should be granted.

**IV.**
**LEGAL QUORUM MET: APPROVAL OF MORE THAN 1/3 OF THE CREDIT CLAIMS SUBJECTED TO THE PLAN**

16. According to article 163, paragraph 1, of the LFR, the out-of-court reorganization plan may cover a "*group of creditors of the same nature and subjected to similar payment terms*". For the plan to be ratified, consent from "*creditors representing more than half of the credits covered by the out-of-court reorganization plan*" is necessary (article 163, main provision, of the LFR).

17. Nevertheless, article 163, paragraph 7, of the LFR allows debtor to initiate an out-of-court reorganization before reaching the definite quorum. Filing a petition for out-of-court reorganization is possible if the "*consent from creditors representing at least one third (1/3) of all credits of each type covered by such plan is proven, provided debtor commits to within a non-extendable period of ninety (90) days as from such petition's date reach the quorum under this article's main provision by obtaining express consent to it*".

18. The Braskem Group intends to restructure only its unsecured financial credits, with no implication for its debts and obligations owed to customers, suppliers, resellers and other business partners. In other

[2] CEREZETTI, Sheila Christina Neder. *Grupos de sociedade e recuperação judicial: o indispensável encontro entre os direitos societário, processual e concursal.* In: YARSHEL, Flávio Luiz; *et al. Processo Societário II*. São Paulo: Quartier Latin, 2015. pp. 751-754.

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 9D51-BEDA-218F-018E.

Rua Pereira Estéfano, nº 114 - conjunto 103
04144-070 São Paulo, SP
+55 (11) 3384-8550 /+55 (11) 99153-0636
cristina@aliancatraducoes.com.br

Cristina Gonzales
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787 CPF/MF nº 108.911.608-09
CCM nº 9.743.188-5 (São Paulo, SP) RG nº 14.873.251 SSP/SP



words, its out-of-court reorganization plan covers debts that have the same nature and similar payment terms, as established in article 163, paragraph 1, of the LFR.

19. For ease of reference, Petitioners submit a complete list of their Credit Claims Subjected to the Plan and Signatory Creditors to the detail in **exhibit 3**.

20. The total amount of debts subjected to the out-of-court reorganization is BRL 187,072,287,391.72, of which BRL 56,476,784,170.44 corresponds to Credit Claims Subjected to the Plan and BRL 130,595,503,221.28 arise from existing obligations among Petitioners - i.e. intercompany credit claims.

21. Consent already obtained from certain Creditors Subjected to the Plan ("Signatory Creditors") is sufficient for the filing of this petition. On a consolidated basis, its credits are equivalent to 39.6% of the total value of the Credit Claims Subjected to the Plan[3], disregarding the obligations among Petitioners - which, despite also having been restructured, cannot be considered in the calculation of the quorum, pursuant to article 163, paragraph 3-II, of the LFR[4].

22. The Signatory Creditors are, therefore, holders of more than 1/3 of the total Credit Claims Subjected to the Plan, according to article 163, paragraph 7, of the LFR. The consent from such creditors can be attested by their signatures on the adhesion terms and respective proof of powers instruments (**exhibit 4**), as required by article 163, paragraph 6-III, of the LFR[5].

23. As seen in several recent cases, such as Oncoclínicas'[6][7], Havana's[8], Aliança's[9], Intercement's, TPA's[10] and St. Marché's[11], the quorum to be considered in out-of-court reorganization is the consolidated quorum, as shown above. The same criterion was used in the out-of-court reorganization of Odebrecht

---

[3] Severally, per company, the credits of the Signatory Creditors are equivalent to: (i) 39.6% of the total amount of Braskem's Credit Claims Subjected to the Plan; (ii) 20.4% of the total amount of Braskem Netherlands Credit Claims Subjected to the Plan; (iii) 42.4% of the total amount of BT&S Credit Claims Subjected to the Plan; (iv) 50.6% of the total amount of Braskem Netherlands Finance Credit Claims Subjected to the Plan; (v) 13.2% of the total amount of Braskem America Finance Credit Claims Subjected to the Plan. All debts of Braskem Netherlands Inc. are obligations among Petitioners, so that the percentage of credits of the Signatory Creditors does not apply to such entity, pursuant to article 163, paragraph 3-II, of the LFR.

[4] "Article 163 [...] paragraph 3 For the exclusive purposes of calculating the percentage provided for in the main provision of this article: [...] II – the credit claims held by the persons listed in article 43 of this article shall not be computed".

[5] "Article 163 [...] paragraph 6 For approval of the plan referred to in this article, in addition to the documents provided for in the main provision of article 162 of this Law, the debtor must submit: [...] III – the documents that prove the signatories' powers to novate or compromise, a complete list of creditors's names next to their address information, the nature, classification and updated value of their credit claim, with information on the credit origin, the regime of the respective maturities and the indication of the accounting records of each pending transaction".

[6] Proceeding No. 4126842-40.2026.8.26.0100 in progress at the 3rd Judicial Reorganization and Bankruptcy Court of the Judicial District of São Paulo/SP.

[7] Proceeding No. 4000194-54.2025.8.26.0260 in progress at the 1st Regional Court of Business Jurisdiction and Conflicts Related to Arbitration of the Judicial District of São Paulo/SP.

[8] Proceeding No. 4144507-69.2026.8.26.0100 in progress at the 2nd Judicial Reorganization and Bankruptcy Court of the Judicial District of São Paulo/SP.

[9] Proceeding No. 1111483-72.2024.8.26.0100, which was processed at the 1st Judicial Reorganization and Bankruptcy Court of the Judicial District of São Paulo/SP.

[10] Proceeding No. 1104901-56.2024.8.26.0100, which was processed at the 1st Judicial Reorganization and Bankruptcy Court of the Judicial District of São Paulo/SP.

[11] Proceeding No. 1051462-96.2025.8.26.0100 in progress at the 1st Judicial Reorganization and Bankruptcy Court of the Judicial District of São Paulo/SP.

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 9D51-BEDA-218F-018E.

Rua Pereira Estéfano, nº 114 - conjunto 103
04144-070 São Paulo, SP
+55 (11) 3384-8550 /+55 (11) 99153-0636
cristina@aliancatraducoes.com.br

**Cristina Gonzales**
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787
CCM nº 9.743.188-5 (São Paulo, SP)
CPF/MF nº 108.911.608-09
RG nº 14.873.251 SSP/SP


Engenharia e Construção[12], Colombo[13] and Liq Groups[14], before the law was amended through Law 14,112/2020.

24. In the case at hand, a strong interconnection among Petitioners' assets and liabilities should be noted. The assets of Braskem Netherlands, Braskem Netherlands Finance, Braskem Netherlands Inc., Braskem America Finance and BT&S are mainly intercompany credit claims against other companies in the group. In addition, the obligations between Petitioners also represent approximately 70% of the Credit Claims Subjected to the Plan.

25. Interconnection and interdependence are even stronger and more evident when it comes to Braskem Netherlands Finance, Braskem Netherlands Inc. and Braskem America Finance - corporate vehicles established to raise debt in the international market and take subsequent loans to fund almost all of the other Petitioners. Such corporate vehicles are common in corporate groups the size of the Braskem Group, which structure companies in other countries to enter international capital markets more easily and efficiently by raising funds and forwarding funds at large to sponsor activities in Brazil.

26. Petitioners also have several cross-warranties. Braskem, in particular, is the warrantor of the main financial debts of the other Petitioners, including the bills issued by Braskem Netherlands Finance and Braskem America Finance and various bank financing facilities.

27. In addition, as shown in paragraphs 35-42 of the (Event-1) complaint, all companies have a control or dependence relationship and identity of the corporate structure, given that they are all directly or indirectly controlled by Braskem. Thus, the performance of all Petitioners is guided by the same legal entity. In this sense, the organizational chart of the Braskem Group, which operates in a strongly integrated manner is as follows:




[12] Proceeding No. 1075159-25.2020.8.26.0100, which was processed at the 1st Judicial Reorganization and Bankruptcy Court of the Judicial District of São Paulo/SP.
[13] Proceeding No. 1058981-40.2016.8.26.0100, which was processed at the 2nd Judicial Reorganization and Bankruptcy Court of the Judicial District of São Paulo/SP.
[14] Proceeding No. 1000687-91.2019.8.26.0228, which was processed at the 1st Judicial Reorganization and Bankruptcy Court of the Judicial District of São Paulo/SP.

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 9D51-BEDA-218F-018E.

Cristina Gonzales
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787 CPF/MF nº 108.911.608-09
CCM nº 9.743.188-5 (São Paulo, SP) RG nº 14.873.251 SSP/SP


28. In addition, the Braskem Group has joint operations in the market. This is an element that arises from the development of complementary activities by Petitioners with synergy among their operations. In summary:

**(i)** Braskem controls all other Petitioners, either directly or indirectly, guides the group's decision-making process, concentrates the most relevant assets, the main contracts and most of the Braskem Group's revenue;

**(ii)** Braskem Netherlands controls the segment of foreign companies of Braskem Group and coordinates the distribution of thermoplastic resins in Europe and Asia;

(iii) BT&S does business in the logistics and acquisition of raw materials to supply Braskem Group's internal demand and in the distribution of chemicals in international market. and

**(iv)** Braskem America Finance, Braskem Netherlands Finance and Braskem Netherlands Inc. are specific-purpose companies [*sociedades de propósito específico*] intended to raise and manage funds in international market to fund the activities of other companies of the Braskem Group.

29. Together, all of such companies compose a corporate group with strongly integrated assets and liabilities and are the largest producer of thermoplastic resins in the Americas and the seventh largest in the world. Their creditors, suppliers, consumers and the market in general know all Petitioners simply under the name "Braskem".

30. This joint and coordinated action has always been intrinsic to the relationship established among Petitioners and the Creditors Subjected to the Plan. After all, the investments made in the Braskem Group have never been guided by the individual capacity to pay corporate vehicles issuing the securities, isolated and non-operational, but by the revenue generation capacity of the Braskem Group as a whole, resulting precisely from the integrated performance of Petitioners. For no other reason, in the context of the restructuring, the Creditors Subjected to the Plan negotiated and approved a Plan that reflects the unequivocal interconnection and interdependence of Petitioners' assets, liabilities and productive activities.

31. Thus, such out-of-court reorganization meets the requirements to be admitted and granted by this Court.

## V.
## MANDATORY DOCUMENTATION SUBMITTED

32. Petitioners hereby submit all documents necessary for the processing of this out-of-court reorganization and the timely ratification of their out-of-court reorganization plan, pursuant to articles 48 and 163 of the LFR. Namely:

**(i)** minutes of the resolutions of the competent corporate bodies authorizing this petition for out-of-court reorganization to be filed (**exhibit 1**);

**(ii)** list of Credit Claims Subjected to the Plan indicating the Signatory Creditors and the consent quorum (article 163, paragraph 6-III, of the LFR) (**exhibit 3**);

**(iii)** documents proving the consent from creditors reaching the one-third quorum for all Credit Claims Subjected to the Plan, and documents proving the out-of-court reorganization signatories' powers to novate or compromise (article 163, main provision, and paragraph 6- III, of the LFR) (**exhibit 4**);

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 9D51-BEDA-218F-018E.

Rua Pereira Estéfano, nº 114 - conjunto 103
04144-070 São Paulo, SP
+55 (11) 3384-8550 /+55 (11) 99153-0636
cristina@aliancatraducoes.com.br

Cristina Gonzales
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787
CCM nº 9.743.188-5 (São Paulo, SP)
CPF/MF nº 108.911.608-09
RG nº 14.873.251 SSP/SP


**(iv)** Claimants' trial balances, financial statements for the last fiscal year, statements prepared especially to support this petition (**exhibit 5**) and Claimants' cash flow projections (**exhibit 6**) (article 163, paragraph 6-I and II, of the LFR);

**(v)** copy of the Petitioners' articles of incorporation (article 48, main provision, of the LFR) and acts of appointment of Petitioners' administrators (article 48-IV of the LFR) (**exhibit 1**);

**(vi)** goodstanding certificates issued by commercial boards proving Petitioners have been on business regularly for more than 2 years (article 48, main provision, of the LFR) (**exhibit 7**);

**(vii)** certificates of distribution of insolvency proceedings and ratification of an out-of-court reorganization plan on behalf of Petitioners (article 48-I, II and III and article 161, paragraph 3, of the LFR) (**exhibit 8**); and

**(viii)** certificates of criminal cases distributed on behalf of Petitioners, their administrators and controlling shareholders (article 48-IV, of the LFR) (**exhibit 9**).

## VI.
## STAYING PERIOD (Article 6 of the LFR).
## BARS ENFORCEMENT OF CREDIT CLAIMS SUBJECTED TO THE PLAN

33. Pursuant to article 163, paragraph 8, of the LFR, the suspension period established in article 6 of the LFR applies automatically to Credit Claims Subjected to the Plan from the moment the request for out-of-court reorganization is filed.

34. Considering the over 1/3 consents to the Plan from the Creditors Subjected to the Plan, as evidenced in item IV above, all lawsuits, executions and/or acts of constriction of equity from Petitioners shall be automatically stayed on the grounds of articles 163, paragraph 8, and article 6 of the LFR.

35. With such order to stay, Petitioners will be able to keep a stable atmosphere to negotiate with the Creditors Subjected to the Plan which have not yet signed it, without the risk of having their assets attacked in an actual hunt for their assets.

36. At this point, it should be noted that, in view of this petition for out-of-court reorganization, certain financial institutions that are creditors of the Braskem Group could claim the incidence of contractual clauses to allow taking possession of monies in Petitioners' bank accounts seeking repayment of Credit Claims Subjected to the Plan. Here are some examples of such clauses[15]:

> 2.1 In the event of a Credit Event provided for in Clause 2.2 below, the Active and Passive Transactions will be considered immediately and automatically due, and the Derivative and Purchase and Sale Transactions will be considered settled in advance, regardless of the original maturity date of these transactions. The amount of each transaction will be considered automatically due and payable, under the terms of Clause 1.1.1, above, being subject to enforcement, under the terms of this Agreement.

[15] The following is a free translation of the second clause: "In the event of the occurrence and continuation of an Event of Default pursuant to Clause 13.1 (*Events of Default*), each Debtor hereby authorizes each Creditor and each Affiliate of each Creditor to proceed, to the extent permitted by applicable law, without prior notice, by right of set-off, banking privilege or counterclaim, against any assets of the Borrower (or the Guarantor, as the case may be) in any currency that are, at any time, in the possession of said Creditor or Affiliate, in any agency or office, up to the full limit of all amounts due to the Creditors hereunder. Any Creditor so proceeding against any Debtor, or having an Affiliate so proceeding against any Debtor, shall promptly notify the Facility Agent of any action taken by such Creditor or Affiliate under this Clause 13.3; provided that the absence of such notification shall not affect the validity of said compensation and its application."

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 9D51-BEDA-218F-018E.

**Cristina Gonzales**
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787 CPF/MF nº 108.911.608-09
CCM nº 9.743.188-5 (São Paulo, SP) RG nº 14.873.251 SSP/SP



**13.3 Right of Setoff**

If an Event of Default under Section 13.1 (*Events of Default*) shall have occurred and be continuing, each Obligor hereby authorizes each Lender and each Affiliate of each Lender to proceed, to the extent permitted by applicable law, without prior notice, by right of setoff, banker's lien or counterclaim, against any assets of the Borrower (or the Guarantor, as the case may be) in any currency that may at any time be in the possession of such Lender or Affiliate, at any branch or Office, to the full extent of all amounts payable to the Lenders hereunder. Any Lender that so proceeds against any Obligor or that has an Affiliate that so proceeds against any Obligor, the Lender shall forthwith give notice to the Facility Agent of any action taken by such Lender or Affiliate pursuant to this Section 13.3; provided that the failure to give such notice shall not affect the validity of such setoff and application.

37. In total, **incidence of such clauses could entail approximately BRL 400 million in Petitioners' bank accounts being taken in possession**. In any such case, Braskem Group's restructuring efforts and the fruitful result of the Mediation would otherwise be irreversibly compromised because such enforcement **(i)** would deprive Petitioners from resources essential for them to conduct their operations and that are used to pay employees, suppliers and other expenses essential for Braskem Group's activities; and **(ii)** would also imply full satisfaction of certain Credit Claims Subjected to the Plan, which, in practice, would mean granting privileged treatment to such creditors to the detriment of all others.

38. As it is known, a Credit Claim Subjected to a Plan can never be satisfied on terms other than those provided for in a reorganization plan, under penalty of giving a privileged treatment to a particular Creditor Subjected to a Plan and to the detriment of the others, in an evident violation of the principle of *par conditio creditorum* (articles 49 and 59 of the LFR).

39. In other words, as already ruled by the honorable São Paulo Appellate Court (TJSP), allowing enforcement of any Credit Claim Subjected to a Plan "***would imply immediate paying part of the creditors of a certain class while the other creditors would remain subjected to the terms of the plan*** *and, in such case, unsecured credit claims would, for example, take 13 years to be paid off. Enforcement could even lead to the* ***absurd hypothesis that those in default with the business group under reorganization (and, therefore, still have a debt with it) would then indirectly have their credit claim paid off*** *while other creditors, in compliance with their obligations to the companies under reorganization, bearing only the status of creditors, are forced to wait until the entire reorganization process is complete to receive their credit claim, which will also be subject to reductions arising from the discount provided for in such plan*"[16].

40. It is evident, therefore, that the stay period under article 6 of the LFR also prevents the Credit Claims Subjected to the Plan from being enforced after a petition for judicial or out-of-court reorganization, as it is a means of having credit claims satisfied, which is equivalent to having them paid off, whose enforceability is stayed. And, in this specific case, the express recognition of the prohibition of taking possession of resources to satisfy Financial Credit Claims Subjected to the Plan is essential to preserve Petitioners' cash – which is already compromised by their current economic and financial situation – and, thus, ensure the continuity of their business activities and safeguard the fruitful result of the Mediation.

41. On the foregoing grounds, when granting the Motion for Injunctive Relief, this Honorable Court would expressly recognize that, "***in view of the unenforceability of the obligations subject to this procedure, any forms of having obligations satisfied, including enforcements and withholdings, are prohibited***" (Event 7).

[16] São Paulo Court of Justice (TJSP), Interlocutory Appeal (AI) No. 2260720-90.2015.8.26.0000, Reporting Appellate Justice Fabio Tabosa, 2nd Reserved Chamber of Business Law, judged on May 12, 2016.

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 9D51-BEDA-218F-018E.

Rua Pereira Estéfano, nº 114 - conjunto 103
04144-070 São Paulo, SP
+55 (11) 3384-8550 /+55 (11) 99153-0636
cristina@aliancatraducoes.com.br

**Cristina Gonzales**
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787
CCM nº 9.743.188-5 (São Paulo, SP)
CPF/MF nº 108.911.608-09
RG nº 14.873.251 SSP/SSP



42. Thus, all of the lawsuits, lawsuits for execution, equity constrictions and/or enforcements acts aiming Petitioners' Credit Claims Subjected to the Plan should be stayed pursuant to article 163, paragraph 8, and article 6 of the LFR.

**VII.**
**REQUESTS**

43. For all of the foregoing, once it is proven that Petitioners meet all the requirements necessary to have their petition granted and they have submitted all the documents required by the LFR, Petitioners make the following requests:

**(i)** admission of this petition on the grounds of article 164 of the LFR, and the recognition of the ninety (90)-day period to obtain express consent from the majority of the Credit Claims Subjected to the Plan, pursuant to article 163, paragraph 7, of the LFR;

**(ii)** stay of the enforceability of all Credit Claims Subjected to the Plan and all lawsuits, lawsuits for execution and acts of constraint against Petitioners whose subject matter is the Credit Claims Subjected to the Plan, and prohibition of the enforcement of Credit Claims Subjected to the Plan, pursuant to article 163, paragraph 8, and article 6 of the LFR; and

**(iii)** after obtaining the consent from the majority of the Credit Claims Subjected to the out-of-court reorganization plan, a court order determining publication of a call notice intended for the creditors, under article 164 of the LFR, so that, if they wish, they may challenge the out-of-court reorganization plan, under article 164, paragraph 3, of the LFR, which must be timely ratified by a court decision, so that it produces its legal effects and binds all the Creditors Subjected to the Plan, under article 165 of the LFR.

44. Petitioners protest the attachment of a sworn translation of the documents in foreign languages within 15 days from this date.

45. This case is assigned the value of BRL 187,072,287,391.72, which corresponds to the total amount of Financial Credit Claims Subjected to the Plan (BRL 56,476,784,170.44) and the total amount of intercompany debts (BRL 130,595,503,221.28).

Granting is hereby requested.
São Paulo, August 24, 2026.

Eduardo Secchi Munhoz
Brazilian Bar Association - São Paulo Chapter
(OAB/SP) No. 126.764

Ana Elisa Laquimia de Souza
OAB/SP No. 373.757

Danilo Domingues Guimarães
OAB/SP No. 422.993

Raphael Maldi Mendes
OAB/SP No. 439.913

Lucas Pereira Calmon
OAB/SP No. 508.290

Caio de Magalhães Brega
OAB/SP No. 545.784

**List of Exhibits**

| No. | Exhibit description |
|---|---|
| **Exhibit 1** | Powers of attorney, documents proving the powers of lawyers and minutes of corporate resolutions authorizing the petition for out-of-court reorganization |
| **Exhibit 2** | Out-of-court reorganization plan |
| **Exhibit 3** | List of Creditors Subjected to the Plan and List of Signatory Creditors |

Rua Pereira Estéfano, nº 114 - conjunto 103
04144-070 São Paulo, SP
+55 (11) 3384-8550 /+55 (11) 99153-0636
cristina@aliancatraducoes.com.br

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 9D51-BEDA-218F-018E.

**Cristina Gonzales**
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787
CCM nº 9.743.188-5 (São Paulo, SP)
CPF/MF nº 108.911.608-09
RG nº 14.873.251 SSP/SP

*Tradução nº 23402* *Livro nº 345* *Folha nº 422*

| | |
|---|---|
| **Exhibit 4** | Adhesion Terms signed by the Signatory Creditors and documents proving the powers of the Plan Signatories |
| **Exhibit 5** | Petitioners' accounting statements and trial balance sheets |
| **Exhibit 6** | Petitioners' cash flow projections |
| **Exhibit 7** | Goodstanding certificates issued by commercial boards |
| **Exhibit 8** | Certificates of distribution of insolvency proceedings |
| **Exhibit 9** | Certificates of distribution of criminal lawsuits and lawsuits for execution on behalf of Petitioners, their controlling shareholders and their administrators |

IN WITNESS WHEREOF, I hereunto set my hand and seal.

São Paulo, August 27, 2026

Rec. Nº.: 11005
Talão Nº.: 64
Emol.: R$ 2.363,48
Nº de caracteres: 21492 (sem espaço)

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 9D51-BEDA-218F-018E.

Rua Pereira Estéfano, nº 114 - conjunto 103
04144-070 São Paulo, SP
+55 (11) 3384-8550 /+55 (11) 99153-0636
cristina@aliancatraducoes.com.br

# PROTOCOLO DE ASSINATURA(S)

O documento acima foi proposto para assinatura digital na plataforma Certisign Assinaturas. Para verificar as assinaturas clique no link: http://assinaturas.certisign.com.br/Verificar/9D51-BEDA-218F-018E ou vá até o site http://assinaturas.certisign.com.br e utilize o código abaixo para verificar se este documento é válido.

## Código para verificação: 9D51-BEDA-218F-018E

**Hash do Documento**

BF9408D3A24AA1F638A7121EDC8D83A60669582FE5939F6DFF4F8993E89A09CA

O(s) nome(s) indicado(s) para assinatura, bem como seu(s) status em 27/08/2026 é(são) :

☑ Cristina Gonzales (Signatário) - 108.911.608-09 em 27/08/2026 11:14 UTC-03:00
**Tipo:** Certificado Digital

**Evidências**

**Geolocation:** Latitude: -23.618010308766856 Longitude: -46.63795025947589 Accuracy: 132
**IP:** 172.16.4.9
**AC:** AC Certisign Multipla G7

# Exhibit B

## EJ Acceptance Order

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular II - 2ª Vara de Falências e Recuperações Judiciais - Foro Central Cível**

Praça João Mendes, s/n, Salas 1813/1815 - 18º andar - Bairro: Centro - CEP: 1501900 - Fone: (11) 3538-9313 - Email: sp2falencias@tjsp.jus.br

**TUTELA CAUTELAR ANTECEDENTE Nº 4113246-86.2026.8.26.0100/SP**

**REQUERENTE**: BRASKEM S.A

**REQUERENTE**: BRASKEM AMERICA FINANCE COMPANY

**REQUERENTE**: BRASKEM TRADING & SHIPPING B.V.

**REQUERENTE**: BRASKEM NETHERLANDS INC. B.V.

**REQUERENTE**: BRASKEM NETHERLANDS FINANCE B.V.

**REQUERENTE**: BRASKEM NETHERLANDS B.V.

# DESPACHO/DECISÃO

Vistos.

Trata-se de *pedido de recuperação extrajudicial* ajuizado por **BRASKEM S.A, BRASKEM NETHERLANDS B.V., BRASKEM NETHERLANDS INC. B.V, BRASKEM TRADING & SHIPPING B.V., BRASKEM NETHERLANDS FINANCE B.V. e BRASKEM AMERICA FINANCE COMPANY,** nos termos dos arts. 20-B, § 1º e 161 e seguintes da Lei nº 11.101/2005. Narram que, em 24 de junho de 2026, iniciaram procedimento de mediação com seus principais credores perante a Câmara Wind, com o propósito de renegociar a dívida financeira do grupo. Para resguardar a estabilidade das tratativas e a continuidade de suas atividades, ajuizaram pedido de tutela cautelar antecedente, com fundamento no art. 20-B, § 1º, da Lei nº 11.101/2005, visando à suspensão da exigibilidade das referidas dívidas. Segundo relatam, a mediação alcançou seu propósito e resultou no plano de recuperação extrajudicial ora apresentado. Acrescentam que o valor total das dívidas sujeitas à recuperação extrajudicial é de R$ 187.072.287.391,72, dos quais R$ 56.476.784.170,44 correspondem a Créditos Sujeitos e R$ 130.595.503.221,28 decorrem de obrigações existentes entre requerentes, ou seja, créditos *intercompany*. Com base nos fatos acima expostos, a requerente apresenta plano de recuperação extrajudicial abrangente dos credores da classe quirografária, com a lista de credores signatários e credores sujeitos. Acrescenta, também, que o prazo de suspensão estabelecido no art. 6º se aplica de forma automática aos Créditos Sujeitos a partir do momento em que o pedido de recuperação extrajudicial é protocolado. Pede, ao final, (i) o reconhecimento do prazo de 90 (noventa) dias para a obtenção do expresso consentimento da maioria dos Créditos Sujeitos; (ii) suspensão da exigibilidade de todos os Créditos Sujeitos e de todas as ações, execuções e atos de constrição contra as Requerentes que tenham por objeto os Créditos Sujeito e (iii) o regular processamento do pedido de homologação do plano de recuperação extrajudicial.

**É o relatório. Fundamento e decido.**

***(i) Competência***

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular II - 2ª Vara de Falências e Recuperações Judiciais - Foro Central Cível**

Nos termos do art. 3.º da Lei nº 11.101/05, é competente para o processamento da recuperação extrajudicial o juízo do principal estabelecimento do devedor. O Estatuto Social da Braskem S.A (Ev. 36, Doc. 02 e 03, fls. 05/32 e 01/12; 23/25 e 29/30) revela que o conselho de administração e diretoria da companhia exercem efetivamente suas atribuições na cidade de São Paulo.

Nesse sentido, o C. STJ, ao apreciar a matéria, assentou que o principal estabelecimento corresponde ao local de maior relevância para as atividades empresariais, considerado não apenas sob o aspecto operacional, mas também em razão da concentração do volume de negócios e do centro de governança da sociedade (STJ - CC: 189267 SP 2022/0185133-4, Data de Julgamento: 28/09/2022, S2 - SEGUNDA SEÇÃO, Data de Publicação: DJe 13/10/2022).

A orientação aplica-se ao caso em exame. Embora a requerente mantenha sede em Camaçari/BA (Ev. 36, doc. 17, fls. 03/07) e possua estabelecimentos e unidades operacionais em diferentes Estados da Federação, a documentação acostada aos autos demonstra que maior volume de negócios e a tomada das principais decisões empresariais estão centralizadas em São Paulo.

Nesse contexto, considerando que a efetiva condução dos negócios do grupo, inclusive das sociedades estrangeiras que o integram, está concentrada na cidade de São Paulo, reconheço a competência deste Juízo para processar e decidir o feito.

***(ii) Litispendência e Coisa Julgada.***

Juntadas as certidões de distribuição e após consulta aos sistemas do TJSP, não foram localizadas ações referentes a pedido de falência ou recuperação judicial (Ev. 36, doc. 18, fls. 03 e 06).

***(iii) Procuração e Representação***

As procurações, ev. 36, doc. 02, fls. 03/04, estão assinadas por Carlos Augusto Machado Pereira de Almeida Brandão e Carlos Plachta; doc. 03, fls. 33/34 por Roger Marchioni e Yoithi Yoshihara; doc. 04, fls. 36/37 por Carlos Augusto Machado Pereira de Almeida Brandão e Yoithi Yoshihara; doc. 05, fls. 23/24 por Roger Marchioni e Yoithi Yoshihara; doc. 06, fls. 11/12 por Luiz Gustavo Perrotti Rossato e Yoithi Yoshihara e fls. 40/41 por Carlos Augusto Machado Pereira de Almeida Brandão e Carlos Plachta; a quem os atos constitutivos atribuem poderes de representação.

***(iv) Requisitos Legais***

***(iv.i) Requisitos Subjetivos (art. 48 da LFR)***

Em conformidade com o art. 48 da Lei nº 11.101/2005, as requerentes juntaram as certidões de distribuição (Ev. 36, docs. 18 e 19), que comprovam o preenchimento dos requisitos subjetivos. Com efeito, a consulta aos sistemas do Tribunal de Justiça do Estado de

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular II - 2ª Vara de Falências e Recuperações Judiciais - Foro Central Cível**

São Paulo não localizou ações de falência ou de recuperação judicial (Ev. 36, doc. 18, fls. 3), o que atende ao disposto nos incisos I, II e III do art. 48, evidenciando que a requerente não é falida e não obteve concessão de recuperação judicial (ordinária ou especial) nos 5 (cinco) anos anteriores. Foi igualmente apresentada certidão de distribuição de ações cíveis em geral (Ev. 36, doc. 18, fls. 04).

A ausência de condenação por crime falimentar dos sócios e administradores (art. 48, IV) está demonstrada pelas certidões criminais de primeiro e segundo graus do Tribunal de Justiça do Estado de São Paulo, bem como pelas certidões dos Estados da Bahia e da Justiça Federal, referentes à empresa e a seus administradores (Ev. 36, doc. 19, fls. 04/340). Constata-se, ademais, a ausência de recuperação extrajudicial homologada há menos de 2 (dois) anos e de recuperação judicial pendente, nos termos do art. 161, § 3º, da LFR.

***(iv.ii) Requisitos Objetivos (arts. 161 a 163 da LFR).***

Em conformidade com os arts. 161 a 163 da Lei nº 11.101/2005, as requerentes apresentaram:

**(i)** A exposição das causas do pedido e a respectiva justificativa, exigidas pelo art. 162, constam dos autos (Ev. 36, doc. 01, fls. 02/03);

**(ii)** O plano de recuperação extrajudicial, contendo seus termos e condições e devidamente assinado pelos credores aderentes, foi juntado (Ev. 36, doc. 8, fls. 01/45, doc. 10, fls. 02/87 e doc. 11, fls. 01/74), atendendo ao art. 162, *caput;*

**(iii)** A exposição da situação patrimonial do devedor (art. 163, §6º, inciso I) e as demonstrações contábeis relativas ao último exercício foram levantadas especialmente para o pedido, atendendo a exigência legal do art. 163, §6º, inciso II c/c art. 51, II (Ev. 36, docs. 14, fls. 03/415; 15, fls. 301/1022 e 16);

**(iv)** A relação nominal completa dos credores: endereço, natureza, classificação, valor atualizado, discriminação e regime dos respectivos vencimentos (Ev. 36, doc. 08, fls. 83/97 e doc. 9, fls. 02/16);

**(v)** Os documentos comprobatórios dos poderes dos subscritores para transigir, nos termos do art. 163;

**(vi)** As custas de distribuição, correspondentes a 1% sobre o valor da causa, foram recolhidas (Ev. 27).

***(vi) Do quórum de adesão e do prazo do art. 163, § 7º, da LFR.***

Segundo alegam as requerentes, o plano abrange exclusivamente créditos financeiros quirografários, de mesma natureza e submetidos a condições semelhantes de pagamento, o que se amolda à hipótese do art. 163, § 1º, da LFR.

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular II - 2ª Vara de Falências e Recuperações Judiciais - Foro Central Cível**

Conforme a relação integral dos Créditos Sujeitos e dos Credores Signatários (Ev. 36, doc. 09, fls. 18/19) e os termos de adesão acompanhados da comprovação de poderes (doc. 10, fls. 02/87 e doc. 11, fls. 02/74), o valor total das dívidas submetidas à recuperação extrajudicial é de R$ 56.476.784.170,44 que correspondem a Créditos Sujeitos.

Sobre essa base, verifica-se que os Credores Signatários representam créditos no montante de R$22.386.155.001,41, correspondente a 39,6% do total considerado. O percentual, apurado de forma consolidada no âmbito do grupo, supera o *quórum* mínimo de 1/3 previsto no art. 163, § 7º, da LFR, ainda que esse percentual não seja alcançado individualmente por todas as companhias.

Os planos contam com as assinaturas dos seguintes credores: Grupo Ad Hoc, BARCLAYS BANK PLC, BANCO SANTANDER, S.A. e CITIBANK, N.A.

Embora os arts. 69-G e seguintes da Lei nº 11.101/2005 disciplinem a consolidação processual e substancial no âmbito da recuperação judicial, não há incompatibilidade com sua aplicação à recuperação extrajudicial, desde que presentes os pressupostos materiais que justificam o tratamento unitário das sociedades integrantes do grupo.

No caso em exame, os elementos trazidos aos autos apontam, a princípio, para o preenchimento desses requisitos. A estrutura adotada para a captação de recursos no exterior revela acentuada interdependência patrimonial entre as Requerentes, que dificulta a individualização da titularidade dos ativos e passivos sem expressivo dispêndio de tempo e recursos.

Conforme relatado na petição inicial (Evento 36, fl. 6, item 27), as sociedades integrantes do grupo estão sujeitas a uma mesma estrutura de controle, com identidade de quadro societário, sendo direta ou indiretamente controladas pela mesma sociedade. Aduzem, ainda, que essa estrutura societária foi constituída com o propósito de possibilitar o acesso ao mercado de capitais internacional e o posterior repasse dos recursos captados às demais Requerentes, sobretudo para o financiamento das atividades desenvolvidas no Brasil.

Nos termos do art. 69-J da Lei nº 11.101/2005, o juiz poderá, de forma excepcional e independentemente da realização de assembleia-geral, autorizar a consolidação substancial dos ativos e passivos dos devedores integrantes do mesmo grupo econômico, quando constatar a interconexão e a confusão entre seus ativos ou passivos, de modo que não seja possível identificar a respectiva titularidade sem excessivo dispêndio de tempo ou de recursos, cumulada essa constatação com a ocorrência de, **no mínimo, 2 (duas) das seguintes hipóteses**: existência de garantias cruzadas (inciso I); relação de controle ou de dependência (inciso II); identidade total ou parcial do quadro societário (inciso III); e atuação conjunta no mercado entre os postulantes (inciso IV). Conquanto o dispositivo se refira à recuperação judicial, sua aplicação à recuperação extrajudicial não é incompatível, desde que presentes os mesmos pressupostos que justificam o tratamento unitário das sociedades.

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular II - 2ª Vara de Falências e Recuperações Judiciais - Foro Central Cível**

Constata-se a presença de mais de duas das hipóteses dos incisos do art. 69-J. Há relação de controle (inciso II), conforme documentação contábil acostada (Ev. 36, doc. 14, fls. 20), o que é reforçado pela petição inicial. Verifica-se, igualmente, a identidade parcial do quadro societário (inciso III), (doc. 5, fls. 17; doc. 7, fls. 19/20).

Por fim, existente a atuação conjunta no mercado (inciso IV), na medida em que as empresas tem por objeto, dentre outras atividades, a fabricação e a comercialização de produtos petroquímicos (Ev. 36, doc. 04, fls. 11 e doc. 05, fls. 35), incluindo resinas termoplásticas, atividade igualmente compreendida no objeto social da controladora, consoante certidão da JUCEB (Ev. 36, doc. 17, fls. 03) — a evidenciar o desenvolvimento de atividades complementares e a sinergia entre as operações das requerentes, enquanto outra tem por objeto obter e fornecer financiamento ao grupo, assegurar a aplicação de dinheiro em espécie em entidades do grupo, bem como desempenhar funções de tesouraria, tudo de acordo com as suas necessidades financeiras (Ev. 36. doc. 05, fls. 06).

Os elementos apresentados pelas Requerentes evidenciam acentuada interconexão patrimonial e financeira entre as sociedades, marcada, entre outros aspectos, pela atuação econômica coordenada e pela integração de suas estruturas. O conjunto desses elementos revela, em princípio, grau de interdependência suficiente para justificar, excepcionalmente, o tratamento conjunto pretendido, com a apresentação de plano unitário e a apuração consolidada do *quórum* previsto no art. 163, § 7º, da LFR.

Portanto, em exame preliminar, verifico a regularidade da documentação apresentada. As requerentes se comprometeram a, no prazo de 90 dias, obter o *quórum* estabelecido pelo art. 163, caput, da Lei 11.101/2005, conforme a prerrogativa assegurada pelo parágrafo 7º do referido artigo.

Assim, **DEFIRO** o processamento do pedido, com suspensão, exclusivamente em relação aos créditos abrangidos pelo plano de recuperação ora apresentado, pelo prazo de 120 dias, de todas as execuções em curso contra as requerentes por credores sujeitos à recuperação, prazo que já leva em conta o desconto dos 60 dias conferidos pela decisão que deferiu a tutela cautelar:

(i) da prescrição das obrigações das recuperandas;

(ii) das ações e execuções ajuizadas contra as recuperandas, ou qualquer outro procedimento relacionado aos créditos abrangidos, incluindo pedidos de falência, e

(iii) das ordens de retenção, arresto, penhora, sequestro, busca e apreensão e constrição judicial ou extrajudicial sobre os bens, na forma do §8º do art. 163 c.c. com o art. 6º, ambos da Lei nº 11.101/05.

Deverão as recuperandas diligenciarem perante os respectivos juízos, onde trâmitem execuções ou ordem de constrição patrimonial, para o fim de noticiar o processamento da presente recuperação, preservar a competência do juízo universal e garantir a efetividade da ordem de suspensão pelo prazo determinado.

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular II - 2ª Vara de Falências e Recuperações Judiciais - Foro Central Cível**

Para tanto, servirá a presente decisão, por cópia a ser obtida no site do Tribunal de Justiça em que conste a assinatura digital, como ofício do Juízo a ser apresentado pelas recuperandas a quem de direito, obrigando terceiros, desde logo, ao cumprimento da medida ora deferida.

2- Publique-se o edital previsto, nos termos do art. 164, convocando-se os credores para, no prazo de 30 (trinta) dias, apresentar eventual impugnação ao plano, inclusive quanto ao próprio *quórum* de adesão (art. 164, § 3º), providenciando as recuperandas, em 48 horas, a remessa da minuta ao e-mail (*sp2falencias@tjsp.jus.br).*

3- No mesmo prazo, deverão as recuperandas comprovar o envio de carta a todos os credores sujeitos ao plano, domiciliados ou sediados no país, informando a distribuição do pedido, as condições do plano e prazo para impugnação, na forma do §1º do art. 164 da lei nº 11.101/05.

4- Por oportuno, em caso de credores estrangeiros sem representação ou domicílio no Brasil, a fim de garantir a paridade entre estes e os credores nacionais, conforme preveem os §§ 2º e 3º do art. 167-G da lei nº 11.101/05, as recuperandas deverão, no mesmo prazo, comprovar que lhes remeteu, por correspondência eletrônica, os documentos de que trata o §1º do art. 164, acompanhados de tradução juramentada, no prazo estipulado no item "3" supra. Na forma do § 4º do art. 167-G, deverão observar as recuperandas que nessa correspondência eletrônica deverá conter as informações sobre providências necessárias para que o credor estrangeiro possa fazer valer seu direito, inclusive quanto ao prazo para apresentação de habilitação ou de divergência, à necessidade de os credores garantidos habilitarem seus créditos e de impugnarem o plano ora apresentado.

5- PROVIDENCIE a z. Serventia a intimação das Fazendas Nacional, bem como as da sede da matriz e da filial das recuperandas para ciência do pedido e do plano de recuperação ora apresentados, para, havendo interesse, apresentarem impugnação no prazo de 30 (trinta) dias.

6 - Escoados os prazos para impugnação dos credores e eventual resposta das recuperandas, ABRA-SE VISTA ao Ministério Público.

Publique-se.

---

Documento eletrônico assinado por **TAINA MARIA LEONARDO DE OLIVEIRA, Juíza de Direito**, na forma do artigo 1º, inciso III, da Lei 11.419, de 19 de dezembro de 2006. A conferência da **autenticidade do documento** está disponível no endereço eletrônico https://eproc1g.tjsp.jus.br/eproc/externo_controlador.php?acao=consulta_autenticidade_documentos, mediante o preenchimento do código verificador **610017109444v7** e do código CRC **222a7e52**.

Informações adicionais da assinatura:
Signatário (a): TAINA MARIA LEONARDO DE OLIVEIRA
Data e Hora: 27/08/2026, às 21:44:51

---

**4113246-86.2026.8.26.0100** **610017109444 .V7**

# Exhibit C

## Certified Translation of EJ Acceptance Order

**Cristina Gonzales**
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787
CCM nº 9.743.188-5 (São Paulo, SP)
CPF/MF nº 108.911.608-09
RG nº 14.873.251 SSP/SP

*Tradução nº 23422* *Livro nº 346* *Folha nº 50*

I, Cristina Gonzales, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document written in PORTUGUESE was submitted to me, the translation of which is as follows:

August 28, 2026 12:40 a.m. :: 610017109444- electronic proceedings ::

[*Logo of São Paulo State Court of Appeals*]
**Judiciary Branch**
**STATE COURTS**
**Civil - São Paulo State Court of Appeals**
**Presiding Judge - Seat II - 2nd Lower Bankruptcy and Judicial Reorganization Court - Central Civil Court**

Praça João Mendes, s/n, Salas 1813/1815 - 18° andar - Bairro: Centro - CEP: 1501900 - Phone: (11) 3538-9313 - Email: sp2falencias@tjsp.jus.br

**PRELIMINARY INJUNCTION No. 4113246-86.2026.8.26.0100/SP**

**PLAINTIFF:** BRASKEM S.A.
**PLAINTIFF:** BRASKEM AMERICA FINANCE COMPANY
**PLAINTIFF:** BRASKEM TRADING & SHIPPING B.V.
**PLAINTIFF:** BRASKEM NETHERLANDS INC. B.V.
**PLAINTIFF:** BRASKEM NETHERLANDS FINANCE B.V.
**PLAINTIFF:** BRASKEM NETHERLANDS B.V.

**ORDER/DECISION**

The case records have been examined.

This is a *filing for out-of-court reorganization* filed by **BRASKEM S.A., BRASKEM NETHERLANDS B.V., BRASKEM NETHERLANDS INC. B.V., BRASKEM TRADING & SHIPPING B.V., BRASKEM NETHERLANDS FINANCE B.V. and BRASKEM AMERICA FINANCE COMPANY**, on the grounds of articles 20-B, paragraphs 1 and 161 et seq. of Law No. 11.101/2005. The plaintiffs state that, on June 24, 2026, they started a mediation procedure with their main creditors before Câmara Wind [*Wind Chamber*], with the purpose of renegotiating the group's financial debt. In order to safeguard the stability of the negotiations and the continuity of their activities, they filed a request for preliminary injunction, based on article 20-B, paragraph 1, of Law No.11.101/2005, aiming at the suspension of the enforceability of said debts. According to the plaintiffs, the mediation achieved its purpose and resulted in the out-of-court reorganization plan presented herein. They add that the total amount of the debts subjected to the out-of-court reorganization is BRL187,072,287,391.72, of which BRL 56,476,784,170.44 correspond to Credit Claims Subjected to the Plan and BRL 130,595,503,221.28 arise from existing obligations among Petitioners - i.e. intercompany credit claims. Based on the above facts, the applicant presents a comprehensive out-of-court reorganization plan of the unsecured class creditors, with the list of signatory creditors and subject creditors. It also adds that the suspension period established in article 6 automatically applies to Credit Claims Subjected to the Plan from the moment the request for an out-of-court reorganization is filed. Requests, at the end, (i) the recognition of the ninety (90)-day period to obtain express consent from the majority of the Credit Claims Subjected to the Plan; (ii) suspension of the enforceability of all Credit Claims Subjected to the Plan and all actions, executions and acts of constraint against the Applicants that have as their object the Credit Claims Subjected to the Plan and (iii) the regular processing of the request for ratification of the out-of-court reorganization plan.

**This is the report. I will now present the grounds and decide.**

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 4F8B-2C69-4D9B-B4B6.

Cristina Gonzales
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787
CCM nº 9.743.188-5 (São Paulo, SP)
CPF/MF nº 108.911.608-09
RG nº 14.873.251 SSP/SP



***(i) Jurisdiction***

Under the terms of article 3 of Law No. 11.101/05, the court of the debtor's main establishment is authorized to process the out-of-court reorganization. The Bylaws of Braskem S.A. (Ev. 36, Doc. 02 and 03, pages 05/32 and 01/12; 23/25 and 29/30) reveals that the company's board of directors and management effectively perform their duties in the city of São Paulo.

In this sense, the Superior Court of Justice (STJ), when considering the matter, established that the main establishment corresponds to the place of greatest relevance for business activities, considered not only from the operational aspect, but also due to the concentration of turnover and the company's governance center (STJ - CC: 189267 SP 2022/0185133-4, Date of Judgment: September 28, 2022, S2 - SECOND SESSION, Date of Publication: Electronic Court Gazette [DJe] of October 13, 2022).

The guidance applies to the case under examination. Although the applicant maintains its headquarters in Camaçari/BA (Ev. 36, doc. 17, pages 03/07) and has establishments and operating units in different States of the Federation, the documentation attached to the records shows that a greater volume of business and the making of the main business decisions are centralized in São Paulo.

In this context, considering that the effective conduct of the group's business, including the foreign companies that are part of it, is concentrated in the city of São Paulo, I recognize the authority of this Court to process and decide the case.

***(ii) Lis pendens and re judicata.***

Once the distribution certificates were attached and after consulting the São Paulo Court of Justice (TJSP) systems, no actions were found regarding a request for bankruptcy or judicial reorganization (Ev. 36, doc. 18, pages 03 and 06).

***(iii) Power of Attorney and Representation***

The powers of attorney, ev. 36, doc. 02, pages 03/04, are signed by Carlos Augusto Machado Pereira de Almeida Brandão and Carlos Plachta; doc. 03, pages 33/34 by Roger Marchioni and Yoithi Yoshihara; doc. 04, pages 36/37 by Carlos Augusto Machado Pereira de Almeida Brandão and Yoithi Yoshihara; doc. 05, pages 23/24 by Roger Marchioni and Yoithi Yoshihara; doc. 06, pages 11/12 by Luiz Gustavo Perrotti Rossato and Yoithi Yoshihara and pages 40/41 by Carlos Augusto Machado Pereira de Almeida Brandão and Carlos Plachta; to whom the articles of association grant powers of representation.

***(iv) Legal Requirements***

***(iv.i) Subjective Requirements (article 48 of the Bankruptcy and Reorganization Law [LFR])***

In accordance with article 48 of Law No.11.101/2005, the applicants attached the distribution certificates (Ev. 36, docs. 18 and 19), which prove the fulfillment of the subjective requirements. In fact, a consultation made on the systems of the São Paulo State Court of Appeals revealed no bankruptcy or judicial reorganization actions (Ev. 36, doc. 18, page 3), which complies with the provisions of items I, II and III of article 48, evidencing that the applicant is not bankrupt and did not obtain a judicial reorganization (ordinary or special) in the previous five (5) years. A certificate of distribution of civil actions in general was also presented (Ev. 36, doc. 18, pages 04).

The absence of convictions for bankruptcy-related crimes by the partners and administrators (article 48, IV) is demonstrated by the first-and second instance criminal records of the Court of Appeals of the State of São Paulo, as well as by the records from the State of Bahia and the Federal Court, pertaining to the company and its administrators (Ev. 36, doc. 19, pages 04/340). In addition, there is the absence of out-of-

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 4F8B-2C69-4D9B-B4B6.

Cristina Gonzales
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787 CPF/MF nº 108.911.608-09
CCM nº 9.743.188-5 (São Paulo, SP) RG nº 14.873.251 SSP/SP


court reorganization approved less than two (2) years ago and pending judicial reorganization, pursuant to article 161, paragraph 3, of the LFR.

***(iv.ii) Objective Requirements (articles 161 to 163 of the LFR).***

In accordance with articles 161 to 163 of Law No.11.101/2005, the applicants submitted:

**(i)** The exposition of the causes of the request and the respective justification, required by article 162, are included in the records (Ev. 36, doc. 01, pages 03/02);

**(ii)** The out-of-court reorganization plan, containing its terms and conditions and duly signed by the adhering creditors, was attached (Ev. 36, doc. 8, pages 01/45, doc. 10, pages 02/87 and doc. 11, pages 01/74), in compliance with article 162, main section;

**(iii)** The presentation of the debtor's equity situation (article 163, paragraph 6, item I) and the financial statements for the last fiscal year were specially prepared for the request, in compliance with the legal requirement of article 163, paragraph 6, item II coupled with article 51, II (Ev. 36, docs. 14, pages 03/415; 15, pages 301/1022 and 16);

**(iv)** A complete list of creditor's name: address, nature, classification, updated value, breakdown and regime of the respective maturities (Ev. 36, doc. 08, pages 83/97 and doc. 9, pages 02/16);

**(v)** The documents evidencing the powers of the underwriters to compromise, pursuant to article 163;

**(vi)** The distribution costs, corresponding to 1% of the amount in dispute, were collected (Ev. 27).

***(vi) The membership quorum and the deadline pursuant to article 163, paragraph 7, of the LFR.***

According to the applicants, the plan exclusively covers unsecured financial credits, of the same nature and subject to similar payment conditions, which is in accordance with the hypothesis of article 163, paragraph 1, of the LFR.

According to the full list of Credit Claims Subjected to the Plan and Signatory Creditors (Ev. 36, doc. 09, pages 18/19) and the terms of adhesion accompanied by evidence of powers (doc. 10, pages 02/87 and doc. 11, pages 02/74), the total amount of debts submitted to the out-of-court reorganization is BRL 56,476,784,170.44 which correspond to Credit Claims Subjected to the Plan.

On this basis, it appears that the Signatory Creditors represent credits in the amount of BRL 22,386,155,001.41, corresponding to 39.6% of the total considered. The percentage, calculated on a consolidated basis within the group, exceeds the minimum quorum of 1/3 provided for in article 163, paragraph 7, of the LFR, even if this percentage is not reached individually by all companies.

The plans are signed by the following creditors: Ad Hoc Group, BARCLAYS BANK PLC, BANCO SANTANDER, S.A. and CITIBANK, N.A.

Although articles 69-G et seq. of Law No. 11.101/2005 govern procedural and substantial consolidation within the scope of judicial reorganization, there is no incompatibility with its application to out-of-court reorganization, provided that the material assumptions that justify the unitary treatment of the companies that are part of the group are present.

In the case under examination, the elements brought to the file point, in principle, to the fulfillment of these requirements. The structure adopted for fundraising abroad reveals a marked equity interdependence

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 4F8B-2C69-4D9B-B4B6.

Rua Pereira Estéfano, nº 114 - conjunto 103
04144-070 São Paulo, SP
+55 (11) 3384-8550 /+55 (11) 99153-0636
cristina@aliancatraducoes.com.br

Cristina Gonzales
Tradutora Pública e Intérprete Comercial
Inglês - Português
Matrícula na JUCESP nº 787 CPF/MF nº 108.911.608-09
CCM nº 9.743.188-5 (São Paulo, SP) RG nº 14.873.251 SSP/SP


between the Applicants, which makes it difficult to individualize the ownership of assets and liabilities without significant expenditure of time and resources.

As reported in the complaint (Event 36, page 6, item 27), the companies that are part of the group are subject to the same control structure, with the identity of a corporate structure, being directly or indirectly controlled by the same company. They also add that this corporate structure was constituted with the purpose of enabling access to the international capital market and the subsequent transfer of funds raised to the other Applicants, especially for the financing of activities carried out in Brazil.

Pursuant to article 69-J of Law No. 11.101/2005, the judge may, exceptionally and regardless of the holding of a general meeting, authorize the substantial consolidation of the assets and liabilities of the debtors belonging to the same economic group, when he finds the interconnection and confusion between their assets or liabilities, so that it is not possible to identify their ownership without excessive expenditure of time or resources, cumulating this finding with the occurrence of **at least two (2) of the following hypotheses:** existence of cross-guarantees (item I); control or dependence relationship (item II); total or partial identity of the corporate structure (item III); and joint action in the market between the applicants (item IV). Although the provision refers to judicial reorganization, its application to out-of-court reorganization is not incompatible, provided that the same assumptions that justify the unitary treatment of companies are present.

There is the presence of more than two of the hypotheses of the items of article 69-J. There is a control relationship (item II), according to the attached accounting documentation (Ev. 36, doc. 14, pages 20), which is reinforced by the complaint. It is also verified the partial identity of the corporate structure (item III), (doc. 5, pages 17; doc. 7, pages 19/20).

Finally, there is the joint market activity (item IV), to the extent that the companies have as their object, among other activities, the manufacture and commercialization of petrochemical products (Ev. 36, doc. 04, pages 11 and doc. 05, page 35), including thermoplastic resins, an activity also included in the corporate purpose of the parent company, as evidenced by the JUCEB certificate (Ev. 36, doc. 17, pages 03) — evidencing the development of complementary activities and the synergy between the operations of the applicants, while the other has the purpose of obtaining and providing financing to the group, ensuring the investment of cash in group entities, as well as performing treasury functions, all according to the company's financial needs (Ev. 36. doc. 05, pages 06).

The elements presented by the Applicants show a marked equity and financial interconnection between the companies, marked, among other aspects, by the coordinated economic performance and the integration of their structures. The set of these elements reveals, in principle, a sufficient degree of interdependence to justify, exceptionally, the intended joint treatment, with the presentation of a unit plan and the consolidated determination of the quorum provided for in article 163, paragraph 7, of the LFR.

Therefore, in a preliminary examination, I verify the regularity of the documentation presented. The applicants have undertaken to obtain, within 90 days, the quorum established by article 163, main paragraph, of Law 11.101/2005, according to the prerogative guaranteed by paragraph 7 of said article.

Thus, **I GRANT** the motion, with a stay, exclusively in relation to the credits covered by the reorganization plan presented herein, for a period of 120 days, of all ongoing enforcement proceedings against the applicants by creditors subject to reorganization, a period that already takes into account the 60-day reduction granted by the decision that granted the preliminary injunction:

(i) the statute of limitations on the obligations of the companies under reorganization;

(ii) lawsuits and enforcement proceedings filed against the companies under reorganization, or any other procedure related to the covered credit claims, including bankruptcy filings, and

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 4F8B-2C69-4D9B-B4B6.

Rua Pereira Estéfano, nº 114 - conjunto 103
04144-070 São Paulo, SP
+55 (11) 3384-8550 /+55 (11) 99153-0636
cristina@aliancatraducoes.com.br

**Cristina Gonzales**
Tradutora Pública e Intérprete Comercial
Inglês - Português

Matrícula na JUCESP nº 787
CCM nº 9.743.188-5 (São Paulo, SP)
CPF/MF nº 108.911.608-09
RG nº 14.873.251 SSP/SP



(iii) orders for withholding, attachment, seizure, confiscation, search and seizure, and judicial or extrajudicial forfeiture of property, pursuant to paragraph 8 of article 163, coupled with article 6, both of Law No. 11,101/05.

The companies under reorganization must take steps before the respective courts, where enforcement proceedings or asset seizure orders are pending, in order to report the processing of this reorganization, preserve the jurisdiction of the court of the general jurisdiction and guarantee the effectiveness of the suspension order for the specific period.

To this end, this decision will serve, by means of a copy to be obtained on the website of the Court of Appeals containing the digital signature, as an official letter of the Court to be presented by the companies under reorganization to whom they are entitled, obliging third parties, hereby, to comply with the measure now granted.

2- The required notice shall be published, pursuant to article 164, calling upon creditors to file any objections to the plan within 30 (thirty) days, including objections regarding the membership quorum itself (article 164, paragraph 3), and the companies under reorganization shall, within 48 hours, send the draft to the email address (*sp2falencias@tjsp.jus.br*).

3- Within the same period, the companies under reorganization must provide proof that they sent a letter to all creditors subject to the plan who domiciled or headquartered in the country, informing the distribution of the request, the conditions of the plan and the deadline for challenge, pursuant to paragraph 1 of article 164 of Law No. 11.101/05.

4- As appropriate, in the case of foreign creditors without representation or domicile in Brazil, in order to guarantee parity between them and the national creditors, as provided for in paragraphs 2 and 3 of article 167-G of Law No. 11.101/05, the companies under reorganization must, within the same period, prove that they have sent them, by electronic correspondence, the documents referred to in paragraph 1 of article 164, accompanied by a sworn translation, within the period stipulated in item "3" above. Pursuant to paragraph 4 of article 167-G, the companies under reorganization must observe that this electronic correspondence must contain the information on the measures necessary for the foreign creditor to be able to assert its right, including as to the deadline for filing a claim or objection, and the requirement for secured creditors to file their claims and challenge the plan now being presented.

5- PROVIDE for z. The summons of the National Treasury was served, as well as those of the headquarters of the parent company and the subsidiary of the companies under reorganization to be aware of the request and the reorganization plan presented herein, in order, if interested, to file a challenge within a period of thirty (30) days.

6- - Once the deadlines for challenging the creditors and any response from the companies under reorganization have been met, THE Public Prosecutor's Office shall BE OPENED.

To be published.

Electronic document signed by **TAINA MARIA LEONARDO DE OLIVEIRA**, **Judge of Law**, pursuant to article 1, item III, of Law 11,419, of December 19, 2006. The **authenticity of this document** may be verified at the electronic address https://eproc1g.tjsp.jus.br/eproc/externo_controlador.php?acao=consulta_autenticidade_documentos, by entering verification code **610017109444v7** and CRC code **222a7e52.**

Additional signature information:
Signatory: TAINA MARIA LEONARDO DE OLIVEIRA

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 4F8B-2C69-4D9B-B4B6.

Rua Pereira Estéfano, nº 114 - conjunto 103
04144-070 São Paulo, SP
+55 (11) 3384-8550 /+55 (11) 99153-0636
cristina@aliancatraducoes.com.br

**Cristina Gonzales**
Tradutora Pública e Intérprete Comercial
Inglês - Português

Matrícula na JUCESP nº 787
CCM nº 9.743.188-5 (São Paulo, SP)
CPF/MF nº 108.911.608-09
RG nº 14.873.251 SSP/SP



Date and Time: 08/27/2026, at 21:44:51

**4113246-86.2026.8.26.0100** **610017109444 .V7**

https://eproc1g.tjsp.jus.br/eproc/controlador.php?acao=minuta_imprimir&acao_origem=acessar_documento&hash=dfccda382a36cfceed48d4535b1ff662

IN WITNESS WHEREOF, I hereunto set my hand and seal.

São Paulo, August 28, 2026

Rec. Nº.: 11014
Talão Nº.: 64
Emol.: R$ 1.704,21
Nº de caracteres: 15497 (sem espaço)

Este documento foi assinado digitalmente por Cristina Gonzales.
Para verificar as assinaturas vá ao site http://assinaturas.certisign.com.br e utilize o código 4F8B-2C69-4D9B-B4B6.

Rua Pereira Estéfano, nº 114 - conjunto 103
04144-070 São Paulo, SP
+55 (11) 3384-8550 /+55 (11) 99153-0636
cristina@aliancatraducoes.com.br

# PROTOCOLO DE ASSINATURA(S)

O documento acima foi proposto para assinatura digital na plataforma Certisign Assinaturas. Para verificar as assinaturas clique no link: http://assinaturas.certisign.com.br/Verificar/4F8B-2C69-4D9B-B4B6 ou vá até o site http://assinaturas.certisign.com.br e utilize o código abaixo para verificar se este documento é válido.

## Código para verificação: 4F8B-2C69-4D9B-B4B6

**Hash do Documento**

F44E4371AD2CF201D785CC52495365D9FE95ACD662A4DF5046CD6C7C2CCE70B3

O(s) nome(s) indicado(s) para assinatura, bem como seu(s) status em 28/08/2026 é(são) :

☑ Cristina Gonzales - 108.911.608-09 em 28/08/2026 17:53 UTC-03:00

**Tipo:** Certificado Digital

**Evidências**

**Geolocation:** Latitude: -23.618007044554982 Longitude: -46.63782354918462 Accuracy: 151

**IP:** 172.16.4.11

**AC:** AC Certisign Multipla G7