PAUL HASTINGS

Daniel A. Fliman, Partner
danfliman@paulhastings.com
+1.212.318.6434

September 25, 2026

**VIA ECF AND E-MAIL**

The Honorable Michael E. Wiles
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

***Re: In re Braskem S.A., et al., Case No. 26-11522 (MEW)***
***Supplement to Request for Pre-Motion Conference***

Dear Judge Wiles:

This letter is submitted on behalf of FFI Fund Ltd., FYI Ltd., and Olifant Fund, Ltd. (collectively, the "Holders"), holders of the 7.125% Notes due 2041 issued by Braskem America Finance Company ("U.S. FinCo").

The Holders write in furtherance of their initial pre-motion letter, dated September 18, 2026 [ECF No. 67], and to advise the Court of subsequent developments in the Brazilian *recuperação extrajudicial* (the "Brazilian Proceeding" or the "EJ") that provide additional grounds on which the Holders intend to seek summary judgment denying recognition as to U.S. FinCo.

As the Holders will be prepared to discuss in greater detail at the pre-motion conference, now scheduled for September 29, 2026, the 2nd Bankruptcy and Reorganization Division of the São Paulo State Court of Justice, Central Civil Jurisdiction (the "Brazilian Court") issued a decision on September 24, 2026, in which it concluded that U.S. FinCo failed to obtain creditor support sufficient to avail itself of EJ protections.[1] Moreover, the Brazilian Court determined that the "benefit of the stay period" must be "revoke[d]" as a result of its decision. Consequently, U.S. FinCo no longer enjoys the benefit of stay protections in Brazil.

In light of this decision, the Holders seek permission to move for summary judgment on the additional ground that, because U.S. FinCo is not presently entitled to proceed in the Brazilian Proceeding, there is no foreign proceeding with respect to U.S. FinCo that is eligible for recognition under Chapter 15.

Respectfully Submitted,

*/s/ Daniel A. Fliman*
Daniel A. Fliman

cc. All counsel via ECF

---

[1] A machine translated copy of the Brazilian Court's decision is annexed hereto as **Exhibit A.**

PAUL HASTINGS

# <u>Exhibit A</u>

## Brazil Decision

**Judiciary STATE
COURTS
Civil - Court of Justice of the State of São Paulo
Second Presiding Judge - 2nd Bankruptcy and Judicial Reorganization Court - Central Civil Jurisdiction**

Praça João Mendes, s/n, Rooms 1813/1815 - 18th floor - Neighborhood: Centro - ZIP Code: 1501900 - Phone: (11) 3538-9313 - Email: sp2falencias@tjsp.jus.br

**PRELIMINARY INJUNCTION No. 4113246-86.2026.8.26.0100/SP**

**PETITIONER**: BRASKEM AMERICA FINANCE COMPANY

**PETITIONER**: BRASKEM TRADING & SHIPPING B.V.

**PETITIONER**: BRASKEM NETHERLANDS INC. B.V.

**PETITIONER**: BRASKEM NETHERLANDS FINANCE B.V.

**PETITIONER**: BRASKEM NETHERLANDS B.V. **PETITIONER**:

BRASKEM S.A.

# ORDER/DECISION

Having reviewed the case.

This is an out-of-court reorganization proceeding filed by **Braskem S.A.**, **Braskem America Finance Company**, **Braskem Trading & Shipping B.V.**, **Braskem Netherlands Inc. B.V.**, **Braskem Netherlands Finance B.V.**, and **Braskem Netherlands B.V.**, the processing of which was approved by this Court (Case No. 37.1).

**In Event 64.1**, the law firm **Simões Pires Advogados** filed a motion to be admitted as a creditor in the case.

**In Event 67.1**, the debtors requested that the publication of the notice provided for in Article 164 of Law No. 11,101/2005 take place only after the submission of the final out-of-court reorganization plan, accompanied by the quorum required under *the caput* of Article 163 of Law No. 11,101/2005.

**Event 69.1**: **Banco Safra S.A.** filed **a motion for clarification** against the decision in Event 37.1. In summary, it argued: a) an omission regarding the analysis of the Brazilian judicial authority's international jurisdiction over the five companies incorporated and headquartered abroad; b) lack of clarity regarding the admission of a consolidated determination of quorum (Art. 163, § 7, of the LRF) in light of the substantial consolidation not expressly required, failing to explain the implications of the extinguishment of *intercompany* debts under Art. 69-K, § 1, of Law No. 11,101/2005; c) failure to conduct a factual investigation into the requirements of Art. 69-J, *caput*, of Law No. 11,101/2005 regarding the impossibility of identifying the ownership of assets and liabilities without excessive expense; d) failure to process the matter based on a document lacking concrete economic terms (*placeholder plan*) and the resulting lack of clarity in the order of publication of the notice.

**In Event 78.1**, the **Federal Government (National Treasury)** filed a motion in the case requesting that it be ordered, at the appropriate time, that the companies undergoing reorganization be ordered to submit a Certificate of No Debts (CND) or a Positive Certificate with Negative Effects (CPEN), in accordance with Article 57 of Law No. 11,101/2005 and Articles 205 and 206 of the National Tax Code, as a condition for the eventual approval of the plan.

**In Event 79.1**, creditors holding notes issued by Braskem America Finance Company (**FFI Fund Ltd.**, **FYI Ltd.,** and **Olifant Fund, Ltd.**) filed **a motion for clarification** regarding the decision in Event 37.1. In summary, they argued: a) an omission regarding the lack of a legal basis and the appropriateness of substantial consolidation in out-of-court reorganization, which they claimed was artificially securing a quorum; b) failure to meet the cumulative requirements of Article 69-J of Law No. 11,101/2005 with respect to Braskem America Finance Company, pointing to the absence of cash flows with Brazil, its headquarters and operational control in the United States, and a quorum of only 13.2%

; c) failure to address the lack of jurisdiction of the Brazilian court and the non-fulfillment of the criteria set forth in Articles 21 et seq. of the Code of Civil Procedure and Article 3 of the Fiscal Responsibility Law (LRF) with respect to the U.S. debtor.

**In Event 84.1**, the **São Paulo State Treasury** reported the existence of tax liabilities recorded as state-level enforceable debt in the amount of approximately R$ 8,000,000.00 (ICMS, ITCMD, IPVA, and PROCON/SP fines) and requested that the debtors be summoned to prove their tax compliance, that the Judicial Administrator be summoned, and that its position be formally recorded in the case file.

In **Event 85.1**, this Court issued a decision that: 1) partially reconsidered the decision in Event 37.1 to postpone the publication of the notice under Article 164 of Law No. 11,101/2005 until after the final plan had been filed; 2) ordered the respondents to submit their responses to the requests for clarification in Events 69.1 and 79.1 within five days;
3) granted a fifteen-day period for the companies undergoing reorganization to respond to the tax claims filed by the National Treasury and the State Treasury; and 4) approved the appointment of the law firm Simões Pires Advogados.

**In Event 95.1**, the companies undergoing reorganization filed certified translations of foreign documents attached to the amendment to the initial petition.

**In Event 96.1**, the company **Uber do Brasil Tecnologia Ltda.** requested its admission to the case file and the exclusive designation of legal counsel for service of process (Event 96, p. 1).

**Event 99.1**: The **State of Paraná** acknowledged receipt of the out-of-court reorganization proceedings, requested to join the case as an interested third party, and confirmed the debtors' tax compliance with the Paraná tax authorities.

**Event 102.1**: Creditors holding notes and debentures that are part of **the** so-called **Ad Hoc Group** filed a motion for incidental urgent injunctive relief in light of the so-called "Operation BAKIDE." They reported that Braskem Idesa, S.A.P.I. de
C.V. ("BAKIDE"), a Mexican subsidiary controlled by Braskem Netherlands

B.V., filed for *Chapter 11* protection with the U.S. Bankruptcy Court for the Southern District of Texas (Case No. 26-90762). They stated that the companies undergoing reorganization had assumed extraordinary financial commitments totaling approximately US$ 800,000,000.00 (approximately R$ 4 billion), comprising: US$ 415 million in DIP (*debtor-in-possession*) financing; an equity contribution of US$ 71 million by Braskem S.A.; a forced conversion of financing claims into illiquid equity interests; and the granting of a put option for the benefit of the Mexican subsidiary's creditors between the fifth and sixth years following the reorganization. They alleged asset stripping during the stay period, violations of transactional transparency and of Articles 47, 66, and 163 of Law No. 11,101/2005, as well as gratuitous acts without effective consideration prohibited by Article 158 of the Civil Code. They sought the granting of an emergency injunction, including *ex parte*, to suspend all payments, capital contributions, transfers of funds, execution of DIP financing, or assumption of obligations to purchase equity interests (*put/call*) by the companies undergoing reorganization in Operation BAKIDE, and ordering the debtor and its shareholders (Petrobras and Shine I FIP) to be summoned to immediately produce documents and provide clarifications.

**In Event 105.1**, the **State of Alagoas** reported the existence of tax claims filed against the petitioners and requested proof of tax compliance based on Article 57 of Law No. 11,101/2005 and Articles 151, 205, and 206 of the CTN, in addition to the segregation of tax data in the list of creditors (Event 105, pp. 1–2).

**In Event 108.1**, the **Public Prosecutor's Office** submitted its opinion. It recommended partial granting of the motions for clarification in Events 69 and 79 to establish the inapplicability of substantial consolidation in out-of-court reorganization, the need for individualized determination of the quorum per debtor, and the application of *the stay period* only to those petitioners who meet the one-third participation threshold. With regard to Operation BAKIDE, as set forth in Event 102, the Public Prosecutor's Office expressed its support for granting the emergency injunctive relief to safeguard the assets of the Brazilian debtors, with the imposition of extraordinary asset restraint orders and a request for a detailed report. Finally, considering the significant complexity of the case file, the presence of financial and *intercompany* liabilities exceeding R$ 180 billion (Event 36 and Event 108, pp. 5 and 32), the large number of companies headquartered abroad, and the substantial transnational transactions, it is justified, on an

, the appointment of a Judicial Administrator to assist the Court in reviewing documents and monitoring the soundness of the accounting and the quorum requirements of this proceeding.

**In Event 109.1**, the companies undergoing reorganization filed a timely response to the motion for clarification. They defended the full soundness of the decision in Event 37.1 and argued: a) the existence of Brazilian jurisdiction and the Court's competence based on the group's decision-making center and the location of the event giving rise to the crisis (Art. 21, III, of the CPC); b) the admissibility of substantive consolidation in out-of-court reorganization by analogy and the full demonstration of the requirements of Art. 69-J of Law No. 11,101/2005; c) the legality of the initial plan presented in accordance with Art. 163, § 7, of the Fiscal Responsibility Law (LRF). They supported the filing with a legal opinion and supporting documents.

**In Event 110.1**, the debtors claimed they were unaware of the content of the petition in Event 102 due to the improper imposition of confidentiality in the case management system, requesting that the confidentiality be lifted and a deadline be set for them to file a response.

**This concludes the report on the matter. I hereby rule.**

**1. On the Public Disclosure of Proceedings and Access to the Case File (Event 110)**

First and foremost, it is necessary to analyze the objection raised by the companies undergoing reorganization in Event 110.1, in which they point out that the document in Event 102.1 is unavailable for viewing.

The publicity of procedural acts is a constitutionally guaranteed right (Art. 5, LX, of the Federal Constitution) and a fundamental principle expressly enshrined in *the caput* of Art. 189 of the Code of Civil Procedure. Restrictions on public access are permissible only in strictly defined legal circumstances, and even when judicial secrecy is ordered, the right to access, review, and obtain copies is expressly guaranteed to the parties and their retained attorneys, pursuant to Article 189, paragraph 1, of the Code of Civil Procedure.

In the context of corporate reorganization—characterized by an eminently collective process and the convergence of multiple interests—transparency stands as an unshakable guarantee of equality of arms and the soundness of the restructuring.

However, such a measure in no way compromises or delays the consideration of the requested urgent preliminary injunction, given the express authorization contained in Article 9, sole paragraph, item I, and Article 300, paragraph 2, both of the Code of Civil Procedure, which expressly permit the granting of preliminary injunctions *without a hearing* to safeguard the practical utility of the proceedings.

Considering that the request will be analyzed in this decision, I order the **immediate lifting of the restriction on Event 102**, granting unrestricted access to the debtors' counsel.

**2. Regarding the motions for clarification (Events 69 and 79)**

I hereby accept the motions for clarification filed by Banco Safra S.A. (Event 69.1) and by the funds holding notes issued by Braskem America Finance Company (Event 79.1), given the proven timeliness of both motions.

On the merits of the appeal, the petitioners are partially correct, and it is necessary to remedy omissions and clarify ambiguities identified in the decision on the merits (Event 37.1).

As for Brazilian jurisdiction and international jurisdiction, there is no question of a lack of jurisdiction to admit the filing of the lawsuit as a joint action. Braskem S.A., the direct and indirect parent company of the other co-defendants, has its principal place of business, board of directors, and executive management centralized in the Judicial District of the Capital of São Paulo, which establishes the jurisdiction of this specialized court pursuant to Article 3 of Law No. 11,101/2005.

Furthermore, in the transnational context, the underlying cause of the crisis affecting the subsidiaries stems substantially from industrial operations and liabilities incurred in Brazil, thereby satisfying the rule of national jurisdiction set forth in Article 21, III, of the Code of Civil Procedure. However, the determination of jurisdiction in the abstract does not grant carte blanche to disregard the autonomous legal personalities of companies domiciled abroad, an issue that leads to the determination of the applicable form of consolidation.

In fact, with regard to substantive consolidation and the determination of a quorum, the contested decision must be amended and corrected. The decision in Case 37.1 was unclear in its use of the concepts of substantive consolidation (Art. 69-J of the LRF) to justify accepting the consolidated quorum of 39.6% set forth in Art. 163, § 7, of Law No. 11,101/2005.

Substantial consolidation constitutes an absolutely exceptional measure, expressly designed by the legislature in Articles 69-J and 69-K of Law No. 11,101/2005 for the judicial reorganization proceeding. Unlike the general meeting setting of judicial reorganization, where creditors participate in person in the voting process and can assess the appropriateness of pooling assets and liabilities, mandatory out-of-court reorganization is characterized by strictly private negotiations, with definitive novation effects imposed by compulsion on non-participating creditors.

Allowing for substantial consolidation in out-of-court reorganization through a unified quorum count would enable an undesirable maneuver within the system: significant creditors of one operating company would facilitate the processing and imposition of financial sacrifices on creditors of another group company that, on its own, did not even reach the minimum participation threshold required by law.

This is the position established by the Third Panel of the Superior Court of Justice when ruling on a similar dispute in Special Appeal No. 2.217.146/SP:

> *SUMMARY: CORPORATE LAW. SPECIAL APPEAL. EXTRAJUDICIAL RECOVERY. SUBSTANTIAL CONSOLIDATION. DISMISSAL OF THE CLAIM FOR APPROVAL. APPEAL GRANTED. 1. Special appeal filed against a ruling by the Court of Justice of the State of São Paulo that upheld a lower court decision, which granted the request for approval of the out-of-court reorganization plan in a consolidated proceeding—both procedurally and substantively—based on Articles 69-G and 69-J of Law No. 11,101/2005. 2. The issue at hand is whether it is possible to proceed with out-of-court reorganization under a consolidation of proceedings and subject matter, while assessing whether the legal requirements regarding the economic group have been met. 3. According to this Court's case law, in the judicial reorganization of an economic group, each company must individually demonstrate compliance with the legal requirements. If this approach is adopted for mandatory out-of-court reorganization,*

*the petition must be accompanied by the consent of at least 50% of the creditors of each company individually. 4. Law No. 11,101/2005 provides for substantial consolidation by judicial authorization only for judicial reorganization and in exceptional situations, upon proof that the requirements of Article 69-J have been met. 5. Substantial consolidation in out-of-court reorganization may give rise to distortions, including: (i) all creditors of a company may be subject to the effects of a restructuring plan on which they were unable to vote or express an opinion; (ii) the claims of the majority of creditors will be definitively novated without their participation; (iii) companies within the same economic group may not individually meet the prerequisites for filing for out-of-court reorganization; (iv) creditors do not have the opportunity to express their views on the appropriateness of substantial consolidation at a creditors' meeting; (v) a single creditor, with a high-value claim, may impose the restructuring plan presented by the debtor on the creditors of all other companies in the group, which may give rise to misappropriation. 6. In this specific case, no interconnection or commingling of the debtors' assets or liabilities has been demonstrated, such that ownership cannot be identified—an essential requirement for substantial consolidation by judicial decision, as provided for in Article 69-J of Law No. 11,101/2005. 7. Special appeal accepted and granted. (Special Appeal No. 2,217,146/SP, Reporting Justice Ricardo Villas Bôas Cueva, Third Panel, decided on December 9, 2025, published in the DJEN on December 17, 2025.)*

In the case at hand, the companies undergoing reorganization itemized the creditors' participation individually, indicating the following percentages (Event 36 and Event 108, p. 16): Braskem S.A. (39.6%); Braskem Netherlands B.V. (20.4%); Braskem Trading & Shipping B.V. (42.4%); Braskem Netherlands Finance B.V. (50.6%); and Braskem America Finance Company (13.2%).

It is crystal clear that Braskem Netherlands B.V. (20.4%) and Braskem America Finance Company (13.2%) did not reach the mandatory minimum legal threshold of 1/3 (33.33%) of the participation of their eligible claims, as expressly required by Article 163, paragraph 7, of Law No. 11,101/2005.

The failure to meet this initial threshold prevents these debtors from benefiting from the automatic suspension of enforcement proceedings or from imposing the procedure set forth in paragraph 7 on their creditors under the artificial guise of substantive consolidation.

Accordingly, **I grant the motion for clarification in part** to: **a)** clarify that the proceeding is being conducted under the procedural consolidation regime (Article 69-G of the LRF), while maintaining the autonomy of the legal entities, their assets, creditor bases, and the individualized determination of quorums; b) consequently, to rule out the application of substantive consolidation and the rule on the extinction of *intercompany* claims under Article 69-K of the LRF; c) to revoke the benefit of *the stay period* (Article 163, § 8, of the LRF) exclusively with respect to the debtors Braskem Netherlands B.V. and Braskem America Finance Company, given that the minimum quorum of one-third was not met, allowing the petitioners, within fifteen days, to submit an amended complaint demonstrating the validity of individual participation or to indicate the appropriate course of action.

Finally, with regard to the content of the plan and the issuance of the public notice under Article 164 of the LRF, the matter is moot in light of the prior reconsideration implemented in Event 85.1, which postponed the publication of the public notice until after the submission of the final and complete plan by the companies undergoing reorganization.

**3. Regarding the submissions on tax liabilities (Events 78 and 84)**

The Federal Government (National Treasury) requested in Event 78.1 the submission of certificates of no outstanding debt or certificates of debt with the effect of a certificate of no outstanding debt, arguing that such debts are enforceable pursuant to Article 57 of Law No. 11,101/2005. Similarly, the São Paulo State Treasury indicated liabilities totaling approximately R$ 8 million and requested proof of compliance and a summons for the Judicial Administrator (Event 84.1).

Notwithstanding the relevance of the tax matters raised by the public entities, it should be recalled that the decision in Event 85.1 expressly granted the companies undergoing reorganization a period of 15 (fifteen) days to respond to the tax petitions in Events 78.1 and 84.1.

As can be inferred from the case file, the debtors filed an interim motion to submit translations (Event 95.1) and a response to the motion for clarification (Event 109.1), without, to date, having provided a substantive response regarding the tax liabilities or the expiration of the fifteen-day period granted by the Court.

Therefore, in strict compliance with the principle of adversarial proceedings (Articles 9 and 10 of the CPC), the final analysis of the tax claims is postponed until after the debtors have filed a timely response or until it is confirmed that the deadline granted in Event 85.1 has expired.

**4. Regarding the incidental application for urgent injunctive relief – Operation BAKIDE (Case 102)**

I now turn to the examination of the request for an incidental emergency injunction filed by the Ad Hoc Group in Event 102.1, which received a fully favorable opinion from the Bankruptcy Prosecutor's Office (Event 108.1).

The granting of an incidental emergency injunction requires the fulfillment of the conditions set forth in Article 300 of the Code of Civil Procedure, namely the likelihood of a valid claim (*fumus boni iuris*) and the danger of harm or risk to the successful outcome of the proceedings (*periculum in mora*), with the Court acting under its general power to grant injunctive relief and its power to implement preventive measures (Articles 139, IV, 297, and 301 of the CPC).

The likelihood of a valid claim is evident in light of the finding that the companies undergoing reorganization have entered into and are implementing the so-called "Operation BAKIDE" within the framework of foreign proceedings (*Chapter 11* before the Texas Bankruptcy Court, Case No. 26-90762) (Event 102, p. 2), involving an extraordinary financial commitment of approximately US$800 million (an amount in the range of R$4 billion).

This operation includes the disbursement and provision of US$ 415 million in DIP loans, a fresh cash injection of US$ 71 million, and the future assumption of put *obligations* granted to the creditors of the Mexican subsidiary, with a potential disbursement obligation between the fifth and sixth subsequent years (Event 102, pp. 2/12).

However, these commitments have been implemented during the course of the preceding preliminary injunction proceedings and the *stay period* in Brazil, a time when the domestic and international creditors of the companies under reorganization are unable to take

to seize assets or defend their claims.

Assuming obligations of this magnitude to restructure the debt of a foreign subsidiary, without an analytical demonstration of equivalent economic return to the Brazilian companies' cash flow and without prior transparency toward the creditors subject to this out-of-court reorganization, violates the protective core of Articles 47, 66, and 163 of Law No. 11,101/2005 and the duty of objective good faith (Art. 422 of the Civil Code), bordering on acts of gratuitous disposition or encumbrance prohibited by Art. 158 of the Civil Code.

The danger of harm or risk to the successful outcome of the proceedings is concrete and pressing. As demonstrated in the case file, the final hearing to confirm BAKIDE's plan (*Final Hearing*) before the U.S. court is scheduled for September 24, 2026, at 8:30 a.m. (U.S. time) (Exhibit 102, pp. 23–24).

The imminent final approval of the transaction within U.S. jurisdiction will result in the crystallization of financial commitments and the conversion of funds into illiquid and subordinated equity interests, causing an irreversible drain on liquidity and making it impossible to restore the petitioners' financial bases should there be a subsequent finding of harm to Brazilian creditors.

The granting of the preliminary injunction, as brilliantly argued by the Public Prosecutor's Office, does not constitute undue interference or the revocation of acts falling exclusively under foreign jurisdiction over BAKIDE. The court order is directed strictly and exclusively at the companies undergoing reorganization under Brazilian jurisdiction, in order to prevent their managers from continuing to transfer scarce funds from the common estate without the necessary judicial oversight.

There is no risk of reverse harm, insofar as the order granted is strictly conservative and precautionary in nature, aimed at preserving the *status quo* until clarifications are provided and the balance sheets, studies, and contracts supporting the transaction are presented.

**I** hereby **GRANT** the incidental emergency injunctive relief sought by the Ad Hoc Group in Case 102.1, pursuant to the ministerial opinion in Case 108.1, to order that the companies undergoing reorganization, Braskem S.A. and Braskem Netherlands B.V., as well as the other debtors, immediately refrain from taking any further actions to implement the extraordinary asset disposition known as "Operation BAKIDE," consisting of: new payments or disbursements; transfers of funds or assets; the release of installments from the DIP (*debtor-in-possession*) financing; the execution of the cash exit contribution; the creation or extension of security interests or surety bonds; and the execution, ratification, or assumption of commitments related to the put and call option structure for equity interests in Braskem Idesa, S.A.P.I. de C.V., until further order by this Court, under penalty of the imposition of penalty payments and personal liability of the officers.

This decision, duly signed, shall serve as an official letter and must be forwarded by the petitioner.

**5. Regarding the request for the appointment of a Judicial Administrator.**

In its submission (Exhibit 108), the Public Prosecutor's Office argued for the appointment, on an exceptional basis, of a Judicial Administrator to oversee this Extrajudicial Reorganization, to act as an assistant to the Court in reviewing documents and monitoring the soundness of the accounting and the quorum requirements of this proceeding, considering the significant complexity of the case file, the presence of financial and *intercompany* liabilities exceeding R$ 180 billion (Exhibit 36 and Exhibit 108, pp. 5 and 32), the large number of companies headquartered abroad, and the substantial transnational transactions all justify,

The Public Prosecutor's Office's submission warrants full acceptance, and the appointment of a judicial administrator—on an exceptional basis—to act in this out-of-court reorganization proceeding is imperative.

It is true that the provisions of Articles 161 et seq. of Law No. 11,101/2005 define out-of-court reorganization as a procedure that is primarily expeditious, simplified, and less costly, in which, as a general rule, the permanent appointment of a judicial administrator

, unlike the requirement imposed in judicial reorganization by Article 52, item I, of the aforementioned law.

However, the case law of the Special Chambers of Business Law of the São Paulo Court of Justice is unanimous in recognizing that, although out-of-court reorganization routinely dispenses with a judicial administrator, the intervention of a court-appointed assistant is fully legitimate and indispensable in cases of significant factual, legal, and accounting complexity, where the number of creditors, the dispersion of assets, and the volume of documentation require impartial technical support for the judge.

Regarding the exceptional nature and the prerequisites that justify such involvement in out-of-court reorganization, the 2nd Reserved Chamber of Business Law of the São Paulo Court of Justice established the following guideline in a similar case:

> *SUMMARY: Interlocutory appeal. Extrajudicial reorganization. The appealed decision ordered the appointment of a judicial administrator and set his compensation at R$ 181,484.54. The appellant's objection. Partial reconsideration of the decision, which reduced the set amount to 3% of the total liabilities. No statutory provision regarding the mandatory appointment of a judicial administrator in out-of-court reorganization. This procedure is faster, less costly, and simpler.* ***The appointment of a judicial administrator is necessary in highly complex cases involving a large number of creditors, objections, and claims, or even when there is extensive documentation attached to the case file****. In this case, the out-of-court reorganization plan covers only 50 creditors, all belonging to the same class—Labor. No evidence of complexity. No need to appoint a court-appointed administrator. Appeal granted. (TJSP; Interlocutory Appeal 2213000-49.2023.8.26.0000; Reporting Judge: Natan Zelinschi de Arruda; Adjudicating Body: 2nd Reserved Chamber of Business Law; Specialized Court 1st RAJ/7th RAJ/9th RAJ – 1st Regional Court of Business Jurisdiction and Arbitration-Related Disputes; Date of Judgment: 10/27/2023; Date of Registration: 10/27/2023) – emphasis added*

In the case at hand, the factual and procedural elements reveal extraordinary complexity, a far cry from the ordinary dynamics of routine out-of-court reorganizations.

In fact, the case involves six legal entities as plaintiffs, comprising the domestic holding company and five subsidiaries headquartered abroad, with global funding in foreign currency. The total reported liabilities amount to the staggering figure of R$ 187,072,287,391.72 (one hundred eighty-seven billion, seventy-two million, two hundred eighty-seven thousand, three hundred ninety-one reais and seventy-two centavos), of which more than R$ 56,476,784,170.44 relates to subject financial credits and approximately R$ 130,595,503,221.28 pertains to intercompany reciprocal debt relationships.

Furthermore, there is substantial controversy regarding the legitimacy of the consolidated determination of a quorum, notably in light of the ruling issued by the Third Panel of the Superior Court of Justice in Special Appeal No. 2,217,146/SP, with Justice Ricardo Villas Bôas Cueva serving as reporting judge, which established the requirement for individualized demonstration of the requirements and the participation quorum for each company in the mandatory out-of-court reorganization.

As pointed out by the Public Prosecutor's Office, at least two of the foreign petitioners (Braskem Netherlands B.V. and Braskem America Finance Company) initially reported participation rates significantly below the statutory minimum of 1/3 (one-third) required by Article 163, paragraph 7, of Law No. 11,101/2005 (Event 36), which requires a detailed and impartial audit of the credit bases, the individualized calculations, and the documentary compliance of the subscription terms.

Furthermore, there is explicit opposition from significant creditors (the Ad Hoc Group) regarding substantial capital contributions and guarantees directed toward the Mexican subsidiary subject to *Chapter 11* in the United States of America (Operation BAKIDE), demanding judicial oversight of compliance and strict transparency in disclosures to the market and the relevant creditors (Events 102 and 103).

In this context, technical assistance to the Court stems from the powers of direction, enforcement, and precaution inherent in its jurisdiction, in accordance with Article 156 of the Code of Civil Procedure and Articles 21 et seq. of Law No. 11,101/2005, in order to ensure the integrity, transparency, and legal certainty of the entire proceedings.

Since it fully meets the requirements of technical capacity, integrity, and multidisciplinary structure mandated by Article 21 of Law No. 11,101/2005, the appointment of the specialized legal entity, duly represented, is required.

In light of the foregoing, **I accept** the Public Prosecutor's Office's recommendation and, pursuant to Article 156 of the Code of Civil Procedure and Article 21 of Law No. 11,101/2005, **I APPOINT**, on an exceptional basis, as **JUDICIAL ADMINISTRATOR** of this out-of-court reorganization proceeding, the business entity **ACFB Administração Judicial Ltda.**, registered with the CNPJ under No. 22.159.674/0001-76, with attorney Antonia Viviana Santos de Oliveira Cavalcante serving as the technical officer.

I hereby order the following measures:

a) the appointed judicial administrator shall be summoned to take the required legal oath within 48 (forty-eight) hours, pursuant to Article 33 of Law No. 11,101/2005;

b) within 15 (fifteen) days after signing the undertaking, the judicial administrator must submit a detailed work plan, which shall primarily include: verification of the formal and substantive validity of the financial claims submitted under the plan; an audit and analytical review of the initial and final quorums for participation by each of the six petitioners, on an individualized basis; the identification and segregation of intercompany transactions; and the monitoring of relevant financial information included in the case file, providing any information requested by the Court and the Public Prosecutor's Office;

c) within the same deadline for submitting the work plan, the court-appointed administrator must estimate and submit to this Court its fee proposal, strictly observing the principles of reasonableness, proportionality, the debtors' ability to pay, and the specific complexity of the duties defined herein;

d) the companies undergoing reorganization shall be ordered to grant the court-appointed administrator and its agents full access to all accounting books, statements, issuance agreements, and corporate documents necessary for the performance of the duties;

**6.** I further order:

**a)** I hereby grant the companies undergoing reorganization a period of 15 (fifteen) days to submit to the court record a detailed executive report, accompanied by the relevant documentation (corporate minutes, contracts, economic valuations, cash flow projections, and sources of financing) that clarifies the origin, counterparties, and impacts of the BAKIDE Transaction on the soundness of the Brazilian reorganization, with creditors being granted the opportunity to comment within an equal subsequent period;

b) order **Petróleo Brasileiro S.A. – Petrobras and Shine I Fundo de Investimento em Participações Multiestratégia Responsabilidade Limitada,** in their capacity as controlling shareholders, to provide, within 15 (fifteen) days, any clarifications they deem relevant regarding the corporate and contractual approvals pertaining to the aforementioned transaction;

c) I grant the motion filed by Uber do Brasil Tecnologia Ltda. (Event 96.1), and order that the details be entered into the case management system; and order that the intervention by the State of Paraná (Event 99.1) be entered into the record.

Let this be published.

---

Electronic document signed by **TAINA MARIA LEONARDO DE OLIVEIRA, Judge**, pursuant to Article 1, subsection III, of Law 11,419, of December 19, 2006. Verification of **the document's authenticity** is available at the the at https://eproc1g.tjsp.jus.br/eproc/externo_controlador.php? acao=consulta_autenticidade_documentos, by entering the verification code **610019263239v7** and the CRC code **c8680ce2**.

Additional signature information:
Signatory: TAINA MARIA LEONARDO DE OLIVEIRA
Date and Time: September 24, 2026, at 11:15:10

---