PAUL HASTINGS LLP
Daniel A. Fliman
Sayan Bhattacharyya
Robert Nussbaum
Ryan P. Montefusco
200 Park Avenue
New York, New York 10166
Telephone: 212-318-6000

*Attorneys for FFI Fund Ltd., FYI Ltd., and Olifant Fund, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Braskem S.A., *et al.*[1]<br><br><br>Debtors in a Foreign Proceeding | Case No. 26-11522 (MEW)<br><br>Chapter 15<br><br>(Jointly Administered) |

**HOLDERS' MOTION TO DENY RECOGNITION OF**
**BRASKEM AMERICA FINANCE COMPANY'S BRAZILIAN PROCEEDING**

[1] The debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Braskem S.A. (01-70–Brazil); Braskem Netherlands B.V. (6B01–Netherlands); Braskem Netherlands Inc. B.V. (9B01–Netherlands); Braskem Netherlands Finance B.V. (5B01–Netherlands); Braskem Trading & Shipping B.V. (7B01–Netherlands); and Braskem America Finance Co. (1581–US).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 2
BACKGROUND AND MATERIAL FACTS .......... 6
A. Braskem S.A. and its Brazilian Operations .......... 6
B. U.S. FinCo's Formation, Governance and Exclusive U.S. Presence .......... 9
C. The 2041 Notes & Creditor Expectations .......... 14
D. The Brazilian Proceeding and These Chapter 15 Cases .......... 17
E. The Brazilian Courts Determined that U.S. FinCo Failed to Satisfy the Statutory Requirements for EJ Relief .......... 19
LEGAL STANDARD .......... 22
ARGUMENT .......... 24
A. The Brazilian Proceeding Does Not Qualify for Recognition as to U.S. FinCo .......... 24
B. U.S. FinCo's COMI is Not Brazil, and the Brazilian Proceeding Cannot be Recognized as a Foreign Main Proceeding .......... 26
C. The Brazilian Proceeding is Not a Foreign Nonmain Proceeding with Respect to U.S. FinCo Because U.S. FinCo Has No Establishment in Brazil .......... 37
CONCLUSION .......... 39

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Armada (Singapore) Pte Ltd. v. Shah* (*In re Ashapura Minechem Ltd.*), 480 B.R. 129 (S.D.N.Y. 2012) .....24

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .....22

*D'Amico v. City of New York*, 132 F.3d 145 (2d Cir. 1998) .....22

*El-Nahal v. Yassky*, 835 F.3d 248 (2d Cir. 2016) .....22

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325 (S.D.N.Y. 2008) .....37

*In re Chiang*, 437 B.R. 397 (Bankr. C.D. Cal. 2010) .....26

*In re Fairfield Sentry Ltd.*, 714 F.3d 127 (2d Cir. 2013) .....15, 29

*In re Gold & Honey, Ltd.*, 410 B.R. 357 (Bankr. E.D.N.Y. 2009) .....25

*In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63 (Bankr. S.D.N.Y. 2011) .....30

*In re OAS S.A.*, 533 B.R. 83 (Bankr. S.D.N.Y. 2015) ..... *passim*

*In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169 (Bankr. S.D.N.Y. 2017), *reconsideration denied*, 582 B.R. 358 (Bankr. S.D.N.Y. 2018) ..... *passim*

*In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237 (Bankr. S.D.N.Y. 2019) .....23

*In re SPhinX, Ltd.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006) .....15

**STATUTES**

11 U.S.C. § 101(23) .....22, 24, 25

11 U.S.C. § 105(a) .....1

11 U.S.C. § 362 .....18

11 U.S.C. § 363 .....18

11 U.S.C. § 1502(2) .....37, 38

11 U.S.C. § 1502(4) .....23

11 U.S.C. § 1502(5) ....................................................................................................37

11 U.S.C. § 1515 ..........................................................................................................1

11 U.S.C. § 1516(c) ....................................................................................................26

11 U.S.C. § 1517 ......................................................................................................1, 39

11 U.S.C. § 1517(a)(1).................................................................................................23

**RULES**

Fed. R. Bankr. P. 1018(a)(1).........................................................................................22

Fed. R. Bankr. P. 7056 .................................................................................................22

Fed. R. Civ. P. 56(a) ....................................................................................................22

Local Bankruptcy Rule 7056-1 ..................................................................................1, 6

**OTHER AUTHORITIES**

Lei No. 11.101, de 9 de Fevereiro de 2005, Diário Oficial da União [D.O.U.] de 9.2.2005 (Braz.) ...........................................................................................................................19

Superior Tribunal de Justiça, REsp No. 2,217,146/SP (Braz.) ..............................................19, 20

FFI Fund Ltd., FYI Ltd., and Olifant Fund, Ltd. (collectively, the "Holders"), as holders of the 7.125% Notes due 2041 (the "2041 Notes") issued by Braskem America Finance Company ("U.S. FinCo"), by and through undersigned counsel, hereby seek denial of recognition of the Brazilian Proceeding (as defined below) with respect to U.S. FinCo as sought in the *Verified Petition for Recognition of Foreign Proceeding and Motion for Order Granting Relief Pursuant to 11 U.S.C. §§ 105(a), 1515, 1517, 1520 and 1521* [ECF No. 2] (as amended by the *Amended Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1515, 1517, 1520 and 1521* [ECF No. 18] and as further supplemented by *Petitioner's Verified Supplement to Verified Petition for Recognition of the Brazilian Proceeding and Motion for Extension of Provisional Relief* [ECF No. 49], collectively, the "Verified Petition"), filed by Antonio Reinaldo Rabelo Filho, in his capacity as the duly authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors") in the above-captioned proceedings (the "Chapter 15 Cases").

Through this motion (the "Motion"), the Holders seek denial of recognition (i) on a summary judgment basis, pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules"), Rules 1018 and 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 7056-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules") and (ii) alternatively, based on the factual record that will be established at any evidentiary hearing with respect to the Foreign Representative's recognition request.

In support of this Motion, the Holders have filed contemporaneously herewith (i) the *Holders' Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056-1 in Support of Holders' Motion to Deny Recognition of Braskem America Finance Company's Brazilian*

*Proceeding* (the "SMF") and (ii) the *Declaration of Daniel A. Fliman in Support of Holders' Motion to Deny Recognition of Braskem America Finance Company's Brazilian Proceeding* (the "Fliman Declaration"), and respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1. Braskem dragged U.S. FinCo—a U.S. entity in every respect—into a Brazilian *Cautelar*, where it never belonged. It forwent the myriad tools afforded to U.S. debtors, in hopes of jamming the 2041 Notes with inferior treatment in Brazil. When that failed, Braskem continued to refuse to engage with U.S. FinCo's stakeholders and, instead, resorted to bully tactics and threats, ultimately filing an EJ for U.S. FinCo that was dead on arrival. The Brazilian courts have held—three times now and counting—that U.S. FinCo cannot obtain a stay in Brazil or impose the EJ on its creditors. Now, almost five months after the commencement of the Chapter 15 Cases, Braskem finds itself in a predicament entirely of its own making: it has no viable proceeding for U.S. FinCo in Brazil and, therefore, no basis for recognition in the United States.

2. The Holders, who collectively hold approximately 47% of the outstanding principal amount of the 2041 Notes, submit that recognition should be denied as to U.S. FinCo for two independent reasons:

3. *First*, there is no "foreign proceeding" to recognize as to U.S. FinCo. A "foreign proceeding" is "a collective judicial or administrative proceeding . . . in a foreign country . . . in which . . . the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."[3] It is beyond dispute that the presiding Brazilian Court has ***not*** exercised control or supervision over U.S. FinCo. To the contrary, the

[2] Capitalized terms used but not otherwise defined in this Preliminary Statement have the meanings ascribed to them elsewhere in this Motion.

[3] 11 U.S.C. § 101(23).

Brazilian Court revoked the stay in the EJ as to U.S. FinCo, which allows U.S. FinCo's creditors to engage in collection and enforcement proceedings outside of the control or supervision of the Brazilian Court. And, the Brazilian Court unambiguously disclaimed any role in the "control" or "supervision" of U.S. FinCo when it determined that U.S. FinCo, having failed to reach the statutory minimum creditor support, could not impose the EJ procedure on its creditors. The absence of any "control or supervision" over U.S. FinCo's assets and affairs means that there is simply no "foreign proceeding" for this Court to recognize.[4]

4. *Second*, even if there were a "foreign proceeding" pending for U.S. FinCo (there is not), recognition would still be improper because the Brazilian Proceeding for U.S. FinCo is neither a foreign main nor a foreign nonmain proceeding. Everything about U.S. FinCo is U.S.-based: it has no legally cognizable nexus to Brazil to justify recognition in the United States.

5. [redacted]

[4] The Holders reserve all rights to supplement this Motion in the event that U.S. FinCo seeks any other or further relief in the Brazilian Proceeding.

[redacted]

6. U.S. FinCo's other objective connections likewise point overwhelmingly to the United States. U.S. FinCo is a Delaware corporation that has always maintained its principal mailing address at its U.S. parent's Philadelphia headquarters. [redacted] Braskem's Form 20-F likewise separately classified BAI's U.S. operations within its "United States and Europe Segment" distinct from its operations in Brazil.[7] [redacted]

[5] (SMF ¶ 19; Fliman Decl., Exh. 16 at 1.)

[6] (SMF ¶¶ 73–75, 78; Fliman Decl., Exh. 4 at 5, 53, BRASKEM_0001719; Fliman Decl., Exh. 21 at 5.)

[7] (SMF ¶ 21; Fliman Decl., Exh. 15 at 72.)

7. The Foreign Representative's argument in response to these objective, U.S.-based facts and circumstances essentially reduces to the proposition that U.S. FinCo is ultimately overseen from São Paulo. That argument fails for two separate reasons. *First*, the "nerve center" concept does not control the COMI inquiry, and high-level management of a corporate group does not dictate the COMI of every subsidiary within it. Moreover, as a direct wholly-owned subsidiary of BAI, U.S. FinCo properly sits within Braskem's U.S.-based operations. *Second*, Chapter 15 asks where each debtor conducts its affairs in a manner ascertainable to its creditors, not simply where its ultimate parent sits, and group-level oversight that was never disclosed to creditors cannot overcome the objective facts that were.

8. The relevant facts here are undisputed. There is no genuine disagreement as to the status of the Brazilian Proceeding or the fundamental facts concerning U.S. FinCo's connections with the United States and Brazil. While the parties may disagree as to the legal significance of certain facts, those legal issues can be determined at summary judgment. As set forth below, based on the undisputed facts, it is patently clear that recognition can, and should, be denied as a matter of law.

9. In the event that the Court requires an evidentiary hearing with respect to the Verified Petition, the Holders expect that the evidence will only further support denial of recognition as to U.S. FinCo. The documentary and testimonial evidence adduced through discovery amply establishes U.S. FinCo's firm nexus to the United States and the absence of any connections to Brazil. The Holders are confident that the evidentiary record would likewise establish that COMI for U.S. FinCo does not reside in Brazil, and that U.S. FinCo has no establishment in Brazil.

10. For these reasons, and those addressed further below, the Holders respectfully request that the Court deny recognition of the Brazilian Proceeding as to U.S. FinCo.

## BACKGROUND AND MATERIAL FACTS[8]

### *A. Braskem S.A. and its Brazilian Operations*

11. Braskem S.A. was created in 2002 through the merger of six Brazilian petrochemical companies, became the largest petrochemical company in Latin America, and spent the years that followed consolidating Brazil's petrochemical industry. (SMF ¶ 2; ECF No. 18 ¶¶ 11–12.) Braskem S.A. is incorporated in Brazil, has its registered office in Bahia and its headquarters in São Paulo, and its board of directors meets in São Paulo. (SMF ¶ 3; ECF No. 18 ¶ 19(a); Fliman Decl., Exh. 23 ¶¶ 23–24.) Its controlling shareholders—an investment fund linked to the Brazilian asset manager IG4 Capital and Petrobras, a company controlled by the Brazilian federal government—together hold more than 97% of its voting capital. (SMF ¶ 4; ECF No. 18 ¶ 68.)

12. Braskem S.A. provides guidance and support on a limited set of topics to entities throughout the Braskem structure (the "Braskem Group"). [redacted]

8 Pursuant to Local Bankruptcy Rule 7056-1, the evidence supporting this Motion is set forth in the SMF as well as the exhibits attached to the Fliman Declaration.

9 [redacted]

[redacted]

13. Braskem S.A.'s business is concentrated in Brazil. Braskem S.A. operates 28 industrial plants across five Brazilian states, which directly or indirectly employ more than six thousand people, and Brazil is home to the largest volume of its customer contracts, suppliers, operators and financiers. (SMF ¶ 5; ECF No. 18 ¶ 70.)

14. There are two Dutch operating subsidiaries closely integrated with Braskem S.A.'s Brazilian operations. Braskem Netherlands B.V. ("Braskem Netherlands") performs the sales, marketing and distribution of petrochemical products to European and Asian markets "on behalf of Braskem Parent," and its Supervisory Board—which supervises its Managing Board and advises it on strategy—consists of three directors, all located in Brazil. (SMF ¶ 8; ECF No. 18 ¶ 19(b).) Braskem Trading & Shipping B.V. ("BT&S") supports the procurement of raw materials on international markets "to meet [Braskem's] Brazilian demand": it buys naphtha and other feedstock from third-party suppliers to supply to Braskem, purchases basic chemicals from Braskem for resale, and holds vessel-owning subsidiaries whose ships routinely stop in Brazilian ports. (SMF ¶ 9; ECF No. 18 ¶¶ 19(e), 89, 105.)

15. When Braskem S.A. sought to raise capital for itself and its Brazilian business, it did so through Braskem Netherlands Finance B.V. ("Dutch FinCo"), a Dutch special purpose vehicle incorporated on November 17, 2014, which the Foreign Representative described [redacted]

10 [redacted]

16. Indeed, between 2017 and 2024, Dutch FinCo issued $7.3 billion of notes across eight series in six separate offerings, [redacted]

- ***$500 million*** of 3.500% notes due 2023, issued in October 2017;
- ***$1.25 billion*** of 4.500% notes due 2028, issued in October 2017;
- ***$1.5 billion*** of 4.500% notes due 2030, issued in October 2019;
- ***$750 million*** of 5.875% notes due 2050, issued in October 2019;
- ***$600 million*** of subordinated resettable notes due 2081, issued in July 2020;
- ***$1 billion*** of 7.250% notes due 2033, issued in February 2023;
- ***$850 million*** of 8.500% notes due 2031, issued in September 2023; and
- ***$850 million*** of 8.000% notes due 2034, issued in October 2024.[11]

[redacted]

17. [redacted]

[11] (SMF ¶ 11; ECF No. 18 ¶ 24(a)–(h).)

18. The Foreign Representative also explained the reason for this structure. [redacted]

### *B. U.S. FinCo's Formation, Governance and Exclusive U.S. Presence*

19. The Braskem Group's U.S. business stands apart. [redacted]

20. [redacted]

[redacted]

21. [redacted]

22. BAI [redacted] is not a participant in the Brazilian Proceeding, and is not a debtor in these Chapter 15 Cases. (SMF ¶¶ 25–26, 86, 90; ECF Nos. 2, 18, 49.) BAI is headquartered at 1735 Market Street, 28th Floor, Philadelphia, Pennsylvania, where it leases office space; it maintains additional offices in Pasadena, Texas, as well as technology centers in Pittsburgh, Pennsylvania, and Lexington, Massachusetts; [redacted]

23. U.S. FinCo is a Delaware corporation and a direct, wholly owned subsidiary of BAI. (SMF ¶¶ 18, 27, 29; Fliman Decl., Exh. 1; Fliman Decl., Exh. 4 at 5; Fliman Decl., Exh. 15 at 61; Fliman Decl., Exh. 17 at 4.) [redacted]

[redacted]

24. Just like its direct parent, U.S. FinCo has at all times since its incorporation maintained an exclusive physical presence in the United States. [redacted]

25. [redacted] U.S. FinCo's most recent annual report to the Pennsylvania Department of State likewise lists its principal office at 1735 Market Street in Philadelphia. (SMF ¶ 28; Fliman Decl., Exh. 12.) [redacted]

[redacted]

26. [redacted]

27. [redacted]

- [redacted]
- [redacted]

- [redacted]
- [redacted]

[redacted]

28. U.S. FinCo's governance as of June 26, 2026 (the "Petition Date") followed the same pattern. [redacted]

### *C. The 2041 Notes & Creditor Expectations*

29. [redacted] U.S. FinCo issued the 2041 Notes beginning in July 2011 [redacted]

30. [redacted]

31. [redacted]

[redacted]

32. [redacted]

33. [redacted]

34. [redacted]

[redacted]

35. [redacted]

36. Moreover, the publicly disclosed 2011 consolidated financial statements of BAI (the "BAI Financial Statements") further detail the ties between U.S. FinCo and BAI. (Fliman Decl., Exh. 9.) Importantly, the BAI Financial Statements reveal that ***none of the proceeds*** of the 2011 Tranche were on-lent to Brazil. (Fliman Decl., Exh. 9 at 9–10.) This is in stark contrast to

---

12 [redacted]

the publicly available historical financial statements of Braskem's Dutch entities, which plainly show that ***substantially all of the proceeds*** of the bonds issued by Dutch FinCo were on-lent to Brazil. (Fliman Decl., Exhs. 43–45.) The publicly available BAI Financial Statements clearly set creditors' expectations that U.S. FinCo's purpose is to finance BAI and its operations in the United States.

37. Braskem's own SEC filings are perhaps most instructive. In its Annual Report on Form 20-F for fiscal year 2012, Braskem states that BAI and U.S. FinCo "maintain a management structure that is independent from the operations of Braskem S.A. and that comprises own labor, outsourcing services, acquisition of raw materials and production and sale of resins" and that, for these entities, "[p]rices, personnel expenses and other production costs are mostly determined in U.S. dollar." (SMF ¶ 81; Fliman Decl., Exh. 42 at F-24.) Since the issuance of the 2041 Notes, creditors have been directed, by Braskem S.A.'s own SEC filings, to treat BAI and U.S. FinCo separately and independently from Braskem S.A. and its operations in Brazil.

38. [redacted] Approximately $582 million in principal amount of the 2041 Notes remained outstanding as of the commencement of these Chapter 15 Cases (SMF ¶ 60; ECF No. 18 ¶ 24(f)), and the Holders collectively hold approximately $272,091,000 in principal amount of the 2041 Notes. (SMF ¶ 61; ECF No. 93.)

***D. The Brazilian Proceeding and These Chapter 15 Cases***

39. On June 24, 2026, Braskem and certain of its direct and indirect subsidiaries, including U.S. FinCo (but excluding BAI), commenced a protective injunction proceeding (*Tutela*

*Cautelar Antecedente*) before the 2nd Bankruptcy and Judicial Reorganization Court of the Judicial District of the Capital District of the State of São Paulo (the "Brazilian Court") in connection with a court-supervised mediation process (the "*Cautelar*" or "Brazilian Mediation"). (SMF ¶ 82; ECF No. 2.) The Debtors obtained a 60-day stay of certain enforcement actions and attachments by participating financial creditors. (SMF ¶ 83; ECF No. 2.)

40. On the Petition Date, the Foreign Representative commenced these Chapter 15 Cases seeking recognition of the Brazilian Mediation, including through a separate petition on behalf of U.S. FinCo. (SMF ¶¶ 84–86; ECF Nos. 1–2, 18.) The Foreign Representative also sought provisional relief pending recognition, which this Court granted on June 30, 2026. (ECF Nos. 5, 24.) The provisional relief order applied section 362 of the Bankruptcy Code to the Debtors and their property within the territorial jurisdiction of the United States, to the extent provided therein, and separately applied section 363 to U.S. FinCo's assets. The order expressly provided that it did not constitute a final determination regarding recognition. (ECF No. 24 ¶¶ 2–3, 7.)

41. On August 24, 2026, the Debtors commenced the Brazilian EJ proceeding (*Recuperação Extrajudicial*) (the "EJ" or "Brazilian Proceeding") by filing a petition and proposed restructuring plan with the Brazilian Court. (SMF ¶ 87; Fliman Decl., Exh. 23; ECF No. 48 ¶ 1.) The Foreign Representative represented that the Brazilian Proceeding "immediately follows and effectively supplants" the Brazilian Mediation. (SMF ¶ 88; ECF No. 48 at 2.) Although U.S. FinCo was included as a petitioner, BAI—its direct parent and the sole obligor on its intercompany receivables—was not. (SMF ¶¶ 89–90; ECF No. 48.)

42. On August 25, 2026, this Court extended the provisional relief from the Brazilian Mediation to the Brazilian Proceeding pending a final determination on recognition. (ECF No. 53.) The Court again expressly reserved that determination and preserved creditors' rights to object to

recognition. (ECF No. 53 ¶ 7.) The Foreign Representative now seeks recognition of the Brazilian Proceeding as a foreign main proceeding or, alternatively, a foreign nonmain proceeding with respect to U.S. FinCo. (SMF ¶ 85; ECF Nos. 18, 48.)

### *E. The Brazilian Courts Determined that U.S. FinCo Failed to Satisfy the Statutory Requirements for EJ Relief*

43. Under Brazilian Law No. 11,101/2005, a debtor seeking confirmation of an EJ plan that would bind nonconsenting creditors must obtain support from creditors holding more than fifty percent (50%) of the claims subject to the plan. Lei No. 11.101, de 9 de Fevereiro de 2005, Diário Oficial da União [D.O.U.] de 9.2.2005, art. 163, § 7 (Braz.). A debtor may file the EJ before reaching that 50% majority only if it already has the support of creditors holding at least one-third (1/3 or 33.3%) of the claims of each class covered by the EJ plan, together with an undertaking to reach the majority within a non-extendable period of 90 consecutive days from filing. If that threshold is met, the debtor may obtain a stay of enforcement while seeking the additional creditor support required for approval of the EJ plan. *Id.* art. 163, § 8. The statute requires that the threshold must be satisfied separately by each debtor seeking to impose the EJ plan on its creditors. *Id.* art. 163, § 7; *see also* Superior Tribunal de Justiça, REsp No. 2,217,146/SP (Braz.) (Fliman Decl., Exh. 41.)

44. On August 27, 2026, the Brazilian Court initially admitted the Brazilian Proceeding for processing based on 39.6% creditor support calculated across the Braskem Group as a whole, notwithstanding its acknowledgment that this percentage "is not individually met by all companies." (SMF ¶ 91; Fliman Decl., Exh. 24 at 11.) Based on that calculation, the Brazilian Court initially granted a stay of enforcement covering claims subject to the proposed EJ plan. (*Id.*)

45. The Holders challenged that determination, arguing that creditor support could not be aggregated across separate debtors and pointing out that U.S. FinCo had obtained support from

holders of only 13.2% of its claims. (SMF ¶ 92; Fliman Decl., Exh. 25.) The Bankruptcy Prosecutor's Office (*Ministério Público*) appearing before the Brazilian Court (the "Brazilian Bankruptcy Prosecutor") agreed that the statutory threshold had to be satisfied separately by each debtor. (SMF ¶ 93; Fliman Decl., Exh. 26.)

46. On September 24, 2026, the Brazilian Court granted the Holders' motion in part. The Brazilian Court rejected the use of substantive consolidation to satisfy the statutory threshold, explaining that doing so would allow creditors of one company to impose a plan on creditors of another company that "on its own, did not even reach the minimum participation threshold required by law." (SMF ¶ 94; Fliman Decl., Exh. 27 at 19.) Applying U.S. FinCo's individual support percentage, the Brazilian Court found it "crystal clear" that U.S. FinCo, with only 13.2% support, "did not reach the mandatory minimum threshold of 1/3 (33.33%)." (*Id.* at 20.) The Brazilian Court allowed U.S. FinCo fifteen days to demonstrate that it had met the 1/3 support threshold. (*Id.* at 20.)

47. The Brazilian Court further held that U.S. FinCo's failure to meet the statutory threshold "prevents these debtors [Braskem Netherlands B.V. and U.S. FinCo] from benefiting from the automatic suspension of enforcement proceedings or from imposing the procedure . . . on [their] creditors." (*Id.* at 20.) The Brazilian Court therefore revoked the stay as to U.S. FinCo.

48. The Debtors appealed and sought an injunction to reinstate U.S. FinCo's stay. On October 9, 2026, the Court of Justice of the State of São Paulo (the "Brazilian Appellate Court") denied that request, finding no legal basis for aggregating creditor support across the Debtors and confirming that U.S. FinCo's 13.2% support fell short of the statutory threshold. (SMF ¶ 95; Fliman Decl., Exh. 28 at 20–21.) The Brazilian Appellate Court explained that "the legal text leaves no sound basis" to extend substantive consolidation to an EJ, citing the Superior Tribunal

de Justiça's decision in REsp No. 2,217,146/SP, and that the one-third threshold of article 163, § 7 "establishes and conditions" the stay protection of article 163, § 8. (SMF ¶¶ 95, 100; Fliman Decl., Exh. 28 at 20–21; Fliman Decl., Exh. 33 at 12–13.)

49. The Debtors failed to obtain the requisite support within the fifteen-day period afforded by the Brazilian Court and instead sought an additional fifteen business days to solicit support. (SMF ¶ 96; Fliman Decl., Exh. 29 at 4.) That extension request was not granted before the fifteen-day period expired. (SMF ¶ 96; Fliman Decl., Exh. 29 at 4.) On October 28, 2026, the Brazilian Bankruptcy Prosecutor opposed that request, observing that U.S. FinCo "remains with a negligible 13.2% support rate," that the statutory period is "non-extendable," and that U.S. FinCo had failed to satisfy the statutory requirements for participation in the EJ. (SMF ¶ 97; Fliman Decl., Exh. 30 at 25–26.)

50. Separately, on October 21, 2026, with the stay in the Brazilian Proceeding having been revoked and the corresponding stay ordered by this Court having likewise terminated, the Holders filed an involuntary Chapter 11 petition against U.S. FinCo in this Court, Case No. 26-12495. (SMF ¶ 98; Fliman Decl., Exh. 31.) Two days later, the Debtors again sought reinstatement of U.S. FinCo's stay from the Brazilian Appellate Court. (SMF ¶ 99; Fliman Decl., Exh. 32.) On November 5, 2026, the Brazilian Appellate Court again denied that request, reaffirming that U.S. FinCo had not satisfied the one-third threshold and that the U.S. Chapter 11 did not change that result. (SMF ¶ 100; Fliman Decl., Exh. 33 at 12–13.) The Brazilian Appellate Court also noted the Debtors' own acknowledgment that they "anticipate that it will not be possible to reach the required quorum" and concluded that reinstating the stay would improperly extend statutory protection to a debtor that had failed to meet the basic requirements for obtaining it. (*Id.*)

51. As of the date of this Motion, U.S. FinCo remains without stay protection in Brazil, has failed to obtain the support of one-third of its creditors, has reached a quorum of only 13.2% of its claims, and has acknowledged that it is unable to obtain the support required by Brazilian law within the time allotted by the Brazilian Court. (SMF ¶¶ 92, 94, 96, 100–101; Fliman Decl., Exhs. 27, 29, 33.) The Holders have asked the Brazilian Appellate Court to enter an order excluding U.S. FinCo from the EJ proceeding, and the Brazilian Appellate Court has not yet ruled on that request. (SMF ¶ 102; Fliman Decl., Exh. 34.) Likewise, the Brazilian Bankruptcy Prosecutor has recommended that the Brazilian Court order "definitive dismissal of the proceedings" as to U.S. FinCo. (SMF ¶ 103; Fliman Decl., Exh. 30 at 26.) The Brazilian Court has not yet ruled on that recommendation. (SMF ¶ 103.)

## LEGAL STANDARD

52. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 1018(a)(1) and 7056. Where the party opposing summary judgment bears the burden of proof on an essential element of its case, summary judgment is warranted if that party fails to establish a genuine dispute concerning that element. *El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmoving party cannot defeat summary judgment through speculation or conclusory assertions. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

53. As a threshold matter, Chapter 15 requires the existence of a "foreign proceeding," defined as a collective judicial or administrative proceeding in a foreign country, under a law relating to insolvency or adjustment of debt, in which the debtor's assets and affairs are subject to control or supervision by a foreign court for the purpose of reorganization or liquidation. 11 U.S.C. § 101(23). Where that threshold requirement is satisfied, Chapter 15 permits recognition only if

the foreign proceeding qualifies as either a "foreign main proceeding," pending in the country where the debtor has its COMI, or a "foreign nonmain proceeding," pending in a country where the debtor has an establishment. 11 U.S.C. §§ 1502(4)–(5), 1517(a)(1), (b). The Foreign Representative bears the burden of establishing the statutory requirements for recognition. *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 279 (Bankr. S.D.N.Y. 2019). Recognition is determined, and the statutory bases must be satisfied, on a debtor-by-debtor basis, even where the debtors belong to an integrated corporate group. *Id.* at 244.

54. These recognition requirements are mandatory. Although principles of comity inform the relief available following recognition, they do not displace the statutory requirements for recognition itself. *Id.* at 271; *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169, 213–14 (Bankr. S.D.N.Y. 2017), *reconsideration denied*, 582 B.R. 358 (Bankr. S.D.N.Y. 2018). Accordingly, the question is not whether the Brazilian Proceeding should be recognized as a matter of comity or whether recognition might benefit the broader Braskem Group. Rather, it is whether the Foreign Representative has established that the Brazilian Proceeding independently qualifies for recognition with respect to U.S. FinCo. As demonstrated below, the undisputed record establishes that he has not.

## ARGUMENT

### *A. The Brazilian Proceeding Does Not Qualify for Recognition as to U.S. FinCo*

55. At the outset, the Foreign Representative faces a fundamental obstacle to recognition: the Brazilian courts have already determined that U.S. FinCo failed to satisfy the statutory requirements to authorize the commencement of, or for obtaining any relief in, the very proceeding the Foreign Representative now asks this Court to recognize. Those rulings strike at the foundation of the Foreign Representative's request for recognition. *See Constellation*, 600 B.R. at 272 ("[I]f the Brazil court dismisses a debtor from the Brazilian RJ Proceeding, as has now occurred, it does preclude a decision by this Court that the Brazilian RJ Proceeding of a dismissed debtor is either a foreign main or nonmain proceeding.").

56. In the Brazilian Proceeding, U.S. FinCo obtained support from holders of only 13.2% of its claims, well below the one-third threshold required under Brazilian law to commence the proceeding and benefit from the stay period, and far short of the majority support required for approval of the EJ plan. The Brazilian Court rejected the Debtors' attempt to aggregate creditor support across the Braskem Group, revoked U.S. FinCo's stay, and expressly held that U.S. FinCo could not impose the EJ procedures on its creditors. The Brazilian Appellate Court has since twice refused to restore that protection, and the Debtors themselves have acknowledged that they were unable to obtain the requisite support within the fifteen days allotted by the Brazilian Court. (SMF ¶¶ 92, 94–96, 100; Fliman Decl., Exhs. 27–29, 33.)

57. These rulings expose a fundamental defect in the Foreign Representative's request: he seeks recognition of a proceeding that the Brazilian courts have determined cannot be imposed on U.S. FinCo's creditors. As the Bankruptcy Code makes clear, a "foreign proceeding" exists only where there is a "collective" proceeding in which "the assets and affairs of the debtor are subject to control or supervision by a foreign court." 11 U.S.C. § 101(23); *see also Armada*

*(Singapore) Pte Ltd. v. Shah* (*In re Ashapura Minechem Ltd.*), 480 B.R. 129, 135–36 (S.D.N.Y. 2012); *In re Gold & Honey, Ltd.*, 410 B.R. 357, 366 (Bankr. E.D.N.Y. 2009); *Constellation*, 600 B.R. at 270. As to U.S. FinCo, the Foreign Representative cannot establish either requirement.

58. U.S. FinCo's assets and affairs are not subject to the Brazilian Court's control or supervision for purposes of a collective reorganization. The Brazilian Court has expressly determined that U.S. FinCo's failure to obtain the required creditor support prevents it from benefiting from the stay or imposing the EJ procedure on its creditors. (SMF ¶ 94; Fliman Decl., Exh. 27.) That ruling remains in effect following the Debtors' unsuccessful efforts to obtain appellate relief on two separate occasions. (SMF ¶¶ 95, 100; Fliman Decl., Exhs. 28, 33.) With the stay revoked and the EJ unavailable to bind U.S. FinCo's creditors, the Foreign Representative identifies no operative mechanism through which the Brazilian Court exercises the control or supervision over U.S. FinCo's assets and affairs required by section 101(23).

59. The Foreign Representative may argue that the Brazilian Proceeding technically remains pending as to U.S. FinCo because the Brazilian Court has not yet entered a final dismissal order. But the continued pendency of a petition does not, by itself, establish the elements of section 101(23). The statute requires more than the inclusion of a debtor's name in a foreign proceeding; it requires a qualifying collective proceeding in which that debtor's assets and affairs are subject to foreign-court control or supervision. And recognition must be established separately for each debtor. The fact that the Brazilian Proceeding may continue as to Braskem S.A. and other affiliates cannot cure the deficiencies identified by the Brazilian courts with respect to U.S. FinCo.

60. Accordingly, the Foreign Representative has failed to establish that the Brazilian Proceeding qualifies as a foreign proceeding with respect to U.S. FinCo. Recognition should be denied on that basis alone.

***B. U.S. FinCo's COMI is Not Brazil, and the Brazilian Proceeding Cannot be Recognized as a Foreign Main Proceeding***

61. Even assuming the Foreign Representative could establish the existence of a qualifying foreign proceeding as to U.S. FinCo—which he cannot—recognition would still be unavailable because U.S. FinCo's COMI is not in Brazil.

***i. The Foreign Representative Cannot Rebut the Presumption That U.S. FinCo's COMI is in the United States***

62. As a threshold matter, U.S. FinCo's COMI is presumed to be in the United States. Section 1516(c) of the Bankruptcy Code provides that, "[i]n the absence of evidence to the contrary," a debtor's registered office is presumed to be its COMI. 11 U.S.C. § 1516(c); *see also Constellation*, 600 B.R. at 272. U.S. FinCo was incorporated in Delaware in 2011 and maintained its registered office in Wilmington, Delaware, [redacted] The Foreign Representative therefore bears the burden of establishing that U.S. FinCo's COMI is not in the United States but is instead in Brazil. As demonstrated below, the undisputed record establishes otherwise.

63. In determining a debtor's COMI, courts consider several objective factors, including "the location of the debtor's headquarters; the location of those who actually manage the debtor . . . ; the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006). In analyzing these factors, the Second Circuit has also emphasized the importance of whether the debtor's COMI is objectively ascertainable by third parties, particularly creditors. *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 130, 136–38 (2d Cir. 2013); *see also In re Chiang*, 437 B.R. 397, 403 (Bankr. C.D. Cal. 2010). As *Constellation* explained, "[c]reditors' reasonable

expectations are a factor in COMI analysis," and offering memoranda and other public disclosures constitute "indicia of the Noteholders' objectively ascertainable expectations." *Constellation*, 600 B.R. at 284–85; *see also id.* at 274, 279–80; *Oi Brasil*, 578 B.R. at 228–32; *In re OAS S.A.*, 533 B.R. 83, 101–03 (Bankr. S.D.N.Y. 2015).

***ii. The Objective, Ascertainable Evidence Places U.S. FinCo's COMI in the U.S.***

64. Here, the objective evidence points overwhelmingly to the United States—not Brazil. U.S. FinCo has long identified 1735 Market Street in Philadelphia—the headquarters of its direct U.S. parent, BAI—as its business address [redacted]

65. [redacted]

[redacted]

66. [redacted]

67. [redacted]

68. Other publicly available evidence shaped creditors' expectations that the COMI of U.S. FinCo is in the United States. The publicly available BAI Financial Statements for 2011 show that (i) BAI funded the BAI Acquisitions with the proceeds of the 2011 Tranche and (ii) none of the proceeds of the 2011 Tranche were on-lent to Brazil. Particularly when contrasted with the

publicly available financial statements of Braskem's Dutch entities, these disclosures led creditors to expect that U.S. FinCo was established to finance BAI's operations in the United States. Likewise, Braskem's own Form 20-F for fiscal year 2012 instructed creditors that BAI and U.S. FinCo were (i) headquartered in the United States and (ii) "independent from the operations of Braskem S.A." (SMF ¶ 81; Fliman Decl., Exh. 42 at F-24.)

***iii. Group-Level Oversight and Generic Risk Disclosures Do Not Rebut the Presumption***

69. The Foreign Representative attempts to overcome these substantial U.S. connections by asserting that U.S. FinCo is "reliant on central management and decision-making support from the Braskem Group's São Paulo nerve center." (ECF No. 18 ¶ 85.) But the location of management is only one factor in the COMI analysis, and the "nerve center" concept "does not control" it. *Fairfield Sentry*, 714 F.3d at 138 n.10.

70. As *Constellation* recognized, the fact that a parent's board of directors operates "the high-level management of a group of companies does not dictate the COMI of all subsidiaries where other evidence suggests that the subsidiaries' real operations take place elsewhere." *Constellation*, 600 B.R. at 287. Here, U.S. FinCo's own corporate governance and management history point to the United States, not São Paulo. [redacted]

71. Creditors could therefore reasonably understand U.S. FinCo to be a separately incorporated and governed U.S. corporation, whose directors owed duties to that corporation,

rather than merely an extension of Braskem's Brazilian management. And even assuming that Braskem claims to have directed significant aspects of U.S. FinCo's affairs from São Paulo, that fact alone does not establish a Brazilian COMI when weighed against U.S. FinCo's substantial, objectively ascertainable connections to the United States. *See In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 77 n.29 (Bankr. S.D.N.Y. 2011). Nor does U.S. FinCo's lack of employees or independent operations establish a Brazilian COMI. Those characteristics are entirely consistent with its limited role as a financing vehicle whose principal assets, financing relationships, banking arrangements, and governing contractual obligations are all centered in the United States.

72. [redacted]

73. [redacted]

[redacted]

74. [redacted] In *Constellation*, the offering memoranda for the Luxembourg parent expressly warned that insolvency proceedings could be commenced in Brazil. The court nonetheless held that creditors' objective expectations pointed to Luxembourg, because the issuer was presented as a Luxembourg company. *Constellation*, 600 B.R. at 260–61. The same is true here. [redacted]

***iv. U.S. FinCo Bears No Resemblance to the Financing Vehicles in OAS and Oi Brasil or to Dutch FinCo***

75. Unable to overcome the import of these disclosures, the Foreign Representative relies principally on *OAS* and *Oi Brasil*, each of which found that an offshore financing vehicle of a Brazilian group had its COMI in Brazil. Those decisions looked to "(1) the location of the corporate nerve center of the corporate group the SPV served; (2) the expectations of the SPV's creditors; and (3) the function the SPV played within its corporate group." *Oi Brasil*, 578 B.R. at 218 (describing *OAS*, 533 B.R. at 102). Properly applied here, however, that framework points to the United States—not Brazil.

76. The first consideration asks about the nerve center of ***the group*** the SPV ***served***, not the location of its ultimate parent. U.S. FinCo was formed to serve as a financing vehicle for BAI, not Braskem S.A. [redacted] The "corporate group" to which U.S. FinCo belongs is BAI and the nerve center of that group is in the United States.

77. The second and third considerations likewise point decisively to the United States. U.S. FinCo's function was to finance BAI's U.S. business [redacted]

78. Measured against that framework and the instant factual predicate, *OAS* is readily distinguishable. There, the court concluded that an Austrian financing vehicle had "no separate, ascertainable presence in Austria" because its offering materials overwhelmingly directed creditors to Brazil. *OAS*, 533 B.R. at 103. Among other things, those materials described the Brazilian businesses, provided financial and management information concerning those businesses rather than the issuer, directed notices to Brazil, and disclosed that the financing vehicle existed to fund the Brazilian OAS Group. *Id.* at 101–03. Its principal receivable was also owed by a BVI financing conduit whose ability to repay depended entirely upon the underlying Brazilian group borrowers. *Id.* at 101–02.

79. [redacted]

80. This Court's decision in *Oi Brasil*, on which the Foreign Representative also relies, is distinguishable for the same reasons. The Dutch financing vehicle there maintained its registered

address at a trust company office that served as the registered seat of many entities and at which no one was known ever to have worked, held its board meetings by telephone, and had lent the proceeds of its notes to Oi and Oi Móvel—Brazilian operating companies. *Oi Brasil*, 578 B.R. at 177, 181–82, 227–28. Its most valuable assets—its intercompany claims—were located in Brazil, and the court found that the Brazilian proceeding provided "the only realistic chance that Coop will be able to repay its debts." *Id.* at 226–27, 232–33.

81. None of that is true of U.S. FinCo. [redacted] Moreover, unlike in *OAS* or *Oi Brasil*, creditors of U.S. FinCo are not beholden to a Brazilian proceeding for their recoveries—as the Holders have maintained since the outset of the Chapter 15 Cases, U.S. FinCo creditors are best protected in a Chapter 11 proceeding.

82. The Debtors' own Dutch financing platform shows what a financing vehicle with a Brazilian COMI actually looks like—and how little U.S. FinCo resembles one. [redacted]

83. [redacted]

84. That U.S. FinCo is a United States entity further evidences that it does not and never was intended to serve as a financing vehicle for a Brazilian company. [redacted]

*v. U.S. FinCo's Creditors Have Rejected a Brazilian COMI*

85. Finally, the expectations and positions of U.S. FinCo's actual creditors confirm that its COMI is not in Brazil. Courts in this District recognize that, "[b]ecause their money is ultimately at stake, one generally should defer . . . to the creditors' acquiescence in or support of a proposed COMI," while protecting "the legitimate interests of dissenters . . . particularly where other objective factors point to a different COMI." *SPhinX*, 351 B.R. at 117. In *Constellation*, overwhelming creditor support for a Brazilian COMI was the factor that tipped the balance for an entity whose COMI was otherwise essentially a "toss-up." *Constellation*, 600 B.R. at 284–86. Here, the opposite is true. Holders of 86.8% of U.S. FinCo's claims have not supported the Brazilian Proceeding—so many that the Brazilian courts have held the EJ cannot be imposed on them—and the Holders have instead invoked this Court's jurisdiction through an involuntary Chapter 11 petition. (SMF ¶¶ 92, 94–95, 98–101; Fliman Decl., Exhs. 27–28, 31, 33.) Thus, unlike in *Constellation*, creditor support provides no basis for finding a Brazilian COMI in this case.

86. Taken together, the undisputed evidence establishes that U.S. FinCo's COMI is in the United States, not Brazil. [redacted] The Foreign Representative's reliance on group-level coordination and generalized risk disclosures does not overcome that evidence. Accordingly, the Brazilian Proceeding cannot be recognized as a foreign main proceeding as to U.S. FinCo.

### *C. The Brazilian Proceeding is Not a Foreign Nonmain Proceeding with Respect to U.S. FinCo Because U.S. FinCo Has No Establishment in Brazil*

87. The alternative basis for recognition fails for an independent and equally straightforward reason. To qualify as a foreign nonmain proceeding, the Brazilian Proceeding must be pending in a country where U.S. FinCo has an "establishment." 11 U.S.C. § 1502(5). Congress has defined "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." *Id.* § 1502(2); *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 338–39 (S.D.N.Y. 2008). The statute thus requires more than the "base level of connection" or impact on the Brazilian marketplace asserted by the Foreign Representative. (ECF No. 18 ¶¶ 104–106.) It requires a place of operations in Brazil where U.S. FinCo itself carries out nontransitory economic activity.

88. U.S. FinCo has no such place of operations. [redacted]

89. The Foreign Representative nevertheless contends that U.S. FinCo has an establishment in Brazil because it plays a role in financing Braskem S.A.'s Brazilian operations and thereby affects the Brazilian marketplace. (ECF No. 18 ¶¶ 104–106.) [redacted]

[redacted] But the economic activities of affiliated Brazilian entities cannot substitute for the place of operations and nontransitory economic activity that section 1502(2) requires of U.S. FinCo itself. Accordingly, the Brazilian Proceeding cannot be recognized as a foreign nonmain proceeding with respect to U.S. FinCo.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

WHEREFORE, for the foregoing reasons, the undisputed facts establish that no qualifying foreign proceeding is pending with respect to U.S. FinCo and, even if there were, the Brazilian Proceeding qualifies as neither a foreign main proceeding nor a foreign nonmain proceeding with respect to U.S. FinCo. Accordingly, there is no statutory basis for recognition under section 1517 of the Bankruptcy Code. The Holders therefore respectfully request that the Court grant the Motion, enter summary judgment denying recognition of the Brazilian Proceeding with respect to U.S. FinCo, and grant such other and further relief as the Court deems just and proper.

Dated: November 20, 2026
New York, New York

Respectfully submitted,

*/s/ Daniel A. Fliman*

PAUL HASTINGS LLP
Daniel A. Fliman
Sayan Bhattacharyya
Robert Nussbaum
Ryan P. Montefusco
200 Park Avenue
New York, New York 10166
Telephone: 212-318-6000

*Attorneys for FFI Fund Ltd., FYI Ltd., and Olifant Fund, Ltd.*